IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| SHAHEENA KHAN on her own behalf, and as next friend for EKB, a minor child<br><br>*Plaintiffs,*<br><br>v.<br><br>BOARD OF EDUCATION OF THE CITY OF CHICAGO, KAREN SAFFOLD<br><br>*Defendants.* | )<br>)<br>)<br>)<br>)<br>)<br>) No. 16-cv-8668<br>)<br>)<br>) Amount Demanded: $0<br>) The Honorable Judge Manish S. Shah<br>) Magistrate Judge: Hon. Jeffrey T. Gilbert<br>)<br>) |

## AMENDED COMPLAINT FOR DECLARATORY JUDGMENT AND INJUNCTIVE RELIEF

Plaintiff, Shaheena Khan ("Khan"), on her own behalf, and as next friend for EKB, a minor child, by one of their attorneys, Eric Onyango, complain of defendants Chicago Board of Education ("CBE") and Karen Saffold ("Saffold"), individually, upon personal information as to their own activities and upon information and belief as to the activities of others and all other matters, for their Complaint for Declaratory Judgment and Injunctive Relief, state as follows:

## INTRODUCTION

1. Plaintiff Khan, who has been employed by Chicago Public Schools ("CPS") for about 19 years with a clean record and as a contract principal for Aldridge Elementary School ("Aldridge") since July 2013[1] where her minor son and co-

---

[1] Plaintiff's contract was renewed on July 21, 2016 for another 4-year term, beginning July 1, 2017 through June 30, 2021.

plaintiff was a student, was removed from her principalship on or about August 24, 2016 and reassigned to "home" by her new supervisor of less than a year, Saffold, without a hearing, had her laptop confiscated and access to CPS networks revoked, banned from all CPS locations and replaced by Saffold's friend, Cynthia Treadwell ("Treadwell"). She has not been paid all her salary and benefits guaranteed by her contracts, and has been threatened with trespass charges if she accompanies her child to school, which began on September 6, 2016, or meets with potential witnesses in her preparation for a due process hearing at a CPS location. After attempts to resolve these matters out of court have failed, Plaintiffs filed this action to have their rights adjudicated to remove uncertainty about Khan's employment status, Khan's constitutional right to control the education of her son by accompanying him to a public school of her choice, EKB's constitutional right to be nurtured and guided by her mother in his educational endeavors at this critical stage in his life, Khan's constitutional right to a full due process rights hearing under her employment contracts, and the constitutionality of an unbelievably vague Illinois statute that the Defendants have relied on to justify their conduct.

## STATEMENT OF JURISDICTION

2. This action arises in part under the laws of the United States, Title 28 U.S.C. § 2201, Due Process Clause of the Fourteenth Amendment of the United States Constitution and Title 42 U.S.C. § 1983 *et seq.* Jurisdiction is thus proper under 28 U.S.C. § 1331. Since this Court has original jurisdiction over a federal question, it also maintains supplemental jurisdiction over any applicable state law claims.

3. An actual controversy exists between Plaintiffs and Defendants on multiple bases. First, Plaintiff Khan and Defendant CBE do not agree on the scope of due process rights that she is entitled to under her two employment contracts. For example, CBE does not believe that she is entitled to conduct discovery, or to cross examine witnesses at her pre-termination due process hearing. Second, Plaintiffs and Defendants also do not agree on the existence of Plaintiff EKB's right to be accompanied to school by his mother. Defendant Saffold has refused to rescind a letter she gave Plaintiff Khan banning her from visiting any CPS location without her written permission. CBE has also refused to rescind or modify the letter to allow Plaintiff Khan reasonable access to accompany her son to school. Third, Khan fears that Defendants may interfere with her preparation for her due process hearing defense if she visits Aldridge to confer with potential witnesses or to collect evidence because CBE has threatened to charge her with trespass if she visits Aldridge without Saffold's written permission. Fourth, the parties do not agree that Khan can be removed under her 2016 contract before she has had an opportunity to perform her obligations. While CBE has taken steps to remove her and threatened that it could terminate the 2016 contract by October 31, 2016, Khan objects to CBE's position. Fifth, the parties contest the constitutionality of 105 ILCS 5/34-8.3. While Khan believes that it is unconstitutional because it is vague and subject to arbitrary and discriminatory application, Defendants have relied exclusively on the statute's provision, 105 ILCS 5/34-8.3(d), to unlawfully remove Khan as principal of Aldridge, and are moving quickly to subject her to a sham hearing to validate their actions. Therefore, to remove the foregoing uncertainties, this Court may declare

the rights and other legal relations of the parties herein pursuant to 28 U.S.C. §2201(a).

4. Venue is proper pursuant to 28 U.S.C. 1391(b)(2) because a substantial part of the events or omissions giving rise to this Complaint occurred within the Northern District of Illinois.

## PARTIES

5. Plaintiff Khan is a female education administrator who lives in and pays taxes to the city of Chicago. She is the mother of Plaintiff EKB, a minor child of school age.

6. Defendant Chicago Board of Education ("CBE") is a quasi-municipal body that manages CPS and a "person" that acted, or has threatened to act under color of state law at all relevant times within the meaning of 42 U.S.C. § 1983.

7. At relevant times, Saffold was employed by CBE and assigned to supervise some schools within CPS. At all relevant times, Saffold acted, or has threatened to act under color of state law within the meaning of 42 U.S.C. § 1983.

## FACTUAL BACKGROUND

8. Khan has worked for CBE in various roles as a teacher and administrator for about 19 years. During that time, she has never had any disciplinary or ethical issues and received very good reviews from supervisors for her work performance.

9. At all relevant times, Khan was eligible, qualified and certified to work as an elementary school principal in the State of Illinois. At all relevant times, she was not licensed to work as a teacher or school administrator in any other State.

10. At relevant times, EKB was a student at Aldridge, and is now a student at another Chicago Public School elementary school.

