IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

|  |  |  |
|---|---|---|
| SHAHEENA KHAN on her own behalf, and as next friend for EKB, a minor child | ) ) ) ) | |
| *Voluntary Plaintiffs*, | ) ) | No. 16-cv-8668 |
| Local School Council for Aldridge Elementary School | ) ) | |
| *Involuntary Plaintiff,* | ) ) | |
| v. | ) ) | |
| BOARD OF EDUCATION OF THE CITY OF CHICAGO, | ) ) | Amount Demanded: $720,000 The Honorable Judge Manish S. Shah |
| KAREN SAFFOLD *individually*, | ) | Magistrate Judge: Hon. Jeffrey T. Gilbert |
| FORREST CLAYPOOL *individually*, | ) | |
| JANICE JACKSON *individually*, | ) | |
| ELIZABETH KIRBY *individually*, | ) | |
| JAMES CIESIL, *individually* and | ) | |
| MARGARET FITZPATRICK | ) | |
| *Defendants.* | ) | |

## SECOND AMENDED COMPLAINT

Plaintiff, Shaheena Khan ("Shaheena"), on her own behalf, and as next friend for EKB, a

minor child, by one of their attorneys, Eric Onyango, complain of defendants Chicago Board of

Education ("CBE"), James Ciesil ("Ciesil"), individually,  Karen Saffold ("Saffold"),

individually, Forrest Claypool ("Claypool"), individually, Elizabeth Kirby ("Kirby")

individually, Janice Jackson ("Jackson"), individually, and Margaret Fitzpatrick ("Fitzpatrick")

upon personal information as to their own activities and upon information and belief as to the

activities of others and all other matters, for their Second Amended Complaint state as follows:

## INTRODUCTION

1.  This action, originally filed on September 5, 2016 seeks to (a) determine Shaheena's

rights under her two successive employment contracts, (b) enforce the terms of those contracts,

collect Shaheena and her minor child's damages and (c) collect Shaheena and her minor child's reasonable attorney's fees, costs and expenses.

2. Shaheena is an experienced educator in the Chicago Public Schools with an impeccable twenty-year employment record. In 2013, she became the contract Principal of Aldridge.

3. Aldridge is a struggling elementary school that is supposed to have been under intensive support for the past nine-years.

4. Adridge students are affected by economic, social, safety, and health issues. Shaheena, a former Aldridge student herself, and teacher accepted the Principal position with a realistic yet hopeful outlook.

5. Under Shaheena's leadership, Alridge's performance improved substantially during the 2015-2016 school year, and for the first time in nine years, the school is now ranked a level 2 school, and not a level 3 school[1].

6. Shaheena filed this lawsuit after she was improperly removed as Principal of Aldridge and reassigned to her home without due process of law.

**STATEMENT OF JURISDICTION**

7. This action arises in part under the laws of the United States, Title 28 U.S.C. § 2201, Due Process Clause of the Fourteenth Amendment of the United States Constitution, First Amendment of the United States Constitution, Title VII, and Title 42 U.S.C. § 1983 *et seq*. Jurisdiction is thus proper under 28 U.S.C. § 1331. Since this Court has original jurisdiction over a federal question, it also maintains supplemental jurisdiction over the state law claims.

8. An actual controversy exists between Plaintiffs and Defendants on multiple bases. Defendants have refused to reinstate Shaheena to her position as the Principal for Aldridge even

---

[1] See http://schoolinfo.cps.edu/schoolprofile/schooldetails.aspx?SchoolId=609848, last accessed October 25, 2016.

after progress reports showed that Aldridge's performance improved drastically under Khan's leadership.

9.   Shaheena and Defendants do not agree on the scope of due process rights that she is entitled to under her two employment contracts. CBE maintains that she is not entitled to conduct discovery, or to cross-examine witnesses at a pre-termination due process hearing even though a post-termination proceeding does not exist.

10. The parties do not agree that Shaheena can be removed under her second contract before she has had an opportunity to perform her obligations. While CBE has taken steps to remove her and threatened that it could terminate her second contract by October 31, 2016, Shaheena objects to CBE's position.

11. Shaheena contests the constitutionality of 105 ILCS 5/34-8.3(d) that Defendants have relied on to justify some of their actions.

12. Shaheena contests the constitutional adequacy of a letter that CBE sent her on September 2, 2016, purporting to be notice of a 105 ILCS 5/34-8.3(d) hearing.

13. Therefore, to remove the foregoing uncertainties, this Court may declare the rights and other legal relations of the parties herein pursuant to 28 U.S.C. §2201(a).

14. Venue is proper pursuant to 28 U.S.C. 1391(b)(2) because a substantial part of the events or omissions giving rise to this Second Amended Complaint occurred within the Northern District of Illinois.

15. At all relevant times, CBE was engaged in an industry affecting commerce and has had fifteen or more employees for each working day in each of twenty or more calendar weeks in the current or preceding calendar year.

16. At all relevant times, Shaheena was in one or more contractual relationships with CBE within the meaning of 42 U.S.C. § 1981.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

17. Shaheena filed a timely charge of harassment and discrimination based on gender, color, age and religion with the United States Equal Employment Opportunity Commission ("EEOC"). Said charge is incorporated herein by reference.

18. Shaheena filed a timely charge of retaliation with the EEOC. Said charge is incorporated herein by reference.

19. Shaheena has fulfilled all conditions precedent, including the filing of a charge of discrimination with the EEOC of the United States Government, and a request and receipt of a Right-to-sue letter from the EEOC for harassment and discrimination based on gender, color, age and religion and retaliation. A copy of the Right-to-sue letter is attached to this Second Amended Complaint.

## PARTIES

20. Shaheena is a 45-year old African-American female education administrator of Native American descent, Apache tribe, who lives in and pays taxes to the city of Chicago. She is the mother of Plaintiff EKB, a minor child of school age.

21. Shaheena was a practicing Muslim at all relevant times.

22. Shaheena has a light skin complexion.

23. Defendant CBE is a lawful quasi-municipal body that manages CPS.

24. At relevant times, Defendant Claypool was the Chief Executive Officer for CPS and Jackson's direct supervisor.

25. At relevant times, Defendant Jackson was the Chief Education Officer for CPS and Kirby's direct supervisor.

26. At relevant times, Defendant Kirby was the Networks Supervisor for CPS and Saffold's direct supervisor.

27. At relevant times, Saffold was employed by CBE and assigned to supervise some schools within CPS.

28. Saffold is an African-American female of dark skin complexion.

29. At relevant times, Ciesil was employed by CBE as a senior leader.

30. At all relevant times, Defendants, together or separately, acted, threatened or have threatened to act under color of state law within the meaning of 42 U.S.C. § 1983.

31. At all relevant times, the Local School Council for Aldridge Elementary School ("Aldridge LSC") was a lawful entity established under Illinois Law that could sue and be sued.

32. At all relevant times, the Aldridge LSC was responsible for (a) approving how Aldridge school funds and resources are allocated, (b) developing and monitoring the annual School Improvement Plan for Aldridge and (c) evaluating and selecting the school's Principal.

33. On information and belief, Defendant Fitzpatrick is a CPS vendor with a long-term contract to act as a hearing officer. She used to work for CPS in the Law Department.

## FACTUAL BACKGROUND
### I.     Aldridge Kid Grows Up To Be The Aldridge Principal and An Aldridge Parent

34. Shaheena was born and raised in Chicago, Illinois near Altgeld Gardens, a low-income housing project on the Southside. Shaheena attended Aldridge Elementary School ("Aldridge").

35.  Shaheena continued her education; receiving a B.A. from Aurora University, an M.A. in Curriculum & Instruction from DePaul University and a certificate in Instruction from Lewis University.

36. After earning her masters in 1996, Shaheena accepted employment with CPS. She has worked for CPS for nearly twenty years and has held various roles including teacher, director, interim Principal, interim network chief and contract Principal.

37. Shaheena is a certified and licensed school administrator and teacher in the State of Illinois. She began her career as a licensed teacher, became a certified administrator in or around 2003, and became eligible to serve as a CPS principal in 2011.

38. After years of education, effort, and dedication, in August 2011, Shaheena accepted an interim principal position at Kozminski Elementary School.

39. On June 20, 2013, Shaheena accepted an offer to become the Principal of Aldridge—the elementary school she attended. Shaheena was awarded a four-year contract beginning on July 1, 2013.

40. Shaheena was thrilled for the opportunity and, as a single mother, grateful for four-years of job security.

## II.      Aldridge Elementary School

41. Aldridge is in close proximity to Altgeld Gardens. Altgeld Gardens is isolated from the city and nearly five miles from the closest police station. The area is riddled with frequent incidents of gang violence.

42. Most of Aldridge's students live in Altgeld Gardens. 98.8% of the students come from families receiving public aid who are eligible for free or reduced price lunches. An estimated 5.6% of the student population is homeless.

43. Altgeld Gardens sits on an abandoned waste site and is surrounded by landfills. The poor air quality causes respiratory health issues for children in the neighborhood, resulting in frequent absences from school.

## III.     Terms of Shaheena's Employment Contract

44. Shaheena signed a Uniform Principal Performance Contract on June 20, 2013 (the, "2013 Contract"), with an effective term of July 1, 2013 to June 30, 2017. The 2013 Contract lists the Principal's duties and states "the Principal's primary responsibility is the improvement of instruction at the" school.

45. Shaheena's responsibilities as Principal involved significant collaboration with the Aldridge Local School Council ("LSC"), parents, teachers, and fellow administrators. Her responsibilities included: (1) developing a School Improvement Plan ("Plan") and submitting that Plan to the LSC for approval; (2) implementing the approved Plan; (3) developing the school curriculum; (4) developing an expenditure plan ("Expenditure Plan") and obtaining LSC's approval; (5) implementing the approved Expenditure Plan; (6) acting as a member of the LSC; (7) endeavoring to maintain a positive education and learning climate; and (8) establishing open communication regarding school goals, accomplishments, practices and policies with the LSC, parents and teachers.

46. CBE was required to pay Shaheena an annual salary and all benefits for which full-time, regularly appointed certificated employees are eligible. The LSC could renew the 2013 Contract based upon its evaluation of Shaheena's performance.

47. If renewed, CBE could challenge the renewal by requesting arbitration within 15 days after receipt of the renewed contract and naming Aldridge Local School Council as a party.

48. CBE could terminate the 2013 contract in limited circumstances, including: (1) written agreement of the parties; (2) discharge for cause; (3) closure of the school; (4) death, resignation or retirement; (5) misrepresentation regarding certification; or (6) "removal, reassignment, layoff or dismissal of the Principal pursuant to 105 ILCS 5/34-8.3 and 105 ILCS 5/34-8.4," after a due process hearing.