11. Khan and Saffold met around 2008 when they were both CPS leaders on a cohort for a program sponsored by CPS at Harvard University. They crossed paths again around 2011 when each supervised different school networks, but prior to 2015, Saffold had never supervised Khan.

12. Around November 2012, Khan applied to become the principal of Alice L. Barnard Elementary School ("Barnard") which was then one of the schools that Saffold supervised. Even though Khan was selected as one of the final candidates for the principalship position, the Barnard Local School Council declined to hire her after Saffold falsely told them that Khan was not qualified to be a principal and that she only knew special education. Saffold refused to meet with Khan even though she met with the rest of the other candidates.

13. On or about July 2013, the Local School Council for Aldridge, a part of CPS managed by CBE that was not supervised by Saffold, acting as an agent of CBE, entered into a valid and enforceable contract ("2013 contract") in which Khan agreed to serve as the principal for Aldridge from July 1, 2013 until June 30, 2017. A copy of the contract is attached as Exhibit 1.

14. The 2013 contract was drafted exclusively by CBE without any participation or negotiation on the language by Khan, and, as such, any ambiguities should be construed against CBE.

15. According to the 2013 contract, CBE agreed to pay Khan an annual salary and to provide benefits to her "in accordance with the Administrative Compensation Plan and the Rules, Policies and Procedures of the Board of Education, including all benefits for which full-time, regularly appointed certified employees are eligible."

16. As a graduate of, and former teacher at Aldridge, a struggling school near Altgeld Gardens[2] that caters to African-American children, about 99% of whom come from low income[3] families, Khan was excited at the opportunity to work with the community and partners to put the school on a successful trajectory. In 2014, she worked with the local community and her then-supervisor to develop a plan that called for reasonable, incremental progress to increase the school's performance over a five-year period. Her performance evaluations were all favorable.

17. Sometime in August 2015, Saffold became Khan's supervisor when Aldridge was transferred to Saffold's network. The relationship had a strange beginning. Saffold excluded Khan from her first meeting with principals. When they met about a week later, she berated Khan in their first meeting and told Khan that she could do her job in her sleep. Around September 2015, Saffold started pressuring Khan to make purchases of school materials from her preferred vendors that she often called "her people." When Khan resisted her requests, Saffold threatened to put Khan on a phony Corrective Action Plan ("CAP") in or around December 2015, carried out her threat and issued Khan an unprofessional CAP in or around February 2016, and then restricted Khan's access to CBE's budget system, and, in at least one instance, unilaterally used about $20,000 of Aldridge's funds that Khan could have used in

---

[2] Altgeld Gardens is a public housing project located on the far south side of Chicago. It is isolated from the city and is almost five miles away from the closest police station. It was built for, and is still occupied almost exclusively by low-income African Americans on an abandoned waste site. The air quality in the area is still very poor and sometimes generates very strong, bad smells.

[3] Students in families receiving public aid, living in substitute care, or eligible to receive free or reduced price lunches.

other more immediate needs to purchase hard copies of school materials, most of which Khan had already purchased electronic versions of at much less cost of about $5,000.

18. As Khan's supervisor since 2015, Saffold intentionally embarked on a campaign to sabotage Khan's career and progress at Aldridge so that she could replace her with one of her friends in order to expand her influence at CPS. Among many other tactics:

    a. Saffold intentionally deprived Aldridge of resources that were necessary for the school to be a safe learning environment. For example, she refused to approve a request to purchase communications equipment that were necessary to manage the school's security for a significant period of time, and refused Khan's request to make arrangements to repair or replace classroom ceiling and falling tiles, thereby endangering the safety of students at Aldridge;

    b. Saffold intentionally refused to provide Khan with the support that was necessary for Aldridge to make substantial academic progress. For example, despite having the means to do so, she refused to assign meaningful resources to Aldridge to: (1) help improve student attendance, (2) support the social emotional needs of students and parents, (3) extract and aggregate data, (4) coach staff and teachers at Aldridge on strategies and resources for de-escalation of student violence, (5) help decrease suspensions, (6) provide leadership coaching

and support to Khan and (7) help recruit teachers in high need areas (e.g., special education, math and science);

c. Saffold intentionally failed to provide feedback on professional development systems for Aldridge and failed to provide clear and consistent performance expectations and standards to Khan and Aldridge staff;

d. Saffold intentionally failed to evaluate Khan's performance according to CPS' performance evaluation guidelines, which require two CPS mandated observations in a year with post-conference sessions to provide suggestions for improvement. Saffold failed to observe Khan and provide a post-evaluation feedback of Khan's performance in the first part of the 2015-2016 year;

e. Saffold intentionally undermined Khan's authority at Aldridge by making derogatory comments about Khan in front of her subordinate staff. For example, on or about August, 2015, Saffold blamed Khan for having poor test scores, told Khan that she could do her job in her sleep, told Khan that Aldridge was filthy and that the bulletin boards looked terrible in the presence of several teachers, including a senior teacher, Bernice Mingo ("Ms. Mingo"). Ms. Mingo later told Khan that she decided to retire earlier than she expected because she could not tolerate how disrespectful Saffold was towards Khan. On at least one occasion, Saffold and her deputy, Felicia Sanders ("Sanders"), yelled at and threw stacks of papers at Khan in front of her assistant principal;

f. Saffold intentionally took steps to disrupt learning and testing at Aldridge. For example, on several occasions, Saffold sent her staff into classrooms to watch teachers, without any prior warning and stayed for long periods of time. This tactic demoralized teachers, who complained to Khan that they felt that they were being harassed. On or about April 11, 2016, Saffold sent her staff to the school to walk into classrooms to interrupt standardized testing activities without any prior warning. At least one staff, Doug Stalnos refused to leave classrooms when Khan requested him to do so;

g. Saffold asked Khan to encourage Aldridge teachers to coach students while they took standardized tests. Specifically, Saffold complained that Aldridge students were completing their tests too quickly. She asked Khan to coach teachers to walk around classrooms while students took tests, tap on their shoulders when they were going too fast, tell them to slow down, and talk to them about the choices that they were making while they were taking the standardized tests. Khan told Saffold that she was not comfortable with her recommendation because it could be construed as encouraging cheating.