## IV.    Shaheena's Performance As Aldridge Principal

49. Shaheena approached her work with great dedication; she was a parent of an Aldridge student, a former Aldridge student herself, and an active member of the Aldridge community.

50. In or about 2014, Shaheena developed, with the help of the LSC, a two-year continuous improvement work plan ("2014 CIWP"). The 2014 CIWP was implemented with the

understanding that Shaheena and members of the Aldridge community would strive for incremental improvement at Aldridge over a five-year period.

51. The 2014 CIWP was approved by Shaheena's supervisors, the LSC, and CPS. The 2014 CIWP was working, Aldridge improved and Khan received favorable performance evaluations.

## V. Change in Supervision: Bizarre Scrutiny, Unsavory Directions & Unfair Attacks

52. In August 2015, Aldridge was transferred to Saffold's network. Saffold supervised many principals, and held a meeting with them to discuss the upcoming 2015-2016 school year. Saffold, however, excluded Shaheena from that meeting.

53. Soon after, Saffold publicly made unprofessional comments to Shaheena, stating she could do Shaheena's work in her sleep.

54. In September 2015, Saffold pressured Shaheena to only make Aldridge purchases from Saffold's "people" rather than vendors who could provide the best quality and pricing for school supplies.

55. When Shaheena resisted Saffold's attempt to steer public funds to her "people," Saffold threatened to "put paper" on Shaheena. Shaheena understood this to mean her supervisor would assert false complaints against her.

56. Saffold also questioned Shaheena's investments in school technology. Although Shaheena, as the Principal of Aldridge, was entrusted with the development and implementation of the school's Expenditure Plan, Saffold expressed that the students did not show enough intelligence or achieve high enough standardized-test scores to justify student use of technology or an investment in a digital-instructional program.

57. In December 2015, Saffold provided Shaheena with a unilateral "Memorandum of Understanding," in which Saffold accused Shaheena of failing to complete tasks that were never assigned to or discussed with Shaheena.

58. In December 2015, Saffold directed Shaheena to encourage Aldridge teachers to coach students during standardized tests. Shaheena informed Saffold that she was uncomfortable with the recommendation because it could be construed as encouraging teachers to help students cheat on exams.

59. Saffold continued making false accusations about Shaheena and repeatedly pressured Shaheena to sign documents she neither drafted nor approved.

60. In December 2015, Shaheena reported Saffold's misconduct to CPS Human Resources and Kirby.

61. Although Kirby assured Shaheena their conversation would remain confidential, the Saffold situation worsened.

62. On or about February 2016, without warning, Saffold called Shaheena to her office and presented her what was labeled a Corrective Action Plan ("CAP"). The CAP included nonsensical instructions with unrealistic deadlines, e.g., form a culture and climate team by February 15, 2016 and upload a meeting schedule identifying members of the team by February 12, 2016, three-days before creating the team.

63. On information belief, CPS Human Resources Department did not approve the CAP as required by CPS policy.

64. Saffold refused to provide guidance or answer Shaheena's requests for clarification about the CAP.

65. Saffold did not allocate any funds or resources to help Shaheena implement the CAP.

66. Illogical criticism and unrealistic expectations permeate the CAP. Saffold demanded Shaheena create several new performance plans within two weeks—each of these policies aimed to achieve arbitrary and fanciful goals.

67. The CAP required Shaheena "to create a K-2 math and literacy action plan to ensure that 75% of students are on track to attain benchmark at EOY."

68. The Aldridge team, including parents and prior supervisors, did not believe 75% was attainable. Saffold refused to explain her basis for the 75% requirement and rejected Shaheena's requests for guidance on prioritizing these tasks.

69. The unreasonable CAP was a sham. Male principals at comparable schools—e.g., Lawndale Elementary Community Academy and John M. Smyth Elementary School—were not placed on a CAP.

70. Shaheena did her best to comply with the CAP in addition to meeting her statutory duties, which are limited by statute (105 ILCS 5/10-21.4a) to those that are "in accordance with reasonable rules and regulations of" CBE.

## VI.    A Confidential Complaint Backfires

71. After Shaheena complained about Saffold's conduct, Saffold restricted Shaheena's access to CBE's budget system and spent Aldridge funds outside of the approved Expenditure Plan without LSC approval.

72. Saffold wasted nearly $20,000.00 of school funds on hardcopies of materials, when Shaheena had purchased electronic versions of the same materials at a fraction of the cost.

73. Shaheena believed Saffold procured these duplicative materials to steer Aldridge funds to "her people" in exchange for benefits that Shaheena does not currently know.

74. On or about April 8, 2016, Shaheena sent a confidential complaint to the CBE Office of Inspector General to report the misused public resources. Shaheena subsequently sent the reports,

including Saffold's attempt to tamper with Aldridge testing procedures, to the Cook County State Attorney's Office, the Illinois State Board of Education and the Chicago office of the Federal Bureau of Investigation because she believed that the conduct might have violated Illinois and federal anti-waste, anti-bribery and anti-corruption laws.

75. On or about April 10, 2016, at his request, Ciesil met with Shaheena's attorneys to discuss what he characterized as Shaheena's report of serious allegations. Rather than gather information and investigate the reported waste of tax-payer funds, Ciesil threatened Shaheena that her career with CPS was effectively over.

76. Shaheena reported Ciesil's threat to CPS officials.

77. This purportedly confidential complaint was disclosed to Saffold.

78. On June 24, 2016, 4 days after the sham CAP expired, Defendants issued a public warning resolution against Shaheena. A week later, Saffold, with Ciesil's knowledge, informed Shaheena that she was aware of her April complaint.

**VII.    Aldridge LSC Renews Shaheena's Contract**

79.  On July 21, 2016, the LSC informed Shaheena that they gave her a cumulative favorable performance evaluation and voted to renew her contract.

80. Shaheena signed a new four-year contract agreeing to serve as Aldridge's Principal from July 1, 2017 until June 30, 2021 ("2016 Contract"). Like the 2013 contract, absent Shaheena's consent or exceptional circumstances, the 2016 Contract could only be terminated by CBE upon "(b) removal for cause pursuant to 105 ILCS 5/34-85 … or (g) removal, reassignment, layoff or dismissal of the Principal pursuant to 105 ILCS 5/34-8.3 and 105 ILCS 5/34-8.4," after a due process hearing.

81. On July 29, 2016, Shaheena delivered two copies of her fully executed 2016 contracts to Eduardo Camacho, an agent of the CBE, at the Office of Local School Council Relations.

82. On or about July 29, 2016, Shaheena delivered a copy of her fully executed 2016 contract to Saffold.

## VIII.    CBE Does Not Challenge Renewal Shaheena's Contract

83. CBE did not challenge the renewal of Shaheena's contract within the time provided for under the contract.

## IX.    Saffold Removes Shaheena As Principal And Bans Her From CPS Locations

84. On August 24, 2016, Shaheena attended what she believed would be a budget meeting with Saffold. Instead, Saffold presented Shaheena with a letter that stated Shaheena was reassigned from Aldridge to her home effective August 24, 2016.

85. The letter instructed Shaheena to "not return to [Aldridge] or any CPS location for any reason without" Saffold's written authorization.

86. On August 24, 2016, Saffold denied Shaheena's request for her to modify the letter to allow her to accompany her minor child to school activities.

87. On August 24, 2016 Saffold confiscated Shaheena's laptop, district identification card and school keys. Later that day, Shaheena's CPS email and internet portal access were disabled.

88. On August 24, 2016, Shaheena's attorney informed Claypool, Kirby and Jackson of Saffold's August 24, 2016 activities and objected to Saffold's letter.

89. Shaheena's attorneys subsequently demanded that CBE and Saffold rescind the August 24, 2016 letter.

90. CBE and Saffold refused to rescind the letter.

## X.    Shaheena Misses EKB's First Day of Kindergarten School

91. On or about September 6, 2016, EKB, began the school year at a CPS elementary school.

92. Due to Saffold's letter banning Shaheena from any CPS location, Shaheena was unable to accompany EKB to his first day of kindergarten school, was not permitted on school property in

event of EKB's illness, and was prohibited from participating in EKB's activities for more than a week.

93. EKB was upset when Shaheena explained that she could not take him to or pick him up from school.

94. Shaheena was upset that she could not support and care for her child like other CPS parents.

95. CBE only partially lifted Shaheena's ban from CPS property the day before she filed a motion for a temporary restraining order.

**XI.    CBE Provides Shaheena a Belated and Deficient Notice**

96. On September 2, 2016, Claypool sent Shaheena a letter scheduling what he called a hearing pursuant to 105 ILCS 5/34-8.3(d) for September 22, 2016, to be governed by CBE 8.3(d) guidelines and processes.

97. The CBE 8.3(d) guidelines and processes do not allow for discovery.

98. The CBE 8.3(d) guidelines and processes do not allow for cross-examination of witnesses.

99. The CBE 8.3(d) guidelines and processes do not provide a prompt post-termination proceeding with the right to conduct discovery and cross-examine witnesses.

100.    The CBE 8.3(d) guidelines do not provide a standard that is used to determine whether Aldridge has made adequate progress during the 2015-2016 school year.

101.    The CBE 8.3(d) guidelines do not reasonably inform Shaheena of what she needs to provide to show that Aldridge has made adequate progress during the 2015-2016 school year.

102.    Sometime in 2016, CBE hired Fitzpatrick to decide whether Shaheena's 2013 and 2016 contracts could be terminated because Aldridge has allegedly failed to make adequate progress.

**XII.    CBE Denies Shaheena Access To Her Work Product and Training Opportunities**

103.    At all relevant times, the benefits that CPS employees like Shaheena were eligible for included access to and use of an electronic mail system (email), and an internet portal.

104.    Shaheena was supplied with and had access to a laptop, email account and internet portal for work.

105.    As of August 24, 2016, all of Shaheena's body of work was stored on her laptop and on CPS' internet portal.

106.    On various occasions since August 24, 2016, Shaheena has requested access her work product during her tenure at Aldridge, including her laptop.

107.    On various occasions since August 24, 2016, Shaheena has requested CBE to reinstate her access to her email account and to her CPS portal account.

108.    CBE has refused to honor Shaheena's requests.

109.    At all relevant times, the benefits that CPS employees like Shaheena were eligible for included professional training and development paid for by CPS of substantial monetary value.

110.    According to the 2016 contract, CBE agreed to pay Shaheena an annual salary and to provide benefits to her "in accordance with the Administrative Compensation Plan and the Rules, Policies and Procedures of the Board of Education, including all benefits for which full-time, regularly appointed certified employees are eligible."