19. Khan's attempts to engage Saffold's supervisor and Human Resources to control Saffold's behavior were unsuccessful. Human Resources staff, Tiffany Taylor advised Khan to speak to Elizabeth Kirby, Saffold's supervisor. After Khan met with Kirby, Kirby promised to talk to Saffold, but her promise turned out to be just empty words because Saffold did not relent on her mistreatment of Khan.

20. On or about February 2016, Saffold gave Khan an unprofessionally-crafted corrective action plan ("CAP") that was inconsistent with the district-mandated Continuous Improvement Work Plan[4] for Aldridge, contained false assertions, set arbitrary and illogical deadlines and was based on grossly unrealistic benchmarks. Despite multiple requests, Saffold refused to explain the document to Khan, or to answer Khan's questions about it. The document Saffold gave Ms. Khan was uninformed and untrue because none of the alleged deficiencies in it actually existed, and because Khan had made significant improvements to Aldridge during her time as Principal. The CAP had an end date of June 20, 2016. Despite Saffold's lack of responsiveness, Khan made her best efforts to comply with the CAP.

21. On or about April 8, 2016, consistent with CBE policy, Khan sent a written confidential complaint to the CBE Office of Inspector General to report that she believed Saffold had committed waste by spending Aldridge's money on expensive materials from one of her preferred vendors that Khan had already purchased at much lower cost.

22. On or about April 10, 2016, at a meeting requested by CPS' attorney, Jim Ciesil ("Ciesil") to discuss Khan's complaint, Ciesil threatened that Khan's career at CPS was effectively over because of her complaint about Saffold. Khan believes that Ciesel inappropriately disclosed the complaint to Saffold before the CPS Office of the Inspector General could conduct or complete its investigations.

---

[4] The Continuous Improvement Work Plan (CIWP) is the two-year school improvement plan required of all schools. *See* schoolreports.cps.edu/ciwp/PrincipalILTTrainingPresentation.pptx, Last accessed 9/5/16

23. On or about June 24, 2016, Defendants Saffold and CBE caused a false and improper public warning resolution to be issued and published against Khan for allegedly unsatisfactory conduct. On or about July 1, 2016, Saffold informed Khan that she was aware of her April 2016 complaint about vendor steering.

24. On or about July 21, 2016, the Local School Council for Aldridge notified Khan in writing that it had voted to renew her contract. On or about July 21, 2016, the Local School Council for Aldridge, a part of the schools managed by CBE, acting as an agent of CBE, entered into a valid and enforceable contract ("2016 contract") in which Khan agreed to serve as the principal for Aldridge from July 1, 2017 until June 30, 2021. A copy of the contract is attached as <u>Exhibit 2</u>.

25. The 2016 contract was drafted exclusively by CBE without any participation or negotiation on the language by Khan, and, as such, any ambiguities should be construed against CBE.

26. On July 29, 2016, Khan delivered two copies of her fully executed 2016 contracts to Eduardo Camacho, an agent of the CBE, at the Office of Local School Council Relations. On or about July 29, 2016, Khan delivered a copy of her fully executed 2016 contract to Saffold.

27. According to the 2016 contract, CBE agreed to pay Khan an annual salary and to provide benefits to her "in accordance with the Administrative Compensation Plan and the Rules, Policies and Procedures of the Board of Education, including all benefits for which full-time, regularly appointed certified employees are eligible."

28. On or about August 22, 2016, Saffold invited Khan to a meeting on August 24, 2016 at 3:30 pm. According to Saffold's secretary, the purpose of the meeting

was to discuss Khan's request for a budget increase for Aldridge to maintain a teacher position.

29. At the August 24, 2016 3:30 pm meeting, instead of discussing Khan's budget request, Saffold gave Khan a letter ("reassignment letter") reassigning her from Principal of Aldridge to "home." The letter directed Khan "not to return to Ira F. Aldridge Elementary School or any CPS location for any reason, without written authorization from" Saffold.

30. On or about August 24, 2016, Khan's attorney wrote to CPS to confirm the legitimacy of the reassignment letter. On August 25, 2016, one of CPS's attorneys, Ciesil, confirmed that the reassignment letter was legitimate. Ciesil further made clear that if Khan visited Aldridge without Saffold's written authorization, Khan would "be considered a trespasser on Board property and treated accordingly." Ciesil did not modify or rescind the letter to the extent that it prevented Khan from visiting any other CPS location, and ignored Khan's subsequent concerns about her ability to accompany her child to a CPS school while the letter was in effect.

31. At all relevant times, the benefits that CPS employees like Khan were eligible for included access to and use of an electronic mail system (email), and an internet portal. For her work, Khan was supplied with and had access to a laptop, email account and internet portal. As of August 24, 2016, all of Khan's body of work was stored in her laptop and on CPS' internet portal.

32. At all relevant times, the benefits that CPS employees like Khan were eligible for included professional training and development paid for by CPS of substantial monetary value.

33. On or about August 24, 2016, Saffold, directly and through other CPS employees, contractors or agents, confiscated Khan's laptop and deactivated her email and access to the CPS internet portal.

34. On or about August 24, 2016, Saffold appointed her friend, Treadwell as the principal for Aldridge to replace Khan. At the time of her appointment, Treadwell had never been a principal anywhere.

35. Since Khan's reassignment to "home", she has been deprived of valuable professional training and development opportunities of substantial monetary value, including one which occurred on or about August 25, 2016, and some of her salary.

36. At all relevant times, benefits that CPS employees like Khan were eligible for included paid vacation. By August 24, 2016, Khan had about 30 days of accrued vacation. Khan has not been paid all her salary due under her contracts, including her pay for her accrued but unused vacation.