111.    Since August 24, 2016, CBE has not invited Shaheena to any training opportunities even though these opportunities have been available to other employees.

**XIII.    Saffold Was Determined To Sabotage Shaheena's Career**

112.    As Shaheena's supervisor since 2015, Saffold intentionally embarked on a campaign to sabotage Shaheena's career and progress at Aldridge so that she could replace her with one of her friends, or a friend of her friends, in order to expand her influence at CPS.

113.    At various times between August 2015 and August 24, 2016, Saffold intentionally deprived Aldridge of resources that were necessary for the school to be a safe learning environment. She refused to approve a request to purchase communications equipment that were necessary to manage the school's security for a significant period of time, and refused Shaheena's request to make arrangements to repair or replace classroom ceiling and falling tiles, thereby endangering the safety of students at Aldridge.

114.    At various times between August 2015 and August 24, 2016, Saffold intentionally refused to provide Shaheena with the support that was necessary for Aldridge to make substantial academic progress. Despite having the means to do so, she refused to assign meaningful resources to Aldridge to: (a) help improve student attendance, (b) support the social emotional needs of students and parents, (c) extract and aggregate data, (d) coach staff and teachers at Aldridge on strategies and resources for de-escalation of student violence, (e) help decrease suspensions, (f) provide leadership coaching and support to Shaheena and (g) help recruit teachers in high need areas (e.g., special education, math and science).

115.    At various times between August 2015 and August 24, 2016, Saffold intentionally failed to provide feedback on professional development systems for Aldridge and failed to provide clear and consistent performance expectations and standards to Shaheena and Aldridge staff.

116.     At various times between August 2015 and August 24, 2016, Saffold intentionally failed to evaluate Shaheena's performance according to CPS' performance evaluation guidelines, which require two CPS mandated observations in a year with post-conference sessions to provide suggestions for improvement. Saffold failed to observe Shaheena and provide a post-evaluation feedback of Shaheena's performance in the first part of the 2015-2016 school year.

117.     At various times between August 2015 and August 24, 2016, Saffold intentionally undermined Shaheena's authority at Aldridge by making derogatory comments about Shaheena in front of her subordinate staff.

118.     On or about August, 2015, Saffold blamed Shaheena for having poor test scores, told Shaheena that she could do her job in her sleep, told Shaheena that Aldridge was filthy and that the bulletin boards looked terrible in the presence of several teachers, including a senior teacher, Bernice Mingo ("Ms. Mingo").

119.     Ms. Mingo later told Shaheena that she decided to retire earlier than she expected because she could not tolerate how disrespectful Saffold was towards Shaheena. On at least one occasion between August 2015 and August 24, 2016, Saffold and her deputy, Felicia Sanders ("Sanders"), yelled at and threw stacks of papers at Shaheena in front of her assistant principal.

120.     At various times between August 2015 and August 24, 2016, Saffold intentionally took steps to disrupt learning and testing at Aldridge.  On several occasions, Saffold sent her staff into classrooms to watch teachers without any prior warning and stayed for long periods of time. This tactic demoralized teachers, who complained to Shaheena that they felt that they were being harassed.

121.     On or about April 11, 2016, Saffold sent her staff to Aldridge to walk into classrooms to interrupt standardized testing activities without any prior warning. At least one staff, Doug Stalnos refused to leave classrooms when Shaheena requested him to do so.

122.     On one or more occasions between August 2015 and August 24, 2016, Saffold directed Shaheena to encourage Aldridge teachers to coach students while they took standardized tests. Shaheena told Saffold that she was not comfortable with her directive because it could be construed as encouraging cheating.

123.     On one or more occasions between August 2015 and August 24, 2016, Saffold publicly humiliated Shaheena by ridiculing her Muslim faith in public. Even though she had known Shaheena for years, Saffold purposely and repeatedly mispronounced her Islamic name as "Shakeena" in order to diminish her presence in public even after Shaheena corrected her.

124.     On or about December 2015, Saffold contemptuously rolled her eyes in public when Shaheena told her that she could not eat at a meeting because she was observing her Muslim fasting commitment.

125.     On information and belief, during her tenure at CPS, Saffold demonstrated a dislike for African-American females of light skin complexion and held a negative opinion of African-Americans in general.

126.     During her tenure at CPS, Saffold used fear, intimidation and coercion to encourage waste and/or corruption. According to an affidavit of a law enforcement officer, while supervising several schools in or around 2006, Saffold solicited a bribe from a vendor in exchange for providing business opportunities to that vendor. When the vendor rebuffed her demands, she conspired with others to retaliate against the vendor by taking steps to deny the vendor business opportunities with CPS.

127.     On information and belief, during her tenure as a supervisor of schools at CPS, Saffold interfered in the hiring of principals by pressuring the Local School Councils to hire one of her friends or friend of her friends without any consideration for merit, so that she could expand her influence at CPS. Those who refused to play along were pushed out of CPS.

128.    On or about August 24, 2016, Saffold appointed Treadwell as the Principal for Aldridge to replace Shaheena. At the time of her appointment, Treadwell had never been a principal anywhere.

129.    Treadwell is Saffold's friend, or the friend of Tiffany D. Brown, who is one of Saffold's best friends.  On information and belief, Treadwell is about 8 years younger than Shaheena.

130.    After Treadwell was installed at Aldridge, on information and belief, Saffold has directed an extraordinary amount of resources, support and promises to the school that she refused to provide to Shaheena.

131.    Since Shaheena's reassignment to "home", she has been deprived of valuable professional training and development opportunities of substantial monetary value, including one which occurred on or about August 25, 2016, and some of her salary.

132.    On or about August 26, 2016, Saffold met with the Local School Council for Aldridge. At the meeting, she directed the LSC to start preparing to look for a new Principal and promised the LSC that Aldridge would be a level 1 school within a year.

133.    At all relevant times, benefits that CPS employees like Shaheena were eligible for included paid vacation. By August 24, 2016, Shaheena had about 30 days of accrued vacation. Shaheena has not been paid all her salary due under her contracts, including her pay for her accrued but unused vacation.

134.    Shaheena's requests to CPS to rescind or modify the August 24, 2016 reassignment letter were ignored or invited threats that Shaheena would be charged with trespass if she visits CPS locations – even those locations that Saffold does not supervise, without Saffold's written authorization. As a result, Shaheena is afraid that she might be charged with

trespass if she visits any CPS location for interviews, to exercise her first amendment rights or other lawful purpose without unnecessary intrusion by Saffold.

135.     Because of the August 24, 2016 reassignment letter, Shaheena was deprived of the opportunity to control the education of her minor child by accompanying him to school or picking him up from school and her constitutional right to familial relations.

136.     The August 24, 2016 reassignment letter harmed EKB because it deprived him of the comfort and care of his mother while he attended school and his constitutional right to familial relations.

137.     On information and belief, sometime after August 24, 2016, Saffold, directly or through one or more individuals that she controls, intentionally distributed letters or documents to one or more parents of students at Aldridge, or members of the local community, including Yolanda McCoy (collectively "Saffold Allies") stating that Shaheena is banned from all CPS locations.

138.     On information and belief, on one or more occasions after August 24, 2016, the Saffold Allies distributed copies of the letters or documents at Aldridge, publicly read its contents to other members of the Aldridge community and parents and left the false impression that Shaheena had engaged in wrongful conduct that caused her to be banned from CPS locations.

## XIV.    Defendants Have Blacklisted Shaheena From CPS Opportunities

139.     On or about April 2016, Shaheena applied to two positions within CPS that she was qualified for and that she believes would have given her more responsibilities and benefits: Director of Special Projects, and Network Liaison. CPS did not consider Shaheena for either position, but, upon information and belief, filled these positions with other candidates who had not filed any complaints.

140.     Sometime after August 24, 2016, Shaheena applied for open CPS principal positions at Schmid Elementary School, Blaine Elementary School, Ninos Heroes Academic Center, Maria Saucedo Scholastic Academy. Some or all of these positions pay more and offer more responsibilities than Shaheena had at Aldridge, and would therefore be a promotion.

141.     Even though Shaheena is qualified for all positions, Defendants refused to consider her candidacy, in retaliation for her complaints and reports of unlawful conduct that are detailed above.

## XV.     Defendants Have Targeted And Unfairly Discriminated Against Shaheena

142.     Defendants' misconduct as detailed in this second amended complaint are motivated by discriminatory and/or illegitimate purposes. While Shaheena was placed on a phony CAP, subjected to a public warning resolution on June 24, 2016 and removed as Principal of Aldridge because the school had allegedly not made adequate progress in the three years that she was there, Male principals of schools with comparable or worse performance records than Aldridge were not subjected to similar treatment.

143.     The Principal for Lawndale Elementary Community Academy ("Lawndale"), Willard Willette, who is male, was not put on a CAP, subjected to a public warning resolution like Shaheena, or removed as Principal even though Lawndale has had just as low, or lower test scores as Aldridge for an extended period of time.

144.     The Principal for John M Smyth Elementary School ("Smyth"), Ronald R. Whitmore, who is male, was also not put on a CAP, subjected to a public warning resolution like Shaheena, or removed as Principal, even though Smyth has had just as low, or lower test scores as Aldridge for an extended period of time.

145.     Christian females Principals like Tracy Davis, who were coerced from their principalships for alleged performance reasons were reassigned to other meaningful jobs at CPS

and not deprived of their ability to continue to connect with colleagues through CPS' email system or access to training and development opportunities, while Shaheena, who is of Islamic faith, was reassigned to her home, had her email account deactivated and has been deprived of training and development opportunities.

146. While Shaheena was denied resources and support that was necessary to manage Aldridge, other African-American principals of dark skin complexion were not denied resources and support that was necessary to manage their schools.

147. While Shaheena, who is of Islamic faith was denied resources and support that was necessary to manage Aldridge, other non-Islamic Principals were not denied resources and support that was necessary to manage their schools. Non-Islamic Principals were not subjected to public humiliation or ridicule because of their religion like Shaheena was.

## XVI. CPS's Code of Silence And Its Senior Leadership

148. After Shaheena reported the instances of misconduct alleged above to Kirby, CBE's Office of Inspector General ("OIG"), CBE's Office of Equal Opportunity Compliance Office ("OEOC"), CBE CEO's office and CBE General Counsel's office, Kirby and officials from the OIG and OEOC ("collectively CPS Officials") met with Shaheena but have failed to conduct any meaningful investigation into the facts.

149. CPS Officials failed to follow up on investigating why Saffold insists that CPS Principals only use "her people" to purchase school supplies and services.