37. Plaintiffs' attempts to request CPS to rescind or modify the August 24, 2016 reassignment letter have been ignored or invited threats that Khan will be charged with trespass if she visits CPS schools without Saffold's written authorization. As a result, Khan is afraid that she might be charged with trespass if she takes EKB to, or picks up EKB from school.

38. Because of the August 24, 2016 reassignment letter, Khan has been deprived of the opportunity to control the education of her son by accompanying him to school or picking him up from school and has a real and immediate fear that she might be subjected to criminal or civil penalties if she exercises her right to accompany her son to school activities.

39. The August 24, 2016 reassignment letter has harmed EKB because it has deprived him of the comfort and care of his mother while he attends school.

40. The August 24, 2016 reassignment is likely to continue to harm EKB by forcing him to miss school, or depriving him of the full educational experience that is meaningfully supported and supervised by his mother. For example, Khan cannot visit EKB's school to discuss his progress without unreasonable intrusion by Saffold or the threat of trespassing charges. The August 24, 2016 reassignment is likely to harm Khan by subjecting her to potential civil or criminal sanctions if she accompanies EKB to school or picks him up from school.

41. On or about August 30, 2016, in further attempt to have Defendants modify the August 24, 2016 letter that banned Ms. Khan from all CPS locations without litigation, Khan informed Defendants that she intended to enroll EKB in a new CPS school. Defendants ignored Khan's concerns and failed to make clear that she does not need Saffold's written permission to take EKB to, or pick EKB from his new school, putting Ms. Khan in continuing fear of arrest for trespass.

42. Defendants' acts and omissions as detailed in this amended complaint are motivated by discriminatory and illegitimate purposes. For example, while Khan was placed on a phony CAP, subjected to a public warning resolution on June 24, 2016 and removed as principal of Aldridge because the school had allegedly not made adequate progress in the three years that she was there, male principals of schools with comparable or worse performance records than Aldridge were not subjected to similar treatment. For example, the principal for Lawndale Elementary Community Academy ("Lawndale"), Willard Willette, who is male, was not put on a

14

CAP, subjected to a public warning resolution like Khan, or removed as principal even though Lawndale has had just as low, or lower test scores as Aldridge for an extended period of time. The principal for John M Smyth Elementary School ("Smyth"), Ronald R. Whitmore, who is male, was also not put on a CAP, subjected to a public warning resolution like Khan, or removed as principal, even though Smyth has had just as low, or lower test scores as Aldridge for an extended period of time. Furthermore, Christian females like Tracy Davis, who were removed from their principalships for alleged performance reasons were reassigned to other meaningful jobs at CPS and not deprived of their ability to continue to connect with colleagues through CPS' email system or access to training and development opportunities, while Khan, who is of Islamic faith, was reassigned to her home, had her email account deactivated and has been deprived of training and development opportunities.

43. Defendants' conduct as detailed above deprived EKB of a reasonably safe educational environment.

44. Defendants' conduct as detailed above demoralized Aldridge staff and deprived EKB of a reasonable access to quality education in a public school.

## COUNT ONE
## DECLARATION THAT KHAN HAS THE RIGHT TO PARTICIPATE IN EKB'S EDUCATION AT A CHICAGO PUBLIC SCHOOL OF HER CHOICE WITHOUT THREAT OF CRIMINAL CHARGES

45. Khan repeats the allegations of paragraphs 1-44 of this amended complaint as though fully alleged herein.

46. At all relevant times, Khan had a constitutional liberty interest in familial relations, including the right to control the education of EKB.

15

47. At all relevant times, EKB had a constitutional right to be raised and nurtured by Khan. Raising and nurturing EKB includes escorting EKB to a public school of her choice, picking up EKB from said school, and participating in all activities that are reasonably connected to EKB's education and open to other parents.

48. At all relevant times, Khan had a constitutional liberty interest in familial relations, including the right to control the education of EKB.

49. There is no compelling, important, or rational basis for the August 24, 2016 reassignment letter written by Saffold that directs Khan "not to return to … any CPS location for any reason without written authorization" from Saffold.

50. WHEREFORE, Khan prays that this Honorable Court:

    A. Find and declare that Khan is under no obligation to request any written authorization from Karen Saffold in order to participate in all activities at CPS locations that are reasonably connected to EKB's education and open to other parents.

    B. Find and declare that Khan has the right to escort EKB to a Chicago Public School of her choice, pick up EKB from said school, and participate in all activities at CPS locations that are reasonably connected to EKB's education and open to other parents without written authorization from Karen Saffold;

    C. Find and declare that EKB has the right to be escorted to a Chicago Public School of Khan's choice, picked up from said school by Khan, and to have Khan participate in all activities that are reasonably

connected to his education at CPS schools and open to other parents

without written authorization from Karen Saffold;

D. Grant Shaheena Khan and EKB any and all further relief that this

Honorable Court may deem equitable and just.

## COUNT TWO
## DECLARATION THAT KHAN HAS A RIGHT TO A FULL DUE PROCESS HEARING UNDER THE JULY 2013 CONTRACT

51. Khan repeats the allegations of paragraphs 1-44 of this amended complaint

as though fully alleged herein.

52. At all relevant times, Khan had a present entitlement pursuant to the 2013

contract to pursue a gainful occupation as principal for Aldridge, and to be

compensated accordingly that was protected by the Due Process Clause of the

Fourteenth Amendment of the United States Constitution and of the Constitution of

the State of Illinois ("Due Process Clause").

53. At all relevant times, the 2013 contract provided that it could be terminated

by CBE upon "(b) removal for cause pursuant to 105 ILCS 5/34-85 ... or (g) removal,

reassignment, layoff or dismissal of the Principal pursuant to 105 ILCS 5/34-8.3 and

105 ILCS 5/34-8.4."

54. At all relevant times, 105 ILCS 5/34-8.3 provided that "[s]chools placed on

probation that, after a maximum of one year, fail to make adequate progress in

correcting deficiencies are subject to the following actions by the general

superintendent with the approval of the board, after opportunity for a hearing.