150. CPS Officials failed to follow up on Shaheena's allegations of threats and intimidation by Ciesil and Saffold.

151. CPS Officials failed to conduct a meaningful interview with Shaheena designed to establish the truth of what has been happening at Aldridge since it was assigned to Saffold's network.

152.     Despite promises to do so, CPS Officials did not visit Aldridge to collect evidence that was relevant to Shaheena's complaints.

153.     CPS Officials did not recommend, or otherwise cause, the immediate administrative suspension of Ciesil and Saffold pending formal disciplinary proceedings after Shaheena's complaints and reports.

154.     CPS Officials failed to follow up with law enforcement agencies regarding Shaheena's complaints and reports of waste.

155.     As a result of the bad faith or lack of investigation of the misconduct of Ciesil and Saffold as described above, the complaints related to waste at Aldridge, threats and intimidation of Shaheena were improperly and insufficiently addressed and/or allowed to occur without consequence. The investigators carried out the pervasive custom, practice and policy of CBE of failing to investigate, discipline or otherwise hold accountable its senior leadership, including but not limited to its network chiefs.

## XVII.     Defendants' Misconduct Has Caused Harm

156.     On information and belief, Defendants Ciesil and Saffold devised a plan to remove and blacklist Shaheena from her principalship and from CPS altogether after she reported a waste complaint in exercise of her first amendment rights.

157.     On information and belief, Claypool, Kirby and Jackson knew about, condoned, and possibly turned a blind eye to Saffold and Ciesil's plan to remove and blacklist Shaheena from her principalship and from CPS altogether after she reported a waste complaint in exercise of her first amendment rights.

158.     Defendants' conduct as detailed above demoralized Aldridge staff and deprived EKB of a reasonable access to quality education in a public school.

159.     Among the damages that Khan has already suffered as a proximate or direct result of Defendants' conduct are loss of her right to be the Principal of Aldridge for an extended period of time, moving expenses incurred as a result of the uncertainty about her job in excess of $2,000, back pains caused by stress and attorney's fees and litigation expenses.

160.     Saffold's decision to remove Shaheena as Principal for Aldridge on August 24, 2016 was irrational and arbitrary.

**COUNT ONE – AGAINST CBE**
**DUE PROCESS/FIRST AMENDMENT/EQUAL PROTECTION –**
**MONELL CLAIM**

161.     Shaheena repeats the allegations of paragraphs 1-160 of this second amended complaint as though fully alleged herein.

162.     The actions of Defendants Ciesil and Saffold were done pursuant to one or more of the following *de facto* policies, practices and/or customs of CBE that are so pervasive that they carry the force of law.

163.     Specifically, CBE has a *de facto* policy, practice and/or custom of concealing and/or suppressing senior leadership misconduct, including allegations of vendor steering, waste of public resources, corruption, intimidation or retaliation. The concealment and suppression of the existence of misconduct includes, but is not limited to: failure to sufficiently investigate allegations of misconduct, failure to accept complaints from citizens, employees or parents against senior leadership; failure to promptly record witness statements or preserve evidence; failure to promptly interview Ciesil and/or Saffold; failure to properly and sufficiently discipline Saffold and/or Ciesil, even where the complaint is sustained; fabrication of evidence; and failure to initiate prompt disciplinary procedures related to the alleged misconduct, even when the allegation of misconduct is true.

164.     Likewise, CBE has a *de facto* policy, practice and/or custom of failing to maintain accurate and complete records of complaints and investigations of misconduct of senior leadership officials.

165.     Likewise, CBE has a *de facto* policy, practice and/or custom of hiring and retaining unqualified area academic officers, network chiefs and other senior leaders, and failing to properly train, monitor and/or supervise its senior leaders.

166.     Finally, CBE has a *de facto* policy, practice and/or custom of a "code of silence." This code is an implicit understanding between and among members of the CBE senior leadership team resulting in a refusal or failure to report instances of misconduct of which they are aware, including allegations of waste, retaliation, intimidation or corruption, despite their obligation to do so. This includes CBE employees who remain silent or give false or misleading information during official investigations of a fellow senior CBE leader related to misconduct in order to protect themselves or their fellow co-workers from discipline, criminal prosecution or civil liability.

167.     Individually and collectively, the above described *de facto* policies, practices and/or customs of CBE proximately result in the culture and endemic attitude among senior leadership employees of CBE, including the Defendants, Ciesil and Saffold, that they may engage in misconduct against the citizenry, including parents, employees and students with impunity, and without fear of official consequence; they consider themselves "above the law."

168.     The aforementioned *de facto* policies, practices and/or customs of CBE, individually and collectively, have been maintained and/or implemented with utter indifference by CBE and has or have encouraged and/or motivated the Defendants Ciesil and Saffold, to commit the aforementioned wrongful acts against the Plaintiffs, and therefore acted as the direct and proximate cause of the harms sustained, or will be sustained by the Plaintiffs.

169.     The above acts and/or omissions violated Shaheena's rights under the First and Fourteenth Amendments to the United States Constitution.

170.     As a direct or proximate result of the facts and allegations set forth in Count One, Shaheena and EKB have suffered, and will in the future continue to suffer damages of a personal and pecuniary nature, and damage to their business and property.

171.     WHEREFORE, the Plaintiffs, Shaheena Khan and EKB demand judgment against the Board of Education for the City of Chicago, in an amount to be determined at trial, plus costs, attorneys' fees, and any other relief the Court deems just and appropriate.

### COUNT TWO – AGAINST CIESIL, CLAYPOOL, KIRBY, JACKSON AND SAFFOLD
### CONSPIRACY - FIRST AMENDMENT

172.     Shaheena repeats the allegations of paragraphs 1-160 of this second amended complaint as though fully alleged herein.

173.     As alleged above Shaheena spoke out about matters of public concern, to wit, the unlawful acts and conspiracy committed in the individual capacities of the Defendants Ciesil, Claypool, Jackson, Kirby and/or Saffold.

174.     Defendants, acting under color of law, individually and/or in concert with each other and other as yet unknown co-conspirators, unlawfully conspired to retaliate against Shaheena and EKB through concerted and deliberate action, including threats, intimidation and indifference in order to punish Shaheena for the exercise of her protected speech and to keep Shaheena from further exercising her right to protected speech, and to conceal evidence in Shaheena's possession.

175.     As the proximate result of the threats and intimidation described herein and above, Shaheena and EKB have suffered and will in the future continue to suffer damages of a personal and pecuniary nature.

25

176.     WHEREFORE, the Plaintiffs, Shaheena Khan and EKB demand judgment against the Defendants Jim Ciesil, Forest Claypool, Janice Jackson, Elizabeth Kirby and Karen Saffold, jointly and severally, in an amount to be determined at trial, including punitive damages, plus costs, attorneys' fees, and any other relief the Court deems just and appropriate.

## COUNT THREE – AGAINST CIESIL, CLAYPOOL, KIRBY, JACKSON AND SAFFOLD
## CONSPIRACY  - EQUAL PROTECTION

177.     Shaheena repeats the allegations of paragraphs 1-160 of this second amended complaint as though fully alleged herein.

178.     Defendants, acting under color of law, individually and/or in concert with each other, singled out the Plaintiffs, Shaheena and EKB with threats of employment termination, false arrest and denial of familial rights, all in retaliation for the acts and participation of the Plaintiff Shaheena, of providing evidence and information related to the investigation of Saffold and/or Ciesil.

179.     Defendants' conduct, as described above, violated the rights of Plaintiffs Shaheena and EKB, to equal protection of the laws as guaranteed under the Fourteenth Amendment to the United States Constitution, and caused Shaheena and EKB to suffer damages, including personal and pecuniary damages to be proven at trial.

180.     WHEREFORE, the Plaintiffs Shaheena Khan and EKB demand judgment against the Defendants, Jim Ciesil, Forest Claypool, Elizabeth Kirby, Janice Jackson and Karen Saffold, jointly and severally, in an amount to be determined at trial, including punitive damages, plus costs, attorney's fees, and any other relief the Court deems just and appropriate.

## COUNT FOUR – AGAINST CIESIL, CLAYPOOL, KIRBY, JACKSON AND SAFFOLD
## CONSPIRACY - 42 U.S.C. § 1985(2)

181.     Shaheena repeats the allegations of paragraphs 1-160 of this second amended complaint as though fully alleged herein.

**182.**     On information and belief, the individual Defendants, acting together and under color of law, reached an understanding and agreement, engaged in a course of conduct, and otherwise conspired among and between themselves and with other unnamed and/or as yet unknown co-conspirators, for the purpose of impeding, hindering, obstructing, or defeating, the due course of justice in Illinois, with intent to deny to Shaheena the equal protection of the laws. Specifically, by confiscating Shaheena's laptop, disabling her email account and portal access and banning her from any CPS location, Defendants intended to prevent Shaheena from having access to any documentation that could help her show the work she had done at Aldridge as part of her defense against Defendants' unlawfully removing her from her principalship.

183.     As the proximate result of the threats, intimidation, actions and omissions of the Defendants as described herein and above, Shaheena and EKB have suffered and will in the future suffer damages of a personal and pecuniary nature.

184.     WHEREFORE, the Plaintiffs, Shaheena Khan and EKB, demand judgment against the Defendants, Jim Ciesil, Forest Claypool, Elizabeth Kirby, Janice Jackson and Karen Saffold, jointly and severally, in an amount to be determined at trial, including punitive damages, plus costs, attorneys' fees, and any other relief the Court deems just and appropriate.

## COUNT FIVE – AGAINST SAFFOLD, CLAYPOOL, KIRBY, JACKSON AND CIESIL
## VIOLATION OF SHAHEENA AND EKB'S CONSTITUTIONAL RIGHTS TO
## FAMILIAL RELATIONS

185.     Shaheena repeats the allegations of paragraphs 1-160 of this second amended complaint as though fully alleged herein.

186.    At all relevant times, Shaheena had a constitutional liberty interest in familial relations, including the right to control the education of EKB.

187.    At relevant times, Saffold, Claypool, Kirby, Jackson and Ciesil knew or should have known that Shaheena had a minor child enrolled at a CPS school.

188.    On or about August 24, 2016, Saffold declined Shaheena's request to modify the reassignment letter to allow Shaheena to accompany EKB to school even though she corrected other mistakes that were on the original letter. She changed the date on the letter from August 25, 2016 to August 24, 2016 after Shaheena noted that it was inaccurate.

189.    At all relevant times, EKB had a constitutional right to be raised and nurtured by Shaheena. Raising and nurturing EKB includes escorting EKB to a public school of her choice, picking up EKB from said school, and participating in all activities that are reasonably connected to EKB's education and open to other parents.