(1) Ordering new local school council elections.
(2) Removing and replacing the principal.
(3) Replacement of faculty members, subject to the provisions of
Section 24A-5.

(4) Reconstitution of the attendance center and replacement and reassignment by the general superintendent of all employees of the attendance center.

(5) Intervention under Section 34-8.4.

(5.5) Operating an attendance center as a contract turnaround school.

(6) Closing of the school."

55. On or about September 2, 2016, CBE scheduled what it calls a hearing pursuant to 105 ILCS 5/34-8.3(d) for September 22, 2016, to be governed by its guidelines and processes, and presided over by an officer it has unilaterally hired and will pay to consider terminating Khan's 2013 contract.

56. Although CBE has since agreed to reschedule the hearing, it still wants to hold the hearing on September 29, 2016 or during the first week of October 2016, about a week or two after September 22, 2016.

57. Current CPS guidelines and processes do not clearly define the terms "adequate progress" or "deficiencies" within the context of 105 ILCS 5/34-8.3. The guidelines and processes lack any objective standards, and as a result, CPS applies 105 ILCS 5/34-8.3 in an arbitrary and discriminatory manner.

58. At all relevant times, CPS' guidelines for the removal and replacement of principals of schools on probation and procedures governing principal removal hearings did not provide for a prompt, full post-termination hearing. Specifically, CPS' guidelines and procedures did not provide for the right to cross examine witnesses, or for discovery. In fact, the guidelines and procedures do not provide an opportunity to be heard at a meaningful time and in a meaningful manner. To this end, CBE confiscated Khan's laptop which has all of her body of work, including documents that are necessary for her to rebut CBE's claims. Since the documents are uniquely within the custody and control of CPS and CPS' procedures do not

allow for discovery, Khan cannot be heard in a meaningful manner because she will not be able to present any documentary evidence. Khan can also not be heard in a meaningful manner because the time CBE has provided is not sufficient for her to prepare a meaningful defense by obtaining necessary documents of hers from CBE that are on the laptop that Saffold confiscated, securing witness commitments to appear, and reviewing CBE's own evidentiary documents.

59. Another reason Khan cannot be heard in a meaningful manner is that one of the witnesses at the hearing scheduled by CPS is Saffold, who is biased because Khan filed a report with the Office of Inspector General complaining that she had pressured Khan to make purchases of school materials and services from her preferred vendors. She has every incentive to lie about Khan and has already done so in the CAP, and only an effective cross examination can afford Khan a fair hearing. Khan believes that Saffold has been intent on removing her from Aldridge since August 2015 so that she could install her friends and members of her sorority there, and in order to achieve that goal, has written several documents attributing false claims to Khan. On or about June 30, 2016 CBE denied Khan's request to record conversations from a meeting Saffold scheduled with Khan. Khan believes that the denial was in bad faith and prevented her from collecting evidence that she can use in her defense.

60. Khan believes that she is entitled to a full due process pre-termination hearing under her 2013 contract, including the right to engage in reasonable discovery, to cross examine any witnesses that CBE presents for its case against her and to compel the appearance of witnesses that may be necessary for her defense.

61. On September 7, 2016, CBE informed Khan that "[d]iscovery is not allowed under the Procedures and Guidelines that govern these 8.3 hearings" that it has proposed. CBE also informed Khan that "[t]he Procedures and Guidelines that govern these 8.3 hearings" that it has proposed "do not allow for the subpoenaing of witnesses." Khan is entitled to a full due process hearing under her 2013 contract because she has a present interest in the employment contract, and the hearing proposed by CPS does not provide for a prompt, full post-termination hearing to mitigate against the risk of CPS' unilaterally-picked and paid hearing officer making an incorrect decision.

62. WHEREFORE, Khan prays that this Honorable Court:

    A. Adjudicate and determine the rights of the parties hereto under the 2013 contract;

    B. Find and declare that Khan has a right to a full due process hearing under her 2013 contract, with the right to conduct discovery and cross examine witnesses;

    C. Grant Shaheena Khan any and all further relief that this Honorable Court may deem equitable and just.

## COUNT THREE
## DECLARATION THAT CBE HAS NO RIGHT TO REMOVE KHAN UNDER THE JULY 2016 CONTRACT

63. Khan repeats the allegations of paragraphs 1-44 of this amended complaint as though fully alleged herein.

64. At all relevant times, Khan had a present entitlement pursuant to the 2016 contract to pursue a gainful occupation as principal for Aldridge, and to be

compensated accordingly that was protected by the Due Process Clause of the Fourteenth Amendment of the United States Constitution and of the Constitution of the State of Illinois ("Due Process Clause").

65. At all relevant times, the 2016 contract provided that it could be terminated by CBE upon "(b) removal for cause pursuant to 105 ILCS 5/34-85 … or (g) removal, reassignment, layoff or dismissal of the Principal pursuant to 105 ILCS 5/34-8.3 and 105 ILCS 5/34-8.4."

66. At all relevant times, 105 ILCS 5/34-8.3 provided that "[s]chools placed on probation that, after a maximum of one year, fail to make adequate progress in correcting deficiencies are subject to the following actions by the general superintendent with the approval of the board, after opportunity for a hearing.

> (1) Ordering new local school council elections.
> (2) Removing and replacing the principal.
> (3) Replacement of faculty members, subject to the provisions of Section 24A-5.
> (4) Reconstitution of the attendance center and replacement and reassignment by the general superintendent of all employees of the attendance center.
> (5) Intervention under Section 34-8.4.
> (5.5) Operating an attendance center as a contract turnaround school.
> (6) Closing of the school."

67. On or about September 2, 2016, CBE scheduled what it calls a hearing pursuant to 105 ILCS 5/34-8.3(d) for September 22, 2016, to be governed by its guidelines and processes, and presided by an officer it has unilaterally hired and will pay. According to the CBE, Khan's 2016 contract could be terminated after the September 22, 2016 hearing.