190.    At all relevant times, Shaheena had a constitutional liberty interest in familial relations, including the right to control the education of EKB.

191.    There is no compelling, important, or rational basis for the August 24, 2016 reassignment letter written by Saffold that directs Shaheena "not to return to … any CPS location for any reason without written authorization" from Saffold.

192.    Saffold intentionally deprived Shaheena of her constitutional liberty interest in familial relations, specifically, the right to control the education of EKB by directing Shaheena "not to return to … any CPS location for any reason without written authorization," and by informing members of the public and Aldridge community that Shaheena is banned from all CPS locations.

193.    Saffold's conduct as detailed above shows that she acted, or failed to act with a deliberate or reckless  disregard for Shaheena and EKB's constitutional rights under the

Fourteenth Amendment to the United States Constitution, and 42 U.S.C. § 1983. The conduct that Shaheena and EKB complain of above that deprived them of their constitutional rights occurred at Defendants' direction or with their knowledge and consent.

194.     Saffold's conduct as detailed above was undertaken with malice, willfulness and reckless indifference to Shaheena and EKB's rights.

195.     As a direct or promixate result of Saffold's conduct as alleged above, Shaheena and EKB suffered actual and compensatory damages, including but not limited to pain and suffering, in an amount to be determined at trial.

196.     WHEREFORE, the Plaintiffs, Shaheena Khan and EKB, demand judgment against the Defendants, Jim Ciesil, Forest Claypool, Elizabeth Kirby, Janice Jackson and Karen Saffold, jointly and severally, in an amount to be determined at trial, including punitive damages, plus costs, attorneys' fees, and any other relief the Court deems just and appropriate.

### COUNT SIX – AGAINST CBE
### BREACH OF CONTRACT

197.     Shaheena repeats the allegations of paragraphs 1-160 of this second amended complaint as though fully alleged herein.

198.     At all relevant times, the 2013 contract was a valid and enforceable contract between Shaheena and CBE.

199.     Shaheena performed all her obligations under the 2013 contract.

200.     On August 24, 2016, CBE breached and violated a material term of the 2013 contract when it removed Shaheena as Principal for Aldridge and reassigned her to "home" without a due process hearing that is required pursuant to the contract before termination or reassignment.

201.     As a proximate or direct result of CBE's breach, Shaheena suffered damages and will continue to suffer future damages, including but not limited to lost training and development

opportunities, loss of her right to be the Principal for Aldridge for an extended period of time, lost wages and damage to her professional reputation.

202.     WHEREFORE, Shaheena seeks actual, compensatory and consequential damages against Board of Education for the City of Chicago for breach of the 2013 contract.

## COUNT SEVEN – AGAINST CBE
## DECLARATION THAT CBE HAS NO RIGHT TO REMOVE SHAHEENA UNDER THE JULY 2016 CONTRACT

203.     Shaheena repeats the allegations of paragraphs 1-160 of this second amended complaint as though fully alleged herein.

204.     At all relevant times, Shaheena had a present entitlement pursuant to the 2016 contract to pursue a gainful occupation as Principal for Aldridge, and to be compensated accordingly that was protected by the Due Process Clause of the Fourteenth Amendment of the United States Constitution and of the Constitution of the State of Illinois ("Due Process Clause").

205.     At all relevant times, the 2016 contract provided that it could be terminated by CBE upon "(b) removal for cause pursuant to 105 ILCS 5/34-85 … or (g) removal, reassignment, layoff or dismissal of the Principal pursuant to 105 ILCS 5/34-8.3 and 105 ILCS 5/34-8.4" after a due process hearing.

206.     On or about September 2, 2016, CBE scheduled what it calls a due process hearing pursuant to 105 ILCS 5/34-8.3(d) for September 22, 2016, to be governed by its guidelines and processes, and presided by an officer it has unilaterally hired and will pay.

207.     Although CBE has since agreed to reschedule the hearing, it still wants to hold the hearing in early November 2016.

208.     According to the CBE, Shaheena's 2016 contract could be terminated sometime promptly after the November 2016 hearing.

209.     According to the 2016 contract, Shaheena agreed to serve as Principal for Aldridge for four (4) years commencing July 1, 2017, and ending June 30, 2021. Shaheena has

not served any part of her obligations under the 2016 contract because her performance is not yet due.

210. Implied in the 2016 contract is the covenant or term that to be subject to removal, Shaheena must have an opportunity to work at Aldridge under the contract for a period of time that can form a reasonable basis upon which her performance can be judged to determine whether or not Aldridge has made "adequate progress in correcting deficiencies."

211. Because the beginning term of the 2016 contract has not yet commenced and Shaheena is not serving as the Principal under that contract, CBE has no right to remove Shaheena [under the 2016 contract].

212. WHEREFORE, Shaheena prays that this Honorable Court:

A. Adjudicate and determine the rights of the parties hereto under the 2016 contract;

B. Find and declare that CBE has no right to remove Shaheena under the 2016 contract prior to July 1, 2017;

C. Grant Shaheena Khan any and all further relief that this Honorable Court may deem equitable and just.

### COUNT EIGHT – AGAINST CBE
### DECLARATION THAT SHAHEENA HAS A RIGHT TO A FULL DUE PROCESS HEARING UNDER THE JULY 2016 CONTRACT

213. Shaheena repeats the allegations of paragraphs 1-160 of this second amended complaint as though fully alleged herein.

214. At all relevant times, Shaheena had a present entitlement pursuant to the 2016 contract to pursue a gainful occupation as Principal for Aldridge, and to be compensated accordingly that was protected by the Due Process Clause of the Fourteenth Amendment of the United States Constitution and of the Constitution of the State of Illinois ("Due Process Clause").

215.    At all relevant times, the 2016 contract provided that it could be terminated by CBE upon "removal, reassignment, layoff or dismissal of the Principal pursuant to 105 ILCS 5/34-8.3 and 105 ILCS 5/34-8.4" after a due process hearing.

216.    On or about September 2, 2016, CBE scheduled what it calls a due process hearing pursuant to 105 ILCS 5/34-8.3(d) for September 22, 2016, to be governed by its guidelines and processes, and presided over by an officer it has unilaterally hired and will pay.

217.    CBE has communicated that it intends to consider whether to terminate Shaheena's 2016 contract at the hearing.

218.    Although CBE has since agreed to reschedule the hearing, it still wants to hold the hearing in early November 2016.

219.    The CPS 105 ILCS 5/34-8.3(d) hearing guidelines and procedures do not provide Shaheena an opportunity to be heard at a meaningful time and in a meaningful manner.

220.    Shaheena is entitled to a full due process pre-termination hearing under her 2016 contract, including the right to conduct reasonable discovery, to cross examine any witnesses that CBE presents for its case against her and to compel the appearance of witnesses that may be necessary for her defense because she has a present interest in the employment contract and the CPS 105 ILCS 5/34-8.3(d) hearing guidelines and procedures do not provide for a prompt, full post-termination hearing to mitigate against the risk of CPS' unilaterally-picked and paid hearing officer making an incorrect decision.

221.    WHEREFORE, Shaheena prays that this Honorable Court:

A. Adjudicate and determine the rights of the parties hereto under the 2016 contract;

B. Find and declare that Shaheena has a right to a full due process hearing under the 2016 contract, with the right to cross examine and compel the appearance of necessary witnesses;

C. Grant Shaheena Khan any and all further relief that this Honorable Court may

    deem equitable and just.

**COUNT NINE – AGAINST CBE**
**DECLARATION THAT CPS' GUIDELINES FOR THE REMOVAL AND**
**REPLACEMENT OF PRINCIPALS OF SCHOOLS ON PROBATION AND**
**PROCEDURES GOVERNING PRINCIPAL REMOVAL HEARINGS ARE**
**UNCONSTITUTIONAL AND THAT SHAHEENA HAS THE RIGHT TO BE THE**
**PRINCIPAL FOR ALDRIDGE FOR THE TERM OF THE 2016 CONTRACT**

222.      Shaheena repeats the allegations of paragraphs 1-160 of this second amended

complaint as though fully alleged herein.

223.      At all relevant times, the 2016 contract provided that it could be terminated by

CBE upon "(b) removal for cause pursuant to 105 ILCS 5/34-85 … or (g) removal,

reassignment, layoff or dismissal of the Principal pursuant to 105 ILCS 5/34-8.3 and 105 ILCS

5/34-8.4" after a due process hearing.

224.      On or about September 2, 2016, CBE scheduled what it calls a due process

hearing pursuant to 105 ILCS 5/34-8.3(d) for September 22, 2016, to be governed by its

guidelines and processes, and presided over by an officer it has unilaterally hired and will pay, to

consider whether to terminate Shaheena's 2016 contract.

225.      Although CBE has since agreed to reschedule the hearing, it still wants to hold the

hearing in early November 2016.

226.      At all relevant times, CPS' guidelines for the removal and replacement of

principals of schools on probation and procedures governing principal removal hearings, did not

provide for a prompt, full post-termination hearing. Specifically, CPS' guidelines and procedures

did not provide for the right to cross examine witnesses, compel appearance of witnesses or for

discovery.

227.      The CBE 105 ILCS 5/34-8.3(d) guidelines and procedures cannot provide

Shaheena with an opportunity to be heard at a meaningful time and in a meaningful manner

because CBE confiscated her laptop which contains her body of work which she would need at a minimum to show her progress.

228.     The CBE 105 ILCS 5/34-8.3(d) guidelines and procedures cannot provide Shaheena with an opportunity to be heard at a meaningful time and in a meaningful manner because since discovery is not allowed, she cannot obtain documents and information that is uniquely in CBE's custody and control to prepare her defense.

229.     Shaheena is entitled to a full due process hearing under her contract because she has a present interest in the employment contract, and the hearing proposed by CPS does not provide for a prompt, full post-termination hearing to mitigate against the risk of CPS' unilaterally-picked and paid hearing officer making an incorrect decision.

230.     WHEREFORE, Shaheena prays that this Honorable Court:

A. Adjudicate and determine the rights of the parties hereto under the 2016 contract;

B. Find and declare that Shaheena is entitled to a declaration that she has the right to be the Principal for Aldridge Elementary School for the term of the 2016 contract, which is July 1, 2017 until June 30, 2021;

C. Find and declare that the CPS' guidelines for the removal and replacement of Principals of Schools on Probation and Procedures Governing Principal Removal Hearings are Unconstitutional;

D. Grant Shaheena Khan any and all further relief that this Honorable Court may deem equitable and just.

## COUNT TEN – AGAINST CBE
## DECLARATION THAT 105 ILCS 5/34-8.3(d) IS FACIALLY UNCONSTITUTIONAL

231.     Shaheena repeats the allegations of paragraphs 1-160 of this second amended complaint as though fully alleged herein.