68. Although CBE has since agreed to reschedule the hearing, it still wants to hold the hearing on September 29, 2016 or during the first week of October 2016, about a week or two after September 22, 2016.

69. According to the 2016 contract, Khan agreed to serve as Principal for Aldridge for four (4) years commencing July 1, 2017, and ending June 30, 2021. Khan has not served any part of her obligations under the 2016 contract because her performance is not yet due.

70. Implied in the 2016 contract is the fact or term that to be subject to removal, Khan must have an opportunity to work at Aldridge under the contract for a period of time that can form a reasonable basis upon which her performance can be judged to determine whether or not Aldridge has made "adequate progress in correcting deficiencies." Because the beginning term of the 2016 contract has not yet commenced and Khan is not serving as the Principal under that contract, CBE has no right to remove Khan [under the 2016 contract].

71. WHEREFORE, Khan prays that this Honorable Court:

    A. Adjudicate and determine the rights of the parties hereto under the 2016 contract;

    B. Find and declare that CBE has no right to remove Khan under the 2016 contract prior to July 1, 2017;

    C. Grant Shaheena Khan any and all further relief that this Honorable Court may deem equitable and just.

## DECLARATION THAT KHAN HAS A RIGHT TO A FULL DUE PROCESS HEARING UNDER THE JULY 2016 CONTRACT

72. Khan repeats the allegations of paragraphs 1-44 of this amended complaint as though fully alleged herein.

73. At all relevant times, Khan had a present entitlement pursuant to the 2016 contract to pursue a gainful occupation as principal for Aldridge, and to be compensated accordingly that was protected by the Due Process Clause of the Fourteenth Amendment of the United States Constitution and of the Constitution of the State of Illinois ("Due Process Clause").

74. At all relevant times, the 2016 contract provided that it could be terminated by CBE upon "removal, reassignment, layoff or dismissal of the Principal pursuant to 105 ILCS 5/34-8.3 and 105 ILCS 5/34-8.4."

75. At all relevant times, 105 ILCS 5/34-8.3 provided that "[s]chools placed on probation that, after a maximum of one year, fail to make adequate progress in correcting deficiencies are subject to the following actions by the general superintendent with the approval of the board, after opportunity for a hearing.

> (1) Ordering new local school council elections.
> (2) Removing and replacing the principal.
> (3) Replacement of faculty members, subject to the provisions of Section 24A-5.
> (4) Reconstitution of the attendance center and replacement and reassignment by the general superintendent of all employees of the attendance center.
> (5) Intervention under Section 34-8.4.
> (5.5) Operating an attendance center as a contract turnaround school.
> (6) Closing of the school."

76. On or about September 2, 2016, CBE scheduled what it calls a hearing pursuant to 105 ILCS 5/34-8.3(d) for September 22, 2016, to be governed by its

guidelines and processes, and presided over by an officer it has unilaterally hired and will pay. CBE has communicated that it intends to consider whether to terminate Khan's 2016 contract at the hearing.

77. Although CBE has since agreed to reschedule the hearing, it still wants to hold the hearing on September 29, 2016 or during the first week of October 2016, about a week or two after September 22, 2016.

78. At all relevant times, CPS' guidelines for the removal and replacement of principals of schools on probation and procedures governing principal removal hearings did not provide for a prompt, full post-termination hearing. Specifically, CPS' guidelines and procedures did not provide for the right to cross examine witnesses, or for discovery. In fact, the guidelines and procedures do not provide an opportunity to be heard at a meaningful time and in a meaningful manner. To this end, CBE confiscated Khan's laptop which has all of her body of work, including documents that are necessary for her to rebut CBE's claims. Since the documents are uniquely within the custody and control of CPS and CPS' procedures do not allow for discovery, Khan cannot be heard in a meaningful manner because she will not be able to present any documentary evidence. Khan can also not be heard in a meaningful manner because the time CBE has provided is not sufficient for her to prepare a meaningful defense by obtaining necessary documents of hers from CBE that are on the laptop that Saffold confiscated, securing witness commitments to appear, and reviewing CBE's own evidentiary documents.

79. Another reason Khan cannot be heard in a meaningful manner is that one of the witnesses at the hearing scheduled by CPS is Saffold, who is biased because

Khan filed a report with the Office of Inspector General complaining that she had pressured Khan to make purchases of school materials and services from her preferred vendors. She has every incentive to lie about Khan and has already done so in the CAP and in Khan's 2016 evaluation, and only an effective cross examination can afford Khan a fair hearing. Khan believes that Saffold has been intent on removing her from Aldridge since August 2015 so that she could install her friends and members of her sorority there, and in order to achieve that goal, has written several documents attributing false claims to Khan. On or about June 30, 2016 CBE denied Khan's request to record conversations from a meeting Saffold scheduled with Khan. Khan believes that the denial was in bad faith and prevented her from collecting evidence that she can use in her defense.

80. Khan believes that she is entitled to a full due process pre-termination hearing under her 2016 contract, including the right to engage in reasonable discovery, to cross examine any witnesses that CBE presents for its case against her and to compel the appearance of witnesses that may be necessary for her defense.

81. On September 7, 2016, CBE informed Khan that "[d]iscovery is not allowed under the Procedures and Guidelines that govern these 8.3 hearings" that it has proposed. CBE also informed Khan that "[t]he Procedures and Guidelines that govern these 8.3 hearings" that it has proposed "do not allow for the subpoenaing of witnesses." Khan is entitled to a full due process hearing under her 2016 contract because she has a present interest in the employment contract, and the hearing proposed by CPS does not provide for a prompt, full post-termination hearing to

mitigate against the risk of CPS' unilaterally-picked and paid hearing officer making an incorrect decision.