232.     At all relevant times, the 2013 and 2016 contracts provided that CBE could terminate either upon "(b) removal for cause pursuant to 105 ILCS 5/34-85 … or (g) removal, reassignment, layoff or dismissal of the Principal pursuant to 105 ILCS 5/34-8.3 and 105 ILCS 5/34-8.4" after a due process hearing.

233.     At all relevant times, 105 ILCS 5/34-8.3(d) provided that "[s]chools placed on probation that, after a maximum of one year, fail to make adequate progress in correcting deficiencies are subject to the following actions by the general superintendent with the approval of the board, after opportunity for a hearing.

> (1) Ordering new local school council elections.
> (2) Removing and replacing the principal.
> (3) Replacement of faculty members, subject to the provisions of Section 24A-5.
> (4) Reconstitution of the attendance center and replacement and reassignment by the general superintendent of all employees of the attendance center.
> (5) Intervention under Section 34-8.4.
> (5.5) Operating an attendance center as a contract turnaround school.
> (6) Closing of the school."

234.     Shaheena believes that 105 ILCS 5/34-8.3(d) is facially unconstitutional because:

a.  it is impermissibly broad and vague in all of its applications;

b.  it does not provide a standard of review upon which adequate progress can be measured or analyzed;

c.  it does not clearly define the term "deficiencies" or any sufficiently objective standards upon which those deficiencies can be identified. Therefore, it does not give a person of ordinary intelligence a reasonable opportunity to know what is prohibited;

d.  it is so standardless that it authorizes or encourages seriously discriminatory enforcement;

e.  it impermissibly delegates basic policy matters to school districts to determine what adequate progress is for resolution on an *ad hoc* basis, which leads to

arbitrary and discriminatory application. A new Principal of a school on probation can be removed after just one day on the job before the Principal has any practical opportunity to make any meaningful changes, even though the new Principal's performance is not the reason why the school was placed on probation. In contrast, a Principal whose poor performance contributes to a school being placed on probation could not be removed, however, if the school district is subjectively satisfied that the school is making some arbitrary "adequate progress." This possibility for arbitrary enforcement subjects Principals like Shaheena to deprivation of the protected interest in their contract employments without due process of law.

235.      WHEREFORE, Shaheena prays that this Honorable Court:

A. Find and declare that 105 ILCS 5/34-8.3(d) is facially unconstitutional for vagueness and enjoin its enforcement;

B. In the alternative, find and declare that Defendants are not entitled to enforce part V(g) of the 2013 and 2016 contracts because they are vague.

C. Grant Shaheena Khan any and all further relief that this Honorable Court may deem equitable and just.

**COUNT ELEVEN – AGAINST CBE**
**DECLARATION THAT 105 ILCS 5/34-8.3(d) IS UNCONSTITUTIONAL AS APPLIED TO SHAHEENA**

236.      Shaheena repeats the allegations of paragraphs 1-160 of this second amended complaint as though fully alleged herein.

237.      At all relevant times, the 2013 and 2016 contracts provided that CBE could terminate either upon "(b) removal for cause pursuant to 105 ILCS 5/34-85 … or (g) removal, reassignment, layoff or dismissal of the Principal pursuant to 105 ILCS 5/34-8.3 and 105 ILCS 5/34-8.4" after a due process hearing.

238.     At all relevant times, 105 ILCS 5/34-8.3(d) provided that "[s]chools placed on probation that, after a maximum of one year, fail to make adequate progress in correcting deficiencies are subject to the following actions by the general superintendent with the approval of the board, after opportunity for a hearing.

> (1) Ordering new local school council elections.
> (2) Removing and replacing the principal.
> (3) Replacement of faculty members, subject to the provisions of Section 24A-5.
> (4) Reconstitution of the attendance center and replacement and reassignment by the general superintendent of all employees of the attendance center.
> (5) Intervention under Section 34-8.4.
> (5.5) Operating an attendance center as a contract turnaround school.
> (6) Closing of the school."

239.     Shaheena believes that 105 ILCS 5/34-8.3(d) is unconstitutional as applied, or as CPS has threatened to apply it, because she has been removed as Principal for Aldridge without a due process hearing, while Male principals of schools that have comparable or worse progress records as Aldridge have not been removed.

240.     Shaheena believes that 105 ILCS 5/34-8.3(d) is unconstitutional as applied, or as CPS has threatened to apply it, because:

    a.  she has been removed as Principal for Aldridge without a due process hearing;

    b.  she was removed arbitrarily so that Saffold could replace her with Saffold's friend, or a friend of Saffold's friend;

    c.  CPS has refused to provide her notice of the standard it uses to determine whether a school has made adequate progress;

    d.  CPS has confiscated and then refused to provide her with her body of work so that she can demonstrate the progress that she made;

    e.  CPS has refused to allow her to conduct discovery to obtain evidence that may be necessary for her defense;

f. CPS has refused to provide her with notice of what she needs to do to show that she had made adequate progress.

241.     WHEREFORE, Shaheena prays that this Honorable Court:

A. Find and declare that Shaheena is entitled to a declaration that 105 ILCS 5/34-8.3(d) is unconstitutional as applied to Shaheena, enjoin its enforcement as to her and invalidate any and all decisions that Defendants have made to date pursuant to 105 ILCS 5/34-8.3(d) and its derivative policies and regulations;

B. In the alternative, find and declare that Defendants are not entitled to enforce part V(g) of the 2013 and 2016 contracts because they are vague.

C. Grant Shaheena Khan any and all further relief that this Honorable Court may deem equitable and just.

## COUNT TWELEVE – AGAINST CBE
## VIOLATION OF THE ILLINOIS WHISTLEBLOWER ACT

242.     Shaheena repeats the allegations of paragraphs 1-160 of this second amended complaint as though fully alleged herein.

243.     At all relevant times, Section 15 of the Illinois Whistleblower Act ("IWA") provided in relevant part "[a]n employer may not retaliate against an employee for disclosing information to a government or law enforcement agency, where the employee has reasonable cause to believe that the information discloses a violation of a State or federal law, rule, or regulation."

244.     At all relevant times, the IWA was in effect as good Illinois law.

245.     At all relevant times, Section 20.2 of the IWA provided in relevant part that "[a]n employer may not threaten any employee with any act or omission if that act or omission would constitute retaliation against the employee under this Act."

246.     At all relevant times, Section 30 of the Illinois Whistleblower Act ("IWA")

provided in relevant part "[i]f an employer takes any action against an employee in violation of

Section 15 or 20, the employee may bring a civil action against the employer for all relief

necessary to make the employee whole .... including but not limited to the following ......

compensation for any damages sustained as a result of the violation, including litigation costs,

expert witness fees, and reasonable attorney's fees."

247.     At relevant times, Shaheena had reasonable cause to believe that Saffold's

insistence that she only make purchases for Aldridge services and supplies from specific vendors

that Saffold referred to as "her people" amounted to a violation of Illinois or federal laws, rules

or regulations prohibiting corruption, bribery and wasteful government spending.

248.     According to a law enforcement agency, Saffold has previously solicited a bribe

from a CPS vendor in exchange for business opportunities.

249.     At relevant times, Saffold discovered and therefore came to know about

Shaheena's reports regarding her waste and potentially corrupt and bribery acts.

250.     CBE, through Saffold, in retaliation against Shaheena for disclosing what she

reasonably believed to be violations of Illinois and/or federal laws, rules or regulations

prohibiting corruption, bribery and wasteful government spending, (a) gave Shaheena a poor

performance evaluation, (b) caused a false public warning resolution to be published against

Shaheena, (c) removed Shaheena from her principalship at Aldridge without due process of law,

(d) banned Shaheena from all CPS locations, and upon information and belief (e) disclosed

private facts in Shaheena's personnel file to the public.

251.     CBE's conduct as identified and described in this Second Amended Complaint

violated Section 15 and Section 20 of the IWA.

252.    As a direct or proximate result of Saffold's conduct as alleged above, Shaheena suffered, and is likely to continue to suffer actual and compensatory damages to be determined at trial.

253.    WHEREFORE, Shaheena seeks actual, compensatory and punitive damages and reasonable attorney's fees, expenses and costs against Board of Education for the City of Chicago for violation of her rights under the Illinois Whistleblower Act.

## COUNT THIRTEEN – AGAINST KAREN SAFFOLD
## TORTIOUS INTERFERENCE WITH 2013 CONTRACT

254.    Shaheena repeats the allegations of paragraphs 1-160 of this second amended complaint as though fully alleged herein.

255.    At all relevant times, Shaheena's employment with CBE could not be terminated without just cause.

256.    At relevant times, as Shaheena's direct supervisor, Saffold had knowledge of Shaheena's rights under her 2013 employment contract.

257.    Due to improper personal motives, including but not limited to installing friends or friends of friends as principals of elementary and high schools following the ouster of principals like Shaheena, Saffold intentionally and unjustifiably interfered with the valuable third party 2013 employment contract between Shaheena and CBE.

258.    Saffold was the driving force causing CBE to terminate Shaheena's employment and acted willfully and maliciously toward Shaheena with a reckless disregard of her rights under her 2013 employment contract.

259.    Shaheena has suffered, and is likely to continue to suffer significant damages as a direct and proximate result of Saffold's interference, including but not limited to lost wages, lost or diminished fringe benefits, attorney's fees and emotional distress.

260.     WHEREFORE, Shaheena seeks actual, compensatory and punitive damages, reasonable attorney's fees, expenses and costs, and other such other and further relief as this Court deems appropriate under the circumstances against Karen Saffold for tortious interference with her 2013 employment contract.

**COUNT FOURTEEN – AGAINST KAREN SAFFOLD**
**TORTIOUS INTERFERENCE WITH 2016 CONTRACT**

261.     Shaheena repeats the allegations of paragraphs 1-160 of this second amended complaint as though fully alleged herein.

262.     At all relevant times, Shaheena's employment with CBE could not be terminated without just cause.

263.     At relevant times, as Shaheena's direct supervisor, Saffold had knowledge of Shaheena's rights under her 2016 employment contract.

264.     Due to improper personal motives, including but not limited to installing friends or friends of friends as principals of elementary and high schools following the ouster of principals like Shaheena, Saffold intentionally and unjustifiably interfered with the valuable third party 2016 employment contract between Shaheena and CBE.

265.     Saffold was the driving force causing CBE to terminate Shaheena's employment and acted willfully and maliciously toward Shaheena with a reckless disregard of her rights under her 2016 employment contract.