82. WHEREFORE, Khan prays that this Honorable Court:

    A. Adjudicate and determine the rights of the parties hereto under the 2016 contract;

    B. Find and declare that Khan has a right to a full due process hearing under the 2016 contract, with the right to cross examine and compel the appearance of necessary witnesses;

    C. Grant Shaheena Khan any and all further relief that this Honorable Court may deem equitable and just.

### COUNT FIVE
DECLARATION THAT CPS' GUIDELINES FOR THE REMOVAL AND REPLACEMENT OF PRINCIPALS OF SCHOOLS ON PROBATION AND PROCEDURES GOVERNING PRINCIPAL REMOVAL HEARINGS ARE UNCONSTITUTIONAL AND THAT KHAN HAS THE RIGHT TO BE THE PRINCIPAL FOR ALDRIDGE FOR THE TERM OF THE 2016 CONTRACT

83. Khan repeats the allegations of paragraphs 1-44 of this amended complaint as though fully alleged herein.

84. At all relevant times, the 2013 and 2016 contracts provided that CBE could terminate either upon "(b) removal for cause pursuant to 105 ILCS 5/34-85 … or (g) removal, reassignment, layoff or dismissal of the Principal pursuant to 105 ILCS 5/34-8.3 and 105 ILCS 5/34-8.4."

85. On or about September 2, 2016, CBE scheduled what it calls a hearing pursuant to 105 ILCS 5/34-8.3(d) for September 22, 2016, to be governed by its guidelines and processes, and presided over by an officer it has unilaterally hired and will pay, to consider whether to terminate Khan's 2013 and 2016 contracts.

86. Although CBE has since agreed to reschedule the hearing, it still wants to hold the hearing on September 29, 2016 or during the first week of October 2016, about a week or two after September 22, 2016.

87. At all relevant times, 105 ILCS 5/34-8.3 provided that "[s]chools placed on probation that, after a maximum of one year, fail to make adequate progress in correcting deficiencies are subject to the following actions by the general superintendent with the approval of the board, after opportunity for a hearing.

> (1) Ordering new local school council elections.
> (2) Removing and replacing the principal.
> (3) Replacement of faculty members, subject to the provisions of Section 24A-5.
> (4) Reconstitution of the attendance center and replacement and reassignment by the general superintendent of all employees of the attendance center.
> (5) Intervention under Section 34-8.4.
> (5.5) Operating an attendance center as a contract turnaround school.
> (6) Closing of the school."

88. At all relevant times, CPS' guidelines for the removal and replacement of principals of schools on probation and procedures governing principal removal hearings, copies of which are attached as Exhibit 3, did not provide for a prompt, full post-termination hearing. Specifically, CPS' guidelines and procedures did not provide for the right to cross examine witnesses, compel appearance of witnesses or for discovery. In fact, the guidelines and procedures do not provide an opportunity to be heard at a meaningful time and in a meaningful manner. To this end, CBE confiscated Khan's laptop which has all of her body of work, including documents that are necessary for her to rebut CBE's claims. Since the documents are uniquely within the custody and control of CPS and the procedures do not allow for discovery,

Khan cannot be heard in a meaningful manner because she will not be able to present any documentary evidence.

89. At all relevant times, CPS Procedures for removing and replacing Principals provided in relevant part that "the local school council of a school whose principal has been removed and replaced by an interim principal pursuant to 34-8.3(d) shall have no authority to select a new four-year contract principal until the school makes sufficient educational progress to be removed from probation as specified in the applicable Remediation/Probation Policy." This policy does not apply to the 2016 contract because Khan had not been removed when it was lawfully executed on July 21, 2016. Regardless of whether Khan is removed pursuant to the 2013 contract, her 2016 contract is not impacted because the local school council had the authority and right to enter into an agreement with her on July 21, 2016, and did in fact do so.

90. Khan believes that she is entitled to a full due process pre-termination hearing under both her 2013 contract and 2016 contract, including the right to engage in reasonable discovery, to cross examine any witnesses that CBE presents for its case against her and to compel the appearance of witnesses that may be necessary for her defense.

91. On September 7, 2016, CBE informed Khan that "[d]iscovery is not allowed under the Procedures and Guidelines that govern these 8.3 hearings" that it has proposed. CBE also informed Khan that "[t]he Procedures and Guidelines that govern these 8.3 hearings" that it has proposed "do not allow for the subpoenaing of witnesses."

92. Khan is entitled to a full due process hearing under both her 2013 and 2016 contracts because she has a present interest in the employment contracts, and the hearing proposed by CPS does not provide for a prompt, full post-termination hearing to mitigate against the risk of CPS' unilaterally-picked and paid hearing officer making an incorrect decision.

93. WHEREFORE, Khan prays that this Honorable Court:

    A. Adjudicate and determine the rights of the parties hereto under the 2013 and 2016 contracts;

    B. Find and declare that Khan is entitled to a declaration that she has the right to be the principal for Aldridge Elementary School for the term of the 2016 contract, which is July 1, 2017 until June 30, 2021;

    C. Find and declare that the CPS' guidelines for the removal and replacement of Principals of Schools on Probation and Procedures Governing Principal Removal Hearings are Unconstitutional;

    D. Grant Shaheena Khan any and all further relief that this Honorable Court may deem equitable and just.

## COUNT SIX
## DECLARATION THAT 105 ILCS 5/34-8.3 IS UNCONSTITUTIONALLY VAGUE

94. Khan repeats the allegations of paragraphs 1-44 of this amended complaint as though fully alleged herein.

95. At all relevant times, the 2013 and 2016 contracts provided that CBE could terminate either upon "(b) removal for cause pursuant to 105 ILCS 5/34-85 … or (g) removal, reassignment, layoff or dismissal of the Principal pursuant to 105 ILCS 5/34-8.3 and 105 ILCS 5/34-8.4."

96. At all relevant times, 105 ILCS 5/34-8.3 provided that "[s]chools placed on probation that, after a maximum of one year, fail to make adequate progress in correcting deficiencies are subject to the following actions by the general superintendent with the approval of the board, after opportunity for a hearing.