266.     Shaheena has suffered, and is likely to continue to suffer significant damage as a direct and proximate result of Saffold's interference, including but not limited to lost wages, lost or diminished fringe benefits, attorney's fees and emotional distress.

267.     WHEREFORE, Shaheena seeks actual, compensatory and punitive damages, reasonable attorney's fees, expenses and costs, and other such other and further relief as this

Court deems appropriate under the circumstances against Karen Saffold for tortious interference with her 2016 employment contract.

## COUNT FIFTEEN – AGAINST CBE
## RACIAL HARASSMENT IN VIOLATION OF TITLE VII

268.    Shaheena repeats the allegations of paragraphs 1-160 of this second amended complaint as though fully alleged herein.

269.    The Defendants' conduct as alleged above constituted racial harassment under Title VII of the Civil Rights Act of 1964 in that Shaheena was subjected to unwanted and repeated demeaning and humiliating behavior by Saffold due to her light skin complexion and Native American heritage, and other employees of dark skin complexion were not subjected to similar treatment by her supervisor, Karen Saffold or other employees, which:

    a.  had the effect of unreasonably interfering with the performance of her duties;

    b.  the rejection of which was used as a basis for employment decisions affecting Shaheena;

    c.  created a hostile work environment for Shaheena.

270.    That as a direct and proximate result of said unlawful employment practices, Shaheena has suffered extreme mental anguish, outrage, severe anxiety about her future and ability to support herself and her family, harm to her employability and earning capacity, painful embarrassment among friends and co-workers, damage to her reputation, disruption of her personal life, and loss of enjoyment of the ordinary pleasures of life.

271.    WHEREFORE, Shaheena prays for the following relief:

    a.  That the Court enter judgment that the Defendant's acts and practices as set forth herein are in violation of the laws of the United States;

    b.  That the Court award Shaheena any lost wages, including back pay, front pay and lost fringe benefits, and including, without any limitation, any lost benefits that

would otherwise have been included in Shaheena's retirement plans which

resulted from the harassment with applicable prejudgment and statutory interest;

c.   That the Court award Shaheena compensatory damages;

d.   That the Court award Shaheena costs of litigation, including reasonable attorneys' fees, expert fees, expenses and costs;

e.   That the Court grant such other further relief that is just and proper under the circumstances.

## COUNT SIXTEEN – AGAINST CBE
## RELIGIOUS HARASSMENT AND DISCRIMINATION IN VIOLATION OF TITLE VII

272.     Shaheena repeats the allegations of paragraphs 1-160 of this second amended

complaint as though fully alleged herein.

273.     The Defendants' conduct as alleged above constituted religious harassment and

discrimination under Title VII of the Civil Rights Act of 1964 in that Shaheena was subjected to

unwanted and repeated demeaning and humiliating behavior by Saffold due to her religion, and

other non-Muslim employees were not subjected to similar treatment by her supervisor, Karen

Saffold or other employees, which:

a.   had the effect of unreasonably interfering with the performance of her duties;

b.   the rejection of which was used as a basis for employment decisions affecting Shaheena;

c.   created a hostile work environment for Shaheena.

274.     That as a direct and proximate result of said unlawful employment practices,

Shaheena has suffered extreme mental anguish, outrage, severe anxiety about her future and

ability to support herself and her family, harm to her employability and earning capacity, painful

embarrassment among friends and co-workers, damage to her reputation, disruption of her

personal life, and loss of enjoyment of the ordinary pleasures of life.

275.      WHEREFORE, Shaheena prays for the following relief:

    a. That the Court enter judgment that the Defendant's acts and practices as set forth herein are in violation of the laws of the United States;

    b. That the Court award Shaheena any lost wages, including back pay, front pay and lost fringe benefits, and including, without any limitation, any lost benefits that would otherwise have been included in Shaheena's retirement plans which resulted from the harassment with applicable prejudgment and statutory interest;

    c. That the Court award Shaheena compensatory damages;

    d. That the Court award Shaheena costs of litigation, including reasonable attorneys' fees, expert fees, expenses and costs;

    e. That the Court grant such other further relief that is just and proper under the circumstances.

**COUNT SEVENTEEN – AGAINST CBE**
**GENDER HARASSMENT AND DISCRIMINATION IN VIOLATION OF TITLE VII**

276.      Shaheena repeats the allegations of paragraphs 1-160 of this second amended complaint as though fully alleged herein.

277.      The Defendants' conduct as alleged above constituted gender harassment and discrimination under Title VII of the Civil Rights Act of 1964 in that Shaheena was subjected to unwanted and repeated demeaning and humiliating behavior by Saffold due to her gender, and other male employees were not subjected to similar treatment by her supervisor, Karen Saffold or other employees, which:

    a. had the effect of unreasonably interfering with the performance of her duties;

    b. the rejection of which was used as a basis for employment decisions affecting Shaheena;

    c. created a hostile work environment for Shaheena.

44

278.     That as a direct and proximate result of said unlawful employment practices, Shaheena has suffered extreme mental anguish, outrage, severe anxiety about her future and ability to support herself and her family, harm to her employability and earning capacity, painful embarrassment among friends and co-workers, damage to her reputation, disruption of her personal life, and loss of enjoyment of the ordinary pleasures of life.

279.     WHEREFORE, Shaheena prays for the following relief:

    a.  That the Court enter judgment that the Defendant's acts and practices as set forth herein are in violation of the laws of the United States;

    b.  That the Court award Shaheena any lost wages, including back pay, front pay and lost fringe benefits, and including, without any limitation, any lost benefits that would otherwise have been included in Shaheena's retirement plans which resulted from the harassment with applicable prejudgment and statutory interest;

    c.  That the Court award Shaheena compensatory damages;

    d.  That the Court award Shaheena costs of litigation, including reasonable attorneys' fees, expert fees, expenses and costs;

    e.  That the Court grant such other further relief that is just and proper under the circumstances.

**COUNT EIGHTEEN – AGAINST CBE**
**RETALIATION IN VIOLATION OF TITLE VII**

280.     Shaheena repeats the allegations of paragraphs 1-160 of this second amended complaint as though fully alleged herein.

281.     The Defendants' conduct as alleged above constituted violations of Shaheena's rights under Title VII of the Civil Rights Act of 1964 in that Defendants retaliated against Shaheena for taking part in protected activities by:

a. giving Shaheena a poor performance evaluation after she opposed waste of public resources, tampering with standardized testing, religious harassment, gender harassment and racial harassment;

b. removing Shaheena from her employment without due process of law;

c. depriving Shaheena of her right to familial relations by banning her from taking her child to school for more than a week;

d. isolating Shaheena from her co-workers, disabling her email account and access to internet portal;

e. circulating documents falsely implying that Shaheena had engaged in misconduct that caused her to be banned from CPS locations;

f. publicly publishing a baseless warning resolution;

g. depriving Shaheena of resources and support that were necessary for her to operate her school;

h. publicly undermining Shaheena's statutory authority to manage her school and subordinates.

282. That as a direct and proximate result of said unlawful employment practices, Shaheena has suffered extreme mental anguish, outrage, severe anxiety about her future and ability to support herself and her family, harm to her employability and earning capacity, painful embarrassment among friends and co-workers, damage to her reputation, disruption of her personal life, and loss of enjoyment of the ordinary pleasures of life.

283. WHEREFORE, Shaheena prays for the following relief:

a. That the Court enter judgment that the Defendant's acts and practices as set forth herein are in violation of the laws of the United States;

b. That the Court award Shaheena any lost wages, including back pay, front pay and lost fringe benefits, and including, without any limitation, any lost benefits that would otherwise have been included in Shaheena's retirement plans which resulted from the harassment with applicable prejudgment and statutory interest;

c. That the Court award Shaheena compensatory damages;

d. That the Court award Shaheena costs of litigation, including reasonable attorneys' fees, expert fees, expenses and costs;

e. That the Court grant such other further relief that is just and proper under the circumstances.

**COUNT NINETEEN – AGAINST CBE**
**VIOLATION OF 42 U.S.C. § 1981**

284. Shaheena repeats the allegations of paragraphs 1-160 of this second amended complaint as though fully alleged herein.

285. At all relevant times, the 2013 contract was a valid and enforceable contract between Shaheena and CBE. Said contract contained an implied covenant prohibiting discrimination, harassment and/or retaliation.

286. At relevant times, Defendants Ciesil and Saffold acted as CBE's agents and their conduct violated Shaheena's rights under the 2013 contract.

287. Shaheena sought to enforce the terms of her 2013 contract by objecting to Saffold and Ciesil's harassment, threats, bullying and discriminatory treatment of Shaheena. Defendants Ciesil and Saffold, separately or together, interfered with Shaheena's right to enforce the contract by:

a. continuing to subject her to repeated instances of harassment;

b. giving her, for the first time in her career, a negative performance review;

c. publishing an unwarranted public warning resolution;

d.  failing to reinstate Shaheena to her position as Principal for Aldridge;

e.  denying Shaheena the opportunity to accompany her minor child to school;

f.  failing to reinstate Shaheena's benefits that are provided to other employees, such as access to email, internet portal, and training and development opportunities.

288.  Defendants' conduct as alleged above constituted violations of Shaheena's rights under 42 U.S.C. § 1981 in that its conduct interfered with Shaheena's right to make and enforce contracts.

289.  That as a direct and proximate result of said unlawful employment practices, Shaheena has suffered damages including extreme mental anguish, outrage, severe anxiety about her future and ability to support herself and her family, harm to her employability and earning capacity, painful embarrassment among friends and co-workers, damage to her reputation, disruption of her personal life, and loss of enjoyment of the ordinary pleasures of life.

290.  WHEREFORE, Shaheena prays for the following relief:

a.  That the Court enter judgment that the Defendant's acts and practices as set forth herein are in violation of the laws of the United States;

b.  That the Court award Shaheena any lost wages, including back pay, front pay and lost fringe benefits, and including, without any limitation, any lost benefits that would otherwise have been included in Shaheena's retirement plans which resulted from the misconduct with applicable prejudgment and statutory interest;

c.  That the Court award Shaheena compensatory damages;

d.  That the Court award Shaheena costs of litigation, including reasonable attorneys' fees, expert fees, expenses and costs;

e.  That the Court grant such other further relief that is just and proper under the circumstances.

## COUNT TWENTY – AGAINST CBE
## VIOLATION OF THE ADEA

291.      Shaheena repeats the allegations of paragraphs 1-160 of this second amended complaint as though fully alleged herein.

292.      At all relevant times, CBE was an employer within the meaning of ADEA, §630(b), and employed more than the statutory minimum of 20 employees.