> (1) Ordering new local school council elections.
> (2) Removing and replacing the principal.
> (3) Replacement of faculty members, subject to the provisions of Section 24A-5.
> (4) Reconstitution of the attendance center and replacement and reassignment by the general superintendent of all employees of the attendance center.
> (5) Intervention under Section 34-8.4.
> (5.5) Operating an attendance center as a contract turnaround school.
> (6) Closing of the school."

97. Khan believes that 105 ILCS 5/34-8.3 is facially unconstitutional because it does not clearly define the term "adequate progress" or any objective standards upon which adequate progress can be or is measured. Therefore, it does not give a person of ordinary intelligence a reasonable opportunity to know what is prohibited. Khan also believes that 105 ILCS 5/34-8.3 is facially unconstitutional because it does not clearly define what inadequate progress is, and therefore, its prohibitions are not clearly defined.

98. Khan believes that 105 ILCS 5/34-8.3 is facially unconstitutional because it does not clearly define the term "deficiencies" or any objective standards upon which those deficiencies can be identified. Therefore, it does not give a person of ordinary intelligence a reasonable opportunity to know what is prohibited.

99. 105 ILCS 5/34-8.3 is further unconstitutional because it is so standardless that it authorizes or encourages seriously discriminatory enforcement.

100.     105 ILCS 5/34-8.3 is further unconstitutional because it impermissibly delegates basic policy matters to school districts to determine what adequate progress is for resolution on an *ad hoc* basis, which leads to arbitrary and discriminatory application. For example, a new principal of a school on probation can be removed after just one day on the job before the principal has any practical opportunity to make any meaningful changes, even though the new principal's performance is not the reason why the school was placed on probation. In contrast, a principal whose poor performance contributes to a school being placed on probation could not be removed, however, if the school district is subjectively satisfied that the school is making some arbitrary "adequate progress." This possibility for arbitrary enforcement subjects principals like Khan to deprivation of the protected interest in their contract employments without due process of law.

101.     105 ILCS 5/34-8.3 is further unconstitutional because it impermissibly delegates basic policy matters to school districts to determine what deficiencies are for resolution on an *ad hoc* basis, which leads to arbitrary and discriminatory application.

102.     Khan believes that 105 ILCS 5/34-8.3 is unconstitutional as applied, or as CPS has threatened to apply it, because she has been removed as principal for Aldridge without a due process hearing, while male principals of schools that have comparable or worse progress records as Aldridge have not been removed.

103.     Khan believes that 105 ILCS 5/34-8.3 is unconstitutional as applied, or as CPS has threatened to apply it, because she has been removed as principal for

Aldridge without a due process hearing,  and that she was removed arbitrarily so that Saffold could replace her with her friend.

104.     On or about September 2, 2016, CBE scheduled what it calls a hearing pursuant to 105 ILCS 5/34-8.3(d) for September 22, 2016, to be governed by its guidelines and processes, and presided over by an officer it has unilaterally hired and will pay to consider whether Khan's 2013 and 2016 contracts should be terminated.

105.     Although CBE has since agreed to reschedule the hearing, it still wants to hold the hearing on September 29, 2016 or during the first week of October 2016, about a week or two after September 22, 2016.

106.     At all relevant times, CPS' guidelines for the removal and replacement of principals of schools on probation and procedures governing principal removal hearings, copies of which are attached as Exhibit 3, did not provide for a prompt, full post-termination hearing. Specifically, CPS' guidelines and procedures did not provide for the right to cross examine witnesses, or for discovery. In fact, the guidelines and procedures do not provide an opportunity to be heard at a meaningful time and in a meaningful manner. To this end, CBE confiscated Khan's laptop which has all of her body of work, including documents that are necessary for her to rebut CBE's claims. Since the documents are uniquely within the custody and control of CPS and the procedures do not allow for discovery, Khan cannot be heard in a meaningful manner because she will not be able to present any documentary evidence.

107.     At all relevant times, CPS Procedures for removing and replacing

Principals provided in relevant part that "the local school council of a school whose

principal has been removed and replaced by an interim principal pursuant to 34-

8.3(d) shall have no authority to select a new four-year contract principal until the

school makes sufficient educational progress to be removed from probation as

specified in the applicable Remediation/Probation Policy."

108.     Khan believes that she is entitled to a full due process pre-termination

hearing under her 2013 and 2016 contracts, including the right to engage in

reasonable discovery, to cross examine any witnesses that CBE presents for its case

against her and to compel the appearance of witnesses that may be necessary for

her defense.

109.     On September 7, 2016, CBE informed Khan that "[d]iscovery is not

allowed under the Procedures and Guidelines that govern these 8.3 hearings" that it

has proposed. CBE also informed Khan that "[t]he Procedures and Guidelines that

govern these 8.3 hearings" that it has proposed "do not allow for the subpoenaing of

witnesses."

110.     Khan believes that if CBE proceeds with its imminent hearing, she

faces the risk of being deprived of her present interest in continued employment and

entitlement to a due process hearing without an opportunity for a full due process of

law.

111.     WHEREFORE, Khan prays that this Honorable Court:

    A. Find and declare that 105 ILCS 5/34-8.3 is facially unconstitutional for

       vagueness and enjoin its enforcement;

B. Find and declare that Khan is entitled to a declaration that 105 ILCS
   5/34-8.3 is unconstitutional for vagueness as applied to Khan and
   enjoin its enforcement;

C. In the alternative, find and declare that Defendants are not entitled to
   enforce part V(g) of the 2013 and 2016 contracts because they are
   vague.

D. Grant Shaheena Khan any and all further relief that this Honorable
   Court may deem equitable and just.

## JURY DEMAND

111.   Plaintiffs hereby demand a trial by jury pursuant to Rule 38(b) of the
Federal Rules of Civil Procedure on all triable issues.

Respectfully Submitted

/s/ Eric Onyango
Eric Onyango
Prime Legal, LLC
222 North Columbus Drive, Suite 1507
Chicago, Illinois 60601
Counsel for Plaintiffs