293.      CBE, acting through Saffold and her deputy Felicia Sanders ("Sanders"), created a hostile work environment for Shaheena during the 2015-2016 school year in part due to Shaheena's age. In this hostile environment, Saffold continuously undermined Shaheena's leadership at Aldridge as detailed above.

294.      On or about September 2015, Sanders and Saffold repeatedly questioned Shaheena's physical fitness to perform her job duties, implying that she was too old to perform her professional duties.

295.      CBE never created a similar hostile work environment for any younger principal during the 2015-2016 school year. If CBE created a similar hostile environment for a younger principal during the 2015-2016, such principals were not reassigned to "home".

296.      CBE did not impose an unreasonable CAP and of fraudulent content on principals of comparable or worse performing schools during the 2015-2016 school year. If CBE imposed an unreasonable CAP and of fraudulent content on principals of comparable or worse performing schools during the 2015-2016 school year, such principals were not reassigned to "home".

297.      By permitting a hostile working environment, by imposing an unjustified and unreasonable CAP in violation of CBE's policy, and by removing Shaheena from her principalship in part due to her age and replacing her with a significantly younger, unqualified employee, and by retaining less-qualified Principals under the age of forty, CBE discriminated against Shaheena on the basis of her age, in violation of §623(a).

298.     CBE's violations of Shaheena's rights under the ADEA were willful.

299.     These violations of Shaheena's rights have caused, and are likely to continue to cause her significant emotional and monetary harm.

300.     As a direct and proximate result of said unlawful employment practices, Shaheena has suffered damages including extreme mental anguish, outrage, severe anxiety about her future and ability to support herself and her family, harm to her employability and earning capacity, painful embarrassment among friends and co-workers, damage to her reputation, disruption of her personal life, and loss of enjoyment of the ordinary pleasures of life.

301.     WHEREFORE, Shaheena prays for the following relief:

    a.  That the Court enter judgment that the Defendant's acts and practices as set forth herein are in violation of the laws of the United States;

    b.  That the Court award Shaheena any lost wages, including back pay, front pay and lost fringe benefits, and including, without any limitation, any lost benefits that would otherwise have been included in Shaheena's retirement plans which resulted from the misconduct with applicable prejudgment and statutory interest;

    c.  That the Court award Shaheena compensatory damages;

    d.  That the Court award Shaheena costs of litigation, including reasonable attorneys' fees, expert fees, expenses and costs;

    e.  That the Court grant such other further relief that is just and proper under the circumstances.

## COUNT TWENTY ONE – AGAINST CBE
## BREACH OF FIDUCIARY DUTY

302.     Shaheena repeats the allegations of paragraphs 1-160 of this second amended complaint as though fully alleged herein.

303.    At relevant times, a fiduciary relationship existed between Saffold and Shaheena because Shaheena was a parent of a CPS student and Saffold was a public official entrusted to supervise CPS schools.

304.    At relevant times CBE owed Shaheena and EKB a fiduciary duty of care to act in their best interests.

305.    At relevant times, a fiduciary relationship existed between Saffold and EKB because EKB was a student at a CPS school and Saffold was a public official entrusted to supervise CPS schools.

306.    At all relevant times, Saffold had a fiduciary duty to act in the best interest of Shaheena as a parent and EKB as a student.

307.    Saffold violated and breached her fiduciary duty to Shaheena by depriving her of the opportunity to accompany EKB to school for more than a week.

308.    Saffold violated and breached her fiduciary duty to EKB by depriving him of the right to be accompanied to school by his mother for more than a week.

309.    Saffold violated and breached her fiduciary duty to Shaheena and EKB by intentionally depriving Aldridge of resources that were necessary to operate and maintain the school in good order.

310.    Saffold violated and breached her fiduciary duty to Shaheena by removing her as Principal for Aldridge without due process of law.

311.    On several occasions after August 24, 2016, CBE refused to rescind Saffold's decision to remove Shaheena as Principal for Aldridge even after it became clear that Aldridge's performance had improved substantially under her tenure.

312.    Shaheena and EKB have suffered, and are likely to continue to suffer significant damages as a direct and proximate result of Saffold and CBE's breach of their fiduciary duties,

including but not limited to lost wages, loss of professional reputation, lost or diminished fringe benefits, attorney's fees and emotional distress.

313.     WHEREFORE, Shaheena and EKB seek actual, compensatory and punitive damages (including reasonable attorney's fees), expenses and costs, and other such other and further relief as this Court deems appropriate under the circumstances against CBE for breach of fiduciary duty.

### COUNT TWENTY TWO – AGAINST CBE AND FITZPATRICK DECLARATION THAT THE SEPTEMBER 2, 2016 NOTICE TO SHAHEENA IS CONSTITUTIONALLY INADEQUATE

314.     Shaheena repeats the allegations of paragraphs 1-160 of this second amended complaint as though fully alleged herein.

315.     At all relevant times, the 2013 and 2016 contracts provided that CBE could terminate either upon "(b) removal for cause pursuant to 105 ILCS 5/34-85 … or (g) removal, reassignment, layoff or dismissal of the Principal pursuant to 105 ILCS 5/34-8.3 and 105 ILCS 5/34-8.4" after a due process hearing.

316.     Shaheena believes that the September 2, 2016 notice of hearing that CBE sent her is constitutionally inadequate because it does not give her sufficient notice of the standard Fitzpatrick will use to determine whether Aldridge made adequate progress during the 2015-2016 school year.

317.     On or about October 6, 2016, Shaheena's attorney informed Fitzpatrick that she had challenged the constitutionality of the processes that CBE intends to use at its proposed hearing by filing a motion for a temporary restraining order and for a preliminary injunction. Shaheena's attorney informed Fitzpatrick that the Court had taken the motion under advisement and expected to rule by November 1, 2016.

318.     Ciesil responded to Shaheena's counsel's communication to Fitzpatrick by asserting that the Court had rejected Shaheena's arguments.

319.     On October 7, 2016, Fitzpatrick stated to Shaheena's attorneys that despite the pending motion for a temporary restraining order and a preliminary injunction, she saw "no reason why this hearing cannot be scheduled."

320.     On October 11, 2016, Shaheena's attorney expressly requested Fitzpatrick for a definition or explanation of the standard she would apply in determining whether Aldridge made "adequate progress" in the 2015-2016 school year. Fitzpatrick did not respond to the request.

321.     Even though Shaheena has continuously objected to the propriety of a hearing while her legitimate constitutional challenges to her removal as Principal for Aldridge remain pending, Fitzpatrick has insisted on holding a rushed hearing in early November 2016.

322.     Lack of notice of the standard Fitzpatrick will apply prejudices Shaheena because it denies her a fair opportunity to prepare for the hearing.

323.     WHEREFORE, Shaheena prays that this Honorable Court:

A. Find and declare that Shaheena is entitled to a declaration that the letter sent to her on September 2, 2016 is constitutionally inadequate for purposes of 105 ILCS 5/34-8.3(d) because it does not reasonably inform her of the standard that will be applied in determining whether Aldridge made adequate progress during the 2015-2016 school year.

B. Grant Shaheena Khan any and all further relief that this Honorable Court may deem equitable and just.

**JURY DEMAND**

324.     Plaintiffs hereby demand a trial by jury pursuant to Rule 38(b) of the Federal Rules of Civil Procedure on all triable issues.

# PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, Shaheena Shaheena and EKB, accordingly and respectfully demand judgment against Karen Saffold, Jim Ciesil, Forest Claypool, Elizabeth Kirby, Janice Jackson and/or Board of Education of the City of Chicago as follows:

325.    That Plaintiffs be awarded actual, general compensatory and consequential damages of at least $720,000 to be determined at trial;

326.    That Plaintiffs be awarded punitive damages to be determined at trial;

327.    That Plaintiffs be awarded reasonable attorney's fees, costs and expenses in this action;

328.    That Plaintiffs be awarded declaratory judgment as to each appropriate count detailed above;

329.    That Plaintiffs be awarded any such further additional relief as this Court deems appropriate under the circumstances.

Respectfully Submitted


s/ Eric Onyango
Eric Onyango
Prime Legal, LLC
222 North Columbus Drive, Suite 1507
Chicago, Illinois 60601
Counsel for Plaintiffs Shaheena Khan and EKB

## U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

# DISMISSAL AND NOTICE OF RIGHTS

To: **Shaheena H. Khan, c/o Eric Onyango, Esq.**
**Prime Legal**
**222 North Columbus Drive, Ste. 1507**
**Chicago, IL 60601**

From: **Chicago District Office**
**500 West Madison St**
**Suite 2000**
**Chicago, IL 60661**

☐ On behalf of person(s) aggrieved whose identity is
CONFIDENTIAL (29 CFR §1601.7(a))

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| **440-2016-04482** | **Eric Lamb,**<br>**Investigator** | **(312) 869-8092** |

### THE EEOC IS CLOSING ITS FILE ON THIS CHARGE FOR THE FOLLOWING REASON:

☐ The facts alleged in the charge fail to state a claim under any of the statutes enforced by the EEOC.

☐ Your allegations did not involve a disability as defined by the Americans With Disabilities Act.

☐ The Respondent employs less than the required number of employees or is not otherwise covered by the statutes.

☐ Your charge was not timely filed with EEOC; in other words, you waited too long after the date(s) of the alleged discrimination to file your charge

☒ The EEOC issues the following determination: Based upon its investigation, the EEOC is unable to conclude that the information obtained establishes violations of the statutes. This does not certify that the respondent is in compliance with the statutes. No finding is made as to any other issues that might be construed as having been raised by this charge.

☐ The EEOC has adopted the findings of the state or local fair employment practices agency that investigated this charge.

☐ Other (briefly state)

## - NOTICE OF SUIT RIGHTS -
(See the additional information attached to this form.)

**Title VII, the Americans with Disabilities Act, the Genetic Information Nondiscrimination Act, or the Age Discrimination in Employment Act:** This will be the only notice of dismissal and of your right to sue that we will send you. You may file a lawsuit against the respondent(s) under federal law based on this charge in federal or state court. Your lawsuit **must be filed <u>WITHIN 90 DAYS</u> of your receipt of this notice**; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a claim under state law may be different.)

**Equal Pay Act (EPA):** EPA suits must be filed in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that **backpay due for any violations that occurred <u>more than 2 years (3 years)</u> before you file suit may not be collectible.**

On behalf of the Commission

*Julianne Bowman*      10-12-16

Enclosures(s)

**Julianne Bowman,**
**District Director**

(Date Mailed)

cc: **Susan O'Keefe**
**Deputy General Counsel**
**LAW DEPARTMENT**
**Board of Education of the City of Chicago**
**One North Dearborn, Suite 900**
**Chicago, IL 60602**