IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| SHAHEENA KHAN on her own behalf; as next friend for EKB, a minor child; on behalf of the CITY OF CHICAGO; and derivatively on behalf of LOCAL SCHOOL COUNCIL FOR ALDRIDGE ELEMENTARY SCHOOL, CHICAGO PRINCIPALS & ADMINISTRATORS ASSOCIATION on its own behalf and on behalf of SHAHEENA KHAN, TRUDY TAYLOR and similarly or substantially similarly situated member principals, | No. 16-cv-8668 Amount Demanded, Shaheena: $2,080,000 Amount Demanded, CPAA    : $7,000,000 Presiding Judges: The Honorable Judge Manish S. Shah Magistrate Judge: Hon. Jeffrey T. Gilbert |
| *Plaintiffs*, | JURY  TRIAL DEMANDED |
| v. | |
| BOARD OF EDUCATION OF THE CITY OF CHICAGO, SCHOLASTIC, INC., GERALD BEIMLER *individually*, KAREN SAFFOLD *individually*, FORREST CLAYPOOL *individually*, JANICE JACKSON *individually*, ELIZABETH KIRBY *individually*, THOMAS KRIEGER *individually*, FELICIA SANDERS *individually*, BRIAN ALI *individually*, RONALD MARMER *individually*, JAMES CIESIL, *individually* and MARGARET FITZPATRICK | |
| *Defendants*. | |

## **THIRD AMENDED COMPLAINT**

Plaintiffs, Shaheena Khan, on her own behalf; as next friend for EKB, a minor child; on

behalf of the City of Chicago; and derivatively on behalf of Local School Council for Aldridge

Elementary School, Chicago Principals & Administrators Association ("CPAA"), on its own

behalf, and on behalf of its members Shaheena Khan ("Shaheena"), Trudy Taylor ("Trudy") and

1

other similarly or substantially similarly situated members (collectively the "CPAA Class"),
complain of Defendants Board of Education of the City of Chicago ("CBE"), James Ciesil
("Ciesil"), Karen Saffold ("Saffold"), Felicia Sanders ("Sanders"), Brian Ali ("Ali"), Forrest
Claypool ("Claypool"), Elizabeth Kirby ("Kirby"), Janice Jackson ("Jackson"), Thomas Krieger
("Krieger"),  Ronald Marmer ("Marmer"), Gerald Beimler ("Beimler"), and Margaret Fitzpatrick
("Fitzpatrick"), and seek declaratory, injunctive and monetary relief.

## JURISDICTION

1. Plaintiffs raise federal claims under 28 U.S.C. § 2201, U.S.C. § 1983 *et seq* and 29
U.S.C. § 1140. Jurisdiction is thus proper under 28 U.S.C. § 1331.

2. Supplemental jurisdiction is proper under 28 U.S.C. § 1367.

3. An actual controversy exists between Plaintiffs and Defendants. CBE has threatened to
remove one or more CPAA members from their positions as school principals and to terminate
their employment under 105 ILCS 5/34-8.3 without adequate due process of law.

4. The parties disagree about the constitutionality of a suspect applicable state statute and
related procedures and guidelines. Plaintiffs face a real threat of harm by the Defendants that is
ripe for a judicial decision.

5. The controversies described above are capable of repetition yet evading judicial review.

6. After this lawsuit was filed, CBE has changed its positions multiple times and is likely to
continue to do so in a way that will harm Plaintiffs without any opportunities for judicial relief.

7. To remove the foregoing uncertainties, this Court may declare the rights and other legal
relations of the parties herein pursuant to 28 U.S.C. §2201(a).

8. Venue is proper pursuant to 28 U.S.C. 1391 because a substantial part of the events
giving rise to Plaintiffs' claims occurred within the Northern District of Illinois and most of the
Defendants reside in the Northern District of Illinois.

9. At all relevant times, CBE was engaged in an industry affecting commerce and has had fifteen or more employees for each working day in each of twenty or more calendar weeks in the current or preceding calendar year.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

10. Plaintiffs have exhausted all administrative remedies. For the civil rights claims, Shaheena filed a timely charge with the United States Equal Employment Opportunity Commission ("EEOC"). Said charge is incorporated herein by reference. A right to sue letter is attached to this Complaint.

## PARTIES

11. Shaheena is a 45-year old African-American female education administrator who lives in and pays taxes to the city of Chicago. She is the mother of Plaintiff EKB, a minor child of school age.

12. Shaheena was a practicing Muslim at all relevant times.

13. Defendant CBE is a quasi-municipal body that manages Chicago Public Schools ("CPS").

14. At relevant times, Defendant Claypool was the Chief Executive Officer for CPS and Defendant Jackson's direct supervisor.

15. At relevant times, Defendant Jackson was the Chief Education Officer for CPS and Defendant Kirby's direct supervisor.

16. At relevant times, Defendant Saffold was employed by CBE and assigned to supervise some schools within CPS.

17. At relevant times, Defendant Kirby was the Networks Supervisor for CPS and Defendant Saffold's direct supervisor.

18. At relevant times, Defendant Beimler was employed by CBE as a data strategist in Saffold's network and was subject to Saffold's control.

19. At relevant times, Defendant Sanders was employed by CBE as Saffold's deputy.

20. At relevant times, Defendant Ali was employed by CBE in a capacity that is presently unknown to Plaintiffs.

21. At relevant times, Defendant Ciesil was employed by CBE as a senior leader.

22. At relevant times, Defendant Marmer was employed by CBE as a senior leader.

23. At relevant times, Defendant Krieger was employed by CBE as a senior leader.

24. At relevant times, Defendants, together or separately, acted, or threatened to act under color of state law within the meaning of 42 U.S.C. § 1983.

25. At all relevant times, the Local School Council for Aldridge Elementary School ("LSC") was a policymaking board responsible for (a) approving how Aldridge school funds and resources are allocated, (b) developing and monitoring the annual School Improvement Plan for Aldridge and (c) evaluating and selecting the school's Principal.

26. Defendant Fitzpatrick is a CPS vendor with a long-term contract to act as a hearing officer and she was formerly employed by CPS within the Law Department unit.

27. Plaintiff Chicago Principals & Administrators Association, Local 2, American Federation of School Administrators, AFL-CIO ("CPAA") is a duly organized not-for-profit organization under the laws of Illinois.

28. The CPAA is the designated collective-bargaining agent and official professional organization for CPS principals and administrators.

29. Defendant Scholastic, Inc., ("Scholastic") is for profit corporation with its principal office in New York, New York. At relevant times, it was engaged in interstate commerce.

## FACTUAL BACKGROUND

30. Shaheena was born and raised in Chicago, Illinois near Altgeld Gardens, a low-income housing project on the Southside. Shaheena attended Aldridge Elementary School ("Aldridge").

31. Shaheena continued her education; receiving a B.A. from Aurora University, an M.A. in Curriculum & Instruction from DePaul University and a certificate in Instruction from Lewis University.

32. After earning her masters in 1996, Shaheena accepted employment with CPS. She has worked for CPS for nearly twenty years and has held various roles including teacher, district literacy coach, curriculum director, interim principal, interim network chief, and contract principal.

33. Shaheena is a certified and licensed school administrator and teacher in the State of Illinois. She began her career as a licensed teacher, became a certified administrator in or around 2003, and became eligible to serve as a CPS principal in 2011.

34. On June 20, 2013, Shaheena accepted an offer to become the Principal of Aldridge—the elementary school she attended. Shaheena was awarded a four-year contract beginning on July 1, 2013.

35. Shaheena's professional goal, interest and choice since she graduated from college has always been to serve as a principal for elementary schools in Chicago—her hometown, especially at Aldridge.

36. Aldridge is in close proximity to Altgeld Gardens. Altgeld Gardens is isolated from the city and nearly five miles from the closest police station. The area is riddled with frequent incidents of gang violence.

37. Most of Aldridge's students live in Altgeld Gardens. 98.8% of the students come from families receiving public aid who are eligible for free or reduced price lunches. An estimated 5.6% of the student population is homeless.

38. Altgeld Gardens sits on an abandoned waste site and is surrounded by landfills. The poor air quality causes respiratory health issues for children in the neighborhood, resulting in frequent absences from school.

39. In June 2013, Shaheena entered into a contract with the LSC ("2013 contract") to serve as Principal for Aldridge from July 1, 2013 to June 30, 2017.

40. Under the 2013 contract, CBE was required to pay Shaheena an annual salary and all benefits for which full-time, regularly appointed certificated employees are eligible.

41. The LSC could renew the 2013 Contract based upon its evaluation of Shaheena's performance. If renewed, CBE could challenge the renewal by requesting arbitration within 15 days after receipt of the new contract and naming the LSC as a party.

42. CBE could terminate the 2013 contract in limited circumstances, including "removal, reassignment, layoff or dismissal of the Principal to the extent permitted by 105 ILCS 5/34-8.3 *and* 105 ILCS 5/34-8.4," after a due process hearing.

43. In or about 2014, Shaheena developed, in collaboration with the LSC, a statutorily required two-year continuous improvement work plan for Aldridge ("2014 CIWP").

44. The 2014 CIWP was approved by Shaheena's supervisors, the LSC, and CPS.

45. During the period covered by the 2014 CIWP, Aldridge improved and Shaheena received favorable performance evaluations.

46. In August 2015, Aldridge was transferred to Saffold's network. Saffold supervised many principals, and held a meeting with them to discuss the upcoming 2015-2016 school year. Saffold, however, excluded Shaheena from that meeting.

47. Soon after, Saffold publicly made unprofessional comments to Shaheena, stating she could do Shaheena's work in her sleep.

48. In September 2015, Saffold pressured Shaheena to only make Aldridge purchases from Saffold's "people" rather than vendors who could provide the best quality and pricing for school supplies, who included current or former employees, agents or contractors of Scholastic.

49. When Shaheena resisted Saffold's attempt to steer public funds to her "people," Saffold threatened to "put paper" on Shaheena, meaning that she would assert false complaints against Shaheena.

50. Saffold also questioned Shaheena's investments in school technology.

51. In December 2015, Saffold provided Shaheena with a "Memorandum of Understanding," in which Saffold accused Shaheena of failing to complete tasks that were never assigned to or discussed with Shaheena.

52. In December 2015, Saffold directed Shaheena to encourage Aldridge teachers to coach students during standardized tests. Shaheena informed Saffold that she was uncomfortable with the recommendation because it could be construed as encouraging teachers to help students cheat on exams.

53. Saffold continued making false accusations about Shaheena and repeatedly pressured Shaheena to sign documents she neither drafted nor approved.

54. In December 2015, Shaheena reported Saffold's misconduct to CPS Human Resources and Kirby.

55. Although Kirby assured Shaheena their conversation would remain confidential, the Saffold situation worsened.

56. On or about February 2016, without warning, Saffold called Shaheena to her office and presented her what was labeled a Corrective Action Plan ("CAP"). The CAP included nonsensical instructions with unrealistic deadlines, e.g., form a culture and climate team by

February 15, 2016 and upload a meeting schedule identifying members of the team by February 12, 2016, three-days before creating the team.

57. CPS Human Resources Department did not approve the CAP as required by CPS policy and guidelines in effect at the time.

58. Sanders drafted, edited and presented the CAP at Saffold's direction, and knew or should have known that it was not approved by CPS Human Resources Department.

59. Saffold refused to provide guidance or answer Shaheena's requests for clarification about the CAP.

60. Saffold did not allocate any funds or resources to help Shaheena implement the CAP.

61. Saffold demanded Shaheena create several new performance plans within two weeks. Each of the plans was aimed to achieve arbitrary and fanciful goals.

62. The CAP required Shaheena "to create a K-2 math and literacy action plan to ensure that 75% of students are on track to attain benchmark at EOY."

63. While developing the 2014 CIWP, the Aldridge team, including parents and prior supervisors, did not believe 75% was attainable.

64. Saffold refused to explain her basis for the 75% requirement and rejected Shaheena's requests for guidance on prioritizing these tasks.

65. Male principals at comparable schools—e.g., Lawndale Elementary Community Academy and John M. Smyth Elementary School—were not placed on a CAP.

66. After Shaheena complained about Saffold's conduct, Saffold restricted Shaheena's access to CBE's budget system and spent Aldridge funds outside of the approved Expenditure Plan without LSC's and Shaheena's request, awareness, consultation or approval.

67. Saffold wasted nearly $20,000.00 or more of school funds on hardcopies of materials and training services from Scholastic, when Shaheena had purchased electronic versions of the same materials at a fraction of the cost.

68. On or about April 8, 2016, Shaheena sent a confidential complaint to the CBE Office of Inspector General to report the misused public resources.

69. Shaheena subsequently sent the reports, including Saffold's attempt to tamper with Aldridge testing procedures, to the Cook County State Attorney's Office, the Illinois State Board of Education and the Chicago office of the Federal Bureau of Investigation.

70. Shaheena believed that the conduct might have violated Illinois and federal anti-waste, anti-bribery, anti-corruption and/or other laws.

71. On or about April 8, 2016, Shaheena and EKB, through their attorney, requested a meeting with Claypool and Kirby to discuss Saffold's behavior and the welfare of children at Aldridge as a Principal and as a parent.

72. On or about April 10, 2016, at his request, Ciesil met with Shaheena's attorneys to discuss what he characterized as Shaheena's report of serious allegations. Rather than gather information and investigate the reported waste of tax-payer funds, Ciesil threatened Shaheena that her career with CPS was effectively over.

73. Ciesil stated that he would discuss his threat and Shaheena's complaint with Defendant Marmer and subsequently did so.

74. Shaheena reported Ciesil's threat to CPS officials, including Marmer.

75. Shaheena's purportedly confidential complaint was disclosed to Saffold, Ali and CPS senior leaders with considerable influence over her career. She was essentially labeled an undesirable whistleblower and isolated.

76. On or about April 11, 2016, Krieger wrote an email to Shaheena's attorney acknowledging multiple communications that were directed at CPS. Krieger rejected Shaheena's request to meet with Claypool and Kirby, at their direction.

77. On or about April 11, 2016, Ciesil told Shaheena's union attorney that she should give up being the Principal for Aldridge and agree not apply to be a principal in CPS for 2-3 years in exchange for CBE not publishing a warning resolution against her.

78. On or about May 25, 2016, Ali, acting in agreement with and at the direction of Saffold and Ciesil, gave Shaheena unsatisfactory performance ratings across the board for the first time in her career.

79. Ali has never supervised any of Shaheena's work.

80. On or about June 22, 2016, CBE held a public board meeting in which it adopted a recommendation of Claypool incorporating a false claim that Shaheena had "exhibited conduct unbecoming of a Principal."

81. Claypool's public recommendation was approved by Jackson, Kirby, Marmer, Ciesil, Sanders and Saffold.

82. On June 24, 2016, 4 days after the sham CAP expired, Defendants issued a public warning resolution against Shaheena signed by Claypool that was published on CBE's website.

83. The public warning resolution was approved by Jackson, Kirby, Claypool, Marmer, Ciesil, Sanders and Saffold.

84. About a week later, Saffold, with Ciesil's, Claypool's and Marmer's knowledge, informed Shaheena that she was aware of her April waste complaint.

85. On July 21, 2016, the LSC informed Shaheena that they gave her a cumulative favorable performance evaluation and voted to renew her contract.

86. Shaheena signed a new four-year contract agreeing to serve as Aldridge's Principal from July 1, 2017 until June 30, 2021 (the "2016 Contract"). Under the 2016 contract, absent Shaheena's consent or exceptional circumstances, the 2016 Contract could only be terminated by CBE under limited circumstances, including "removal, reassignment, layoff or dismissal of the Principal pursuant to 105 ILCS 5/34-8.3 and 105 ILCS 5/34-8.4," after a due process hearing.

87. On July 29, 2016, Shaheena delivered two copies of her fully executed 2016 contracts to Eduardo Camacho, an agent of the CBE, at the Office of Local School Council Relations.

88. On or about July 29, 2016, Shaheena delivered a copy of her fully executed 2016 contract to Saffold.

89. CBE did not challenge the renewal of Shaheena's contract within the time provided for under the 2013 contract.

90. On August 24, 2016, Shaheena attended what she believed would be a budget meeting with Saffold. Instead, Saffold and Ali presented Shaheena with a letter that stated Shaheena was reassigned from Aldridge to her home effective August 24, 2016.

91. The letter instructed Shaheena to "not return to [Aldridge] or any CPS location for any reason without" Saffold's written authorization.

92. On August 24, 2016, Saffold denied Shaheena's request for her to modify the letter to allow her to accompany her minor child to school activities.

93. On August 24, 2016, Saffold confiscated Shaheena's laptop, district identification card and school keys. Later that day, Shaheena's CPS email and internet portal access were disabled.

94. On August 24, 2016, Shaheena's attorney informed Claypool, Kirby and Jackson of Saffold's August 24, 2016 activities and objected to Saffold's letter.

95. Shaheena's attorneys subsequently demanded that CBE and Saffold rescind the August 24, 2016 letter.

96. CBE and Saffold refused to rescind the letter.

97. On various dates from August 1, 2015 until August 24, 2016, Saffold, acting in concert with Ali, Marmer, Jackson, Kirby, Sanders, Claypool and Ciesil, intentionally deprived Shaheena of resources that were necessary for her to manage Aldridge.

98. On various dates from May 24, 2016 until August 24, 2016, Ali, acting in concert with Saffold, Ciesil, Claypool, Kirby, Marmer and Jackson intentionally ascribed false statements to Shaheena in various documents that were generated solely to justify unlawful termination of Shaheena's employment.

99. On or about September 6, 2016, EKB began the school year at a CPS elementary school.

100.    Due to Saffold's letter banning Shaheena from any CPS location, Shaheena was unable to accompany EKB to his first day of kindergarten school, was not permitted on school property in event of EKB's illness, and was prohibited from participating in EKB's activities for more than a week.

101.    EKB was upset when Shaheena explained that she could not take him to or pick him up from school.

102.    Shaheena was upset that she could not support and care for her child like other CPS parents.

103.    On September 2, 2016, Claypool sent Shaheena a letter scheduling what he labeled a hearing pursuant to 105 ILCS 5/34-8.3(d) for September 22, 2016, to be governed by CBE 8.3(d) guidelines and processes, and presided by a contractor CBE unilaterally hired and will pay.

104.    Claypool threatened to terminate Shaheena's employment contracts and to cut off her livelihood within 39 days of the 105 ILCS 5/34-8.3(d) hearing.

105.     Claypool, Marmer, Saffold, Ciesil, Jackson and Kirby initiated the 105 ILCS 5/34-8.3 claims against Shaheena because of malice, vindictiveness, intolerance, prejudice and/or jealousy.

106.     Shaheena received the CBE 8.3(d) guidelines and procedures for the first time around September 2, 2016.

107.     The CPS 105 ILCS 5/34-8.3(d) hearing guidelines and procedures were unconstitutionally enacted because they are not authorized by any statute.

108.     The CPS 105 ILCS 5/34-8.3(d) hearing guidelines and procedures are improper because they exceed the powers of CBE under the school code.

109.     The CPS 105 ILCS 5/34-8.3(d) hearing guidelines and procedures do not provide Shaheena an opportunity to be heard at a meaningful time and in a meaningful manner.

110.     The CBE 8.3(d) guidelines and processes do not allow for discovery.

111.     The CBE 8.3(d) guidelines and processes do not allow for confrontation and cross-examination of witnesses.

112.     The CBE 8.3(d) guidelines and processes do not provide a prompt post-termination proceeding with the right to conduct reasonable discovery and to confront and cross-examine witnesses.

113.     The CBE 8.3(d) guidelines do not provide a standard that will be used to determine whether Aldridge made adequate progress during the 2015-2016 school year.

114.     The CBE 8.3(d) guidelines do not reasonably inform Shaheena of what she needs to provide to show that Aldridge made adequate progress during the 2015-2016 school year.

115.     Sometime in 2016, CBE hired Fitzpatrick to decide whether Shaheena's 2013 and 2016 contracts should be terminated pursuant to 105 ILCS 5/34-8.3 because Aldridge has allegedly failed to make adequate progress.

116.     After Shaheena filed this lawsuit to determine her rights under her employment contracts, Fitzpatrick refused to stay the 8.3(d) proceedings.

117.     At all relevant times, Fitzpatrick was aware of this lawsuit.

118.     At all relevant times, the benefits that CPS employees like Shaheena were eligible for included access to and use of an electronic mail system (email), and an internet portal.

119.     Shaheena was supplied with and had access to a laptop, email account and internet portal for work.

120.     As of August 24, 2016, all of Shaheena's body of work was stored on her laptop and on CPS' internet portal.

121.     On various occasions since August 24, 2016, Shaheena has requested access to her work product during her tenure at Aldridge. Shaheena has also requested access to her laptop.

122.     On various occasions since August 24, 2016, Shaheena has requested CBE to reinstate her access to her email account and to her CPS portal account.

123.     CBE has refused to honor Shaheena's requests.

124.     At all relevant times, the benefits that CPS employees like Shaheena were eligible for included professional training and development paid for by CPS of substantial monetary value.

125.     According to the 2016 contract, CBE agreed to pay Shaheena an annual salary and to provide benefits to her "in accordance with the Administrative Compensation Plan and the Rules, Policies and Procedures of the Board of Education, including all benefits for which full-time, regularly appointed certified employees are eligible."

126.     Since August 24, 2016, CBE has not invited Shaheena to any training opportunities even though these opportunities have been available to other employees.

127.     As Shaheena's supervisor since 2015, Saffold intentionally embarked on a campaign to sabotage Shaheena's career and progress at Aldridge so that she could replace her with one of her friends, or a friend of her friends, in order to expand her influence at CPS.

128.     At various times between August 2015 and August 24, 2016, Saffold intentionally deprived Aldridge of resources that were necessary for the school to be a safe learning environment.

129.     For example, Saffold refused to approve a request to purchase communications equipment that were necessary to manage the school's safety and security for a significant period of time, and refused Shaheena's request to make arrangements to repair or replace classroom ceiling and falling tiles with asbetos, thereby endangering the safety and health of students at Aldridge.

130.     At various times between August 2015 and August 24, 2016, Saffold intentionally refused to provide Shaheena with the support that was necessary for Aldridge to make substantial academic progress. Despite having the means to do so, she refused to assign meaningful resources to Aldridge to: (a) help improve student attendance, (b) support the social emotional needs of students and parents, (c) extract and aggregate data, (d) coach staff and teachers at Aldridge on strategies and resources for de-escalation of student violence, (e) help decrease suspensions, (f) provide leadership coaching and support to Shaheena and (g) help recruit teachers in high need areas (e.g., special education, math and science).

131.     At various times between August 2015 and August 24, 2016, Saffold intentionally failed to provide feedback on professional development systems for Aldridge and failed to provide clear and consistent performance expectations and standards to Shaheena and Aldridge staff.

132.     At various times between August 2015 and August 24, 2016, Saffold intentionally failed to evaluate Shaheena's performance according to CPS' performance evaluation guidelines, which require two CPS mandated observations in a year with post-conference sessions to provide suggestions for improvement. Saffold failed to observe Shaheena and provide a post-evaluation feedback of Shaheena's performance in the first part of the 2015-2016 school year.

133.     At various times between August 2015 and August 24, 2016, Saffold and Sanders intentionally undermined Shaheena's authority at Aldridge by making derogatory comments about Shaheena in front of her subordinate staff.

134.     On or about August, 2015, Saffold blamed Shaheena for having poor test scores, told Shaheena that she could do her job in her sleep, told Shaheena that Aldridge was filthy and that the bulletin boards looked terrible in the presence of several teachers, including a senior teacher, Bernice Mingo ("Ms. Mingo").

135.     Ms. Mingo later told Shaheena that she decided to retire earlier than she expected because she could not tolerate how disrespectful Saffold was towards Shaheena. On at least one occasion between August 2015 and August 24, 2016, Saffold and Sanders yelled at and threw stacks of papers at Shaheena in front of her assistant principal.

136.     At various times between August 2015 and August 24, 2016, Saffold intentionally took steps to disrupt learning and testing at Aldridge. On several occasions, Saffold sent her staff into classrooms to watch teachers without any prior warning and stayed for long periods of time. This tactic demoralized teachers, who complained to Shaheena that they felt that they were being harassed.

137.     On or about April 11, 2016, Saffold sent her staff to Aldridge to walk into classrooms to interrupt standardized testing activities without any prior warning. At least one staff, Doug Stalnos refused to leave classrooms when Shaheena requested him to do so.

138.	On one or more occasions between August 2015 and August 24, 2016, Saffold publicly humiliated Shaheena by ridiculing her Muslim faith in public. Even though she had known Shaheena for years, Saffold purposely and repeatedly mispronounced her Islamic name as "Shakeena" in order to diminish her presence in public even after Shaheena corrected her.

139.	On or about December 2015, Saffold contemptuously rolled her eyes in public when Shaheena told her that she could not eat at a meeting because she was observing her Muslim fasting commitment.

140.	During her tenure at CPS, Saffold used fear, intimidation and coercion to encourage waste and/or corruption.

141.	According to an affidavit of a law enforcement officer, while supervising several schools in or around 2006, Saffold solicited a bribe from a vendor in exchange for providing business opportunities to that vendor. When the vendor complained about her, she conspired with others to retaliate against the vendor by taking steps to deny the vendor business opportunities with CPS.

142.	On information and belief, during her tenure as a supervisor of schools at CPS, Saffold interfered in the hiring of principals by pressuring local school councils to hire one of her friends or friends of her friends without any consideration for merit, so that she could expand her influence at CPS. Those who refused to play along were coerced out of their employment at CPS.

143.	On various dates between August 2015 and August 2016 Saffold directed one or more people that she controlled to physically track and trail Shaheena using motor vehicles.

144.	At various times between August 2015 and August 24, 2016, Beimler, acting in concert with Saffold, intentionally refused to provide Shaheena with data that was necessary for

her to operate Aldridge.  On one or more occasions, Beimler made unprofessional and condescending comments to Shaheena by suggesting that he could do her work.

145.     Despite having the ability to do so, Saffold failed to stop or control Beimler's unprofessional conduct.

146.     On or about August 24, 2016, Saffold appointed Treadwell as the Principal for Aldridge to replace Shaheena. At the time of her appointment, Treadwell had never been a principal anywhere.

147.     Treadwell is Saffold's friend, or the friend of Tiffany D. Brown, who is one of Saffold's best friends. Treadwell is about 8 years younger than Shaheena.

148.     After Treadwell was installed at Aldridge, Saffold has directed an extraordinary amount of resources, support and promises to the school that she refused to provide to Shaheena.

149.     Since Shaheena's reassignment to "home", she has been deprived of valuable professional training and development opportunities of substantial monetary value, including one which occurred on or about August 25, 2016, and some of her salary.

150.     At all relevant times, benefits that CPS employees like Shaheena were eligible for included paid vacation. By August 24, 2016, Shaheena had about 30 days of accrued vacation. Shaheena has not been paid all her salary due under her contracts, including her pay for her accrued but unused vacation.

151.     Shaheena's requests to CPS to rescind or modify the August 24, 2016 reassignment letter were ignored or invited threats that Shaheena would be charged with trespass if she visits CPS locations – even those locations that Saffold does not supervise, without Saffold's written authorization.

152.    As a result, Shaheena is afraid that she might be charged with trespass if she visits any CPS location for interviews, to exercise her first amendment rights or for other lawful purpose without unnecessary intrusion by Saffold.

153.    Because of the August 24, 2016 reassignment letter, Shaheena was deprived of the opportunity to control the education of her minor child by accompanying the child to school or picking up the child from school, and her constitutional right to familial relations.

154.    The August 24, 2016 reassignment letter harmed EKB because it deprived the child of the comfort and care of his mother while he attended school, and his constitutional right to familial relations.

155.    On information and belief, sometime after August 24, 2016, Saffold, directly or through one or more individuals that she controls, intentionally distributed letters or documents to one or more parents of students at Aldridge, or members of the local community, including Yolanda McCoy (collectively "Saffold Allies") stating that Shaheena is banned from all CPS locations.

156.    On information and belief, on one or more occasions after August 24, 2016, the Saffold Allies distributed copies of the letters or documents at Aldridge, publicly read its contents to other members of the Aldridge community and parents and left the false impression that Shaheena had engaged in wrongful conduct that caused her to be banned from CPS locations.

157.    On or about April 2016, Shaheena applied to two positions within CPS that she was qualified for and that she believes would have given her more responsibilities and benefits: Director of Special Projects, and Network Liaison. CPS did not consider Shaheena for either position, but, upon information and belief, filled these positions with other candidates who had not filed any complaints.

158.     On or about October 7, 2016, Shaheena applied for open CPS principal positions at Schmid Elementary School, Blaine Elementary School, Ninos Heroes Academic Center and Maria Saucedo Scholastic Academy.  All but one of these positions pay more and offer more responsibilities than Shaheena had at Aldridge, and would therefore be a career advancement opportunity for Shaheena.

159.     Even though Shaheena is qualified for all the positions above, Defendants refused to consider her candidacy, in retaliation for her complaints and reports of unlawful conduct that are detailed above.

160.     While Shaheena was placed on an unjustifiable and unapproved CAP, subjected to an unwarranted public warning resolution around June 24, 2016 and removed as Principal of Aldridge because the school had allegedly not made adequate progress, Male principals of schools with comparable or worse performance records than Aldridge were not subjected to similar mistreatment.

161.     The Principal for Lawndale Elementary Community Academy, Willard Willette, who is male, was not put on a CAP, subjected to a public warning resolution like Shaheena, or removed as Principal even though Lawndale has had just as low, or lower test scores than Aldridge for an extended period of time.

162.     The Principal for John M Smyth Elementary School ("Smyth"), Ronald R. Whitmore, who is male, was also not put on a CAP, subjected to a public warning resolution like Shaheena, or removed as Principal, even though Smyth has had just as low, or lower test scores than Aldridge for an extended period of time.

163.     Christian female Principals like Tracy Davis, who were coerced from their principalships for alleged performance reasons were reassigned to other meaningful jobs at CPS and not deprived of their ability to continue to connect with colleagues through CPS' email

system or access to training and development opportunities, while Shaheena, who is of Islamic faith, was reassigned to her home, had her email account deactivated and has been deprived of training and development opportunities.

164.     While Shaheena was denied resources and support that was necessary to manage Aldridge, similarly situated male principals were not denied resources and support that was necessary to manage their schools.

165.     While Shaheena, who is of Islamic faith was denied resources and support that was necessary to manage Aldridge, similarly situated non-Islamic principals were not denied resources and support that was necessary to manage their schools. Similarly situated non-Islamic principals were not subjected to public humiliation or ridicule because of their religion like Shaheena was.

166.     After Shaheena reported the instances of misconduct alleged above to Kirby, CBE's Office of Inspector General ("OIG"), CBE's Office of Equal Opportunity Compliance Office ("OEOC"), CBE CEO's office and CBE General Counsel's office, Kirby and officials from the OIG and OEOC ("collectively CPS Officials") met with Shaheena but have failed to conduct any meaningful investigation into the facts.

167.     CPS Officials failed to follow up on investigating why Saffold insists that CPS Principals only use "her people" to purchase school supplies and services.

168.     CPS Officials failed to follow up on Shaheena's allegations of threats and intimidation by Ciesil, Saffold and Sanders.

169.     CPS Officials failed to conduct a meaningful interview with Shaheena designed to establish the truth of what has been happening at Aldridge since it was assigned to Saffold's network.

170.     Despite promises to do so, CPS Officials did not visit Aldridge to collect evidence that was relevant to Shaheena's complaints.

171.     CPS Officials did not recommend, or otherwise cause, the immediate administrative suspension of Ciesil, Sanders and Saffold pending formal disciplinary proceedings after Shaheena's complaints and reports. Instead, Sanders was promoted to a networks supervisor after Saffold used her improper influence to boost her candidacy.

172.     CPS Officials failed to follow up with law enforcement agencies regarding Shaheena's complaints and reports of waste.

173.     The complaints related to waste at Aldridge, threats and intimidation of Shaheena were improperly and insufficiently addressed and/or allowed to occur without consequence. The investigators carried out the pervasive custom, practice and policy of CBE of failing to investigate, discipline or otherwise hold accountable its senior leadership, including but not limited to its network chiefs.

174.     Out of malice and vindictiveness, Defendants Ciesil and Saffold devised a plan to remove and blacklist Shaheena from her principalship and from CPS altogether after she reported a waste complaint in exercise of her first amendment rights.

175.     Claypool, Marmer, Kirby and Jackson knew about, condoned, and turned a blind eye to Saffold and Ciesil's plan to remove and blacklist Shaheena from her principalship and from CPS altogether after she reported a waste complaint in exercise of her first amendment rights.

176.     Defendants' conduct as detailed above demoralized Aldridge staff and deprived EKB of a reasonable access to quality education in a public school.

177.     Among the damages that Shaheena has already suffered as a proximate and direct result of Defendants' conduct are loss of her right to be the Principal of Aldridge for an extended

period of time, moving expenses incurred as a result of the uncertainty about her job in excess of $2,000, back pains caused by stress and substantial attorneys' fees and litigation expenses.

178.     Saffold's decision to remove Shaheena as Principal for Aldridge on August 24, 2016 was irrational and arbitrary.

179.     On November 25, 2016, Fitzpatrick unilaterally set Shaheena's purported 105 ILCS 5/34-8.3(d) hearing date for January 10, 2017, but failed to provide notice to the LSC. Fitzpatrick knew, or should have known that Shaheena's counsel would not be available on January 10, 2017.

180.     One of the purposes of the purported 8.3(d) hearing is to determine whether Shaheena's 2013 and 2016 employment contracts should be terminated pursuant to 105 ILCS 5/34-8.3. Another purpose is to determine whether Shaheena should be removed as Principal for Aldridge pursuant to 105 ILCS 5/34-8.3(d) under her 2013 and 2016 contracts.

181.     On information and belief, the type of behavior that Saffold exhibited towards Shaheena is common at CPS.

182.     Other Network Chiefs have subjected one or more principals to similar mistreatment.

183.     One or more of these principals are members of the CPAA.

184.     At relevant times, CBE wrongfully terminated one or more employment contracts of one or more of CPAA members, including but not limited to Trudy, without affording the principals their due process rights.

185.     At relevant times, CBE wrongfully coerced one or more principals who were members of the CPAA into early retirement by threatening to terminate their employment contracts under 105 ILCS 5/34-8.3.

186.	At relevant times, one or more principals who were members of CPAA retired prematurely after CBE wrongfully threatened to terminate their employment contracts under 105 ILCS 5/34-8.3.

187.	At relevant times, CBE wrongfully coerced one or more principals who were members of the CPAA to resign their principalship positions by threatening to terminate their employment contracts under 105 ILCS 5/34-8.3.

188.	At relevant times, one or more principals who were members of CPAA resigned after CBE wrongfully threatened to terminate their employment contracts under 105 ILCS 5/34-8.3.

189.	At relevant times, Shaheena and EKB requested CBE and the LSC to take action to recover Aldridge funds that Saffold and Scholastic wasted.

190.	CBE and the LSC have failed to recover Aldridge funds from Saffold and/or Scholastic.

191.	At relevant times, Shaheena requested the LSC to join this lawsuit so that it may be heard on these controversies, including its rights under the 2013 and 2016 contracts.

192.	One or more members of the LSC informed Shaheena that they fear that Saffold would retaliate against them personally and against the LSC for participating in this lawsuit.

193.	CBE and the LSC are unwilling to take action against Saffold and Scholastic to recover funds that were not budgeted for or requested by Shaheena and the LSC in the Aldridge budget for 2015-2016.

194.	The LSC is unwilling to participate in this lawsuit to defend its rights.

**Trudy Taylor**

195.     Trudy signed a 4-year uniform principal contract with a term beginning July 1, 2012 until June 30, 2016 to be the Principal for Jesse Owens Elementary School in Chicago ("Trudy's contract").

196.     On information and belief, CBE could only terminate Trudy's contract in limited circumstances, including: "removal, reassignment, layoff or dismissal of the Principal to the extent permitted by 105 ILCS 5/34-8.3 *and* 105 ILCS 5/34-8.4," after a due process hearing.

197.     On information and belief, Trudy's contract was reassigned multiple times without a due process hearing.

198.     Trudy's last assignment was at George Washington Carver Elementary School ("Carver") on the Southside of Chicago.

199.     On or about January 20, 2016, Saffold removed Trudy as Principal for Carver. Trudy was not afforded, and has not been afforded a due process hearing required by her contract.

200.     Trudy was not compensated for the remaining time on her contract.

**Protected Interests**

201.     At relevant times, Shaheena had a liberty interest to pursue the occupation of her choice as a principal of an elementary school in the city of Chicago, and to be compensated accordingly that was protected by the due process clause of the U.S. and Illinois constitutions.

202.     At relevant times, Shaheena had a property interest in continued employment by CBE as Principal for Aldridge, and to be compensated accordingly for the term of the 2013 contract that was protected by the due process clause of the U.S. and Illinois constitutions.

203.     At relevant times, Shaheena had a property interest in continued employment by CBE, and to be compensated accordingly for the term of the 2013 contract that was protected by the due process clause of the U.S. and Illinois constitutions.

204.     At relevant times, Shaheena had a property interest in continued employment by CBE as Principal for Aldridge, and to be compensated accordingly for the term of the 2016 contract that was protected by the due process clause of the U.S. and Illinois constitutions.

205.     At relevant times, Shaheena had a property interest in continued employment by CBE, and to be compensated accordingly for the term of the 2016 contract that was protected by the due process clause of the U.S. and Illinois constitutions.

206.     At relevant times, other similarly or substantially similarly situated CPAA members as Shaheena and Trudy had property interests in continued employment by CBE as Principals for their respective schools, and to be compensated accordingly that were protected by the due process clause of the U.S. and Illinois constitutions.

207.     At relevant times, other similarly or substantially similarly situated CPAA members as Shaheena and Trudy had property interests in continued employment by CBE, and to be compensated accordingly for the terms of their contracts that were protected by the due process clause of the U.S. and Illinois constitutions.

208.     CPAA joins this lawsuit on its own and on behalf of its members because some of its members who are similarly or substantially situated as Shaheena and Trudy but are currently still employed by CBE are afraid of retaliation.

209.     On information and belief, since at least 2004 and continuing to present, CPS has denied members of the CPAA who were principals of schools on probation their due process rights by subjecting them to removal and termination under section 105 ILCS 5/34-8.3(d)

without offering them an opportunity to cross-examine witnesses, or to conduct reasonable discovery.

210.     Since at least 2004 and continuing to present, CPS has issued unwarranted personal Corrective Action Plans ("CAPs") to members of the CPAA who were principals of schools on probation.

211.     CPS issued the CAPs in bad faith and with improper motives.

## CLAIMS FOR DECLARATORY AND INJUNCTIVE RELIEF

### COUNT ONE
### AGAINST CBE, FITZPATRICK
### DECLARATION THAT ALDRIDGE ELEMENTARY SCHOOL MADE ADEQUATE PROGRESS DURING 2015-2016 SCHOOL YEAR

212.     Plaintiffs repeat the allegations of paragraphs 1-211 of this third amended complaint as though fully alleged herein.

213.     During the 2015-2016 school year, under Shaheena's leadership, Aldridge's performance improved substantially in all areas, including students' performance in standardized tests.

214.     The improvement in Aldridge's performance was a direct result of Shaheena's leadership, including her effective collaboration with the LSC, parents and teachers.

215.     At the end of the 2015-2016 school year, Aldridge's CPS school rating improved one full level. Aldridge is now a level 2 school, up from a level 3 school for the first time in nine years.

216.     WHEREFORE, Shaheena Khan and the LSC pray that this Honorable Court:

    a.  Find and declare that they are entitled to a declaration that Ira F. Aldridge
        Elementary School made adequate progress during the 2015-2016 school year
        under Shaheena Khan's leadership.

## COUNT TWO
## AGAINST CBE, FITZPATRICK
## DECLARATION THAT CBE HAS NO RIGHT TO TERMINATE PRINCIPAL CONTRACTS WHOSE TERMS BEGAN AFTER JUNE 30, 2006 AND END AFTER DECEMBER 8, 2016 PURSUANT TO 105 ILCS 5/34-8.3

217.     Plaintiffs repeat the allegations of paragraphs 1-211 of this third amended complaint as though fully alleged herein.

218.     At relevant times, CBE principal contracts with effective terms beginning after June 30, 2006 and ending after December 8, 2016 required CBE to comply with both 105 ILCS 5/34-8.3 and 105 ILCS 5/34-8.4 before termination.

219.     105 ILCS 5/34-8.3 does not permit termination of principal contracts.

220.     Because CBE can only terminate the principal contracts whose terms commenced after June 30, 2006 and end after December 8, 2016 to "the extent permitted by 105 ILCS 5/34-8.3 *and* 105 ILCS 5/34-8.4," CPAA, Shaheena Khan and other principals who are similarly or substantially situated are entitled to a declaration that the Board of Education of the City of Chicago is not entitled to terminate their contracts pursuant to 105 ILCS 5/34-8.3.

221.     WHEREFORE, the LSC, CPAA, on its own and on behalf of Shaheena Khan and other similarly or substantially situated members pray that this Honorable Court:

A. Find and declare that the Board of Education of the City of Chicago is not entitled to terminate any of the principal contracts whose terms commenced after June 30, 2006 and end after December 8, 2016 pursuant to 105 ILCS 5/34-8.3.

## COUNT THREE
## AGAINST CBE, FITZPATRICK
## DECLARATION THAT SHAHEENA AND OTHER SIMILARLY OR SUBSTANTIALLY SIMILARLY SITUATED CPAA MEMBERS WHOSE CONTRACTS BEGAN AFTER JUNE 30, 2006 AND END AFTER DECEMBER 8, 2016 HAVE A RIGHT TO A FULL DUE PROCESS HEARING BEFORE THEIR CONTRACTS MAY BE TERMINATED OR REASSIGNED

222.     Plaintiffs repeat the allegations of paragraphs 1-211 of this third amended complaint as though fully alleged herein.

28

223.     At relevant times, it was CBE policy and practice to confiscate principals' laptops and to disable access to various internal resources before termination and reassignment hearings, even when the principals are not suspected of any misconduct. This policy was intended to make it difficult for principals to defend themselves at pre-termination and reassignment hearings.

224.     Shaheena and other similarly or substantially situated CPAA member principals whose contracts began after June 30, 2006 and end after December 8, 2016 ("CPAA standing members") are entitled to a full due process pre-termination or reassignment hearing under their contracts, including the right to confront and cross-examine witnesses and to conduct reasonable discovery because they have protected interests in their employment contracts and the CPS 105 ILCS 5/34-8.3 hearing guidelines and procedures do not provide for a prompt, full, post-termination hearing.

225.     CPA standing members are entitled to a full due process hearing before their employment may be terminated, including the right to confront and cross-examine witnesses and to conduct reasonable discovery because they have protected interests in their employment and the CPS 105 ILCS 5/34-8.3 hearing guidelines and procedures do not provide a prompt, full post-termination hearing.

226.     WHEREFORE, the LSC, CPAA standing members pray that this Honorable Court:

    A. Find and declare that they are entitled to a full due process hearing, with the right to confront and cross-examine witnesses and to conduct reasonable discovery before their contracts may be terminated or reassigned.

## COUNT FOUR
## AGAINST CBE, FITZPATRICK
## DECLARATION THAT CBE HAS NO PRESENT RIGHT TO REMOVE SHAHEENA
## AS PRINCIPAL FOR ALDRIDGE PURSUANT TO 105 ILCS 5/34-8.3(d)

227.     Shaheena repeats the allegations of paragraphs 1-211 of this third amended complaint as though fully alleged herein.

228.     According to the Illinois School Code, Shaheena's 2016 contract does not commence until July 1, 2017.

229.     Implied in the 2016 contract is the covenant or term that to be subject to removal, Shaheena must have an opportunity to work at Aldridge under the contract for a period of time that can form a reasonable basis upon which her performance can be judged to determine whether or not Aldridge has made "adequate progress in correcting deficiencies."

230.     Shaheena's contracts require CBE to comply with certain 105 ILCS 5/34-8.3 provisions before removal.

231.     CBE has not complied with applicable provisions of 105 ILCS 5/34-8.3.

232.     Aldridge made adequate progress during 2015-2016 school year. Its rating improved one full level, from a level 3 to a level 2 for the first time in nine years.

233.     Shaheena is entitled to a declaration that the Board of Education of the City of Chicago is not entitled to remove her as Principal for Aldridge Elementary School pursuant to 105 ILCS 5/34-8.3(d).

234.     WHEREFORE, Shaheena and the LSC pray that this Honorable Court:

A. Find and declare that the Board of Education of the City of Chicago is not entitled to remove Shaheena Khan as Principal for Aldridge Elementary School pursuant to 105 ILCS 5/34-8.3(d).

## COUNT FIVE
## AGAINST CBE, FITZPATRICK
## DECLARATION THAT CPS' GUIDELINES FOR THE REMOVAL AND REPLACEMENT OF PRINCIPALS OF SCHOOLS ON PROBATION AND PROCEDURES GOVERNING PRINCIPAL REMOVAL HEARINGS ARE UNCONSTITUTIONAL

235.     Plaintiffs repeat the allegations of paragraphs 1-211 of this third amended complaint as though fully alleged herein.

236.     The CBE 105 ILCS 5/34-8.3(d) guidelines and procedures do not provide the LSC, Shaheena and other similarly or substantially similarly situated CPAA members ("CPAA standing members") with an opportunity to be heard at a meaningful time and in a meaningful manner.

237.     The CBE 105 ILCS 5/34-8.3(d) guidelines and procedures do not allow CPAA standing members to obtain documents and information that is uniquely in CBE's custody and control to prepare their defense.

238.     CPAA standing members are entitled to a full due process hearing before their contracts may be terminated or reassigned because they have a protected interest in the employment contracts for their terms, and the hearings proposed by CPS do not provide for a prompt, full post-termination hearing.

239.     WHEREFORE, the LSC and CPAA standing members pray that this Honorable Court:

A. Find and declare that the CPS' guidelines for the removal and replacement of Principals of Schools on Probation and Procedures Governing Principal Removal Hearings are Unconstitutional in violation of the Due Process Clause of the United States Constitution and Article I section 2 of the Illinois Constitution.

## COUNT SIX
## AGAINST CBE, FITZPATRICK
## DECLARATION THAT 105 ILCS 5/34-8.3(d) IS FACIALLY UNCONSTITUTIONAL

240.　　　Plaintiffs repeat the allegations of paragraphs 1-211 of this third amended complaint as though fully alleged herein.

241.　　　At all relevant times, 105 ILCS 5/34-8.3(d) provided that "[s]chools placed on probation that, after a maximum of one year, fail to make adequate progress in correcting deficiencies are subject to the following actions by the general superintendent with the approval of the board, after opportunity for a hearing.

(2) Removing and replacing the principal."

242.　　　105 ILCS 5/34-8.3(d) is facially unconstitutional because:

a. it is impermissibly broad and vague in all of its applications;

b. it does not provide an objective standard of review upon which adequate progress can be measured or analyzed;

c. it does not define the procedures or rules to be applied regarding the "opportunity for a hearing";

d. it does not clearly define the term "deficiencies" or any sufficiently objective standards upon which those deficiencies can be identified;

e. it is so standardless that it authorizes or encourages seriously discriminatory enforcement;

f. it impermissibly delegates basic policy matters to the Chicago Board of Education to determine what adequate progress is for resolution on an *ad hoc* basis, which leads to arbitrary and discriminatory application; and

g. it does not give a person of ordinary intelligence a reasonable opportunity to know what is prohibited.

243.     WHEREFORE, the LSC, CPAA, Shaheena Khan and other similarly or substantially similarly situated CPAA members pray that this Honorable Court:

A. Find and declare that 105 ILCS 5/34-8.3(d) is facially unconstitutional for vagueness and for lack of notice and enjoin its enforcement.

## COUNT SEVEN
## AGAINST CBE, FITZPATRICK
## DECLARATION THAT 105 ILCS 5/34-8.3(d) IS UNCONSTITUTIONAL AS APPLIED TO SHAHEENA AND THE ALDRIDGE LSC

244.     Plaintiffs repeat the allegations of paragraphs 1-211 of this third amended complaint as though fully alleged herein.

245.     At all relevant times, 105 ILCS 5/34-8.3(d) provided that "[s]chools placed on probation that, after a maximum of one year, fail to make adequate progress in correcting deficiencies are subject to the following actions by the general superintendent with the approval of the board, after opportunity for a hearing.

(2) Removing and replacing the principal."

246.     105 ILCS 5/34-8.3(d) is unconstitutional as applied against Shaheena and the LSC, or as CPS has threatened to apply it against Shaheena and the LSC, because she has been removed as Principal for Aldridge without a due process hearing, while Male principals of schools that have comparable or worse progress records as Aldridge have not been removed.

247.     105 ILCS 5/34-8.3(d) is unconstitutional as applied against Shaheena and the LSC, or as CPS has threatened to apply it against Shaheena and the LSC, because:

a.   Shaheena has been removed as Principal for Aldridge without a due process hearing;

b.   Shaheena was removed arbitrarily so that Saffold could replace her with Saffold's friend, or a friend of Saffold's friend;

c. CPS has refused to provide them notice of the standard it uses to determine whether a school has made adequate progress;

d. CPS has confiscated her laptop and then refused to provide her with her body of work so that she can demonstrate the progress that she made;

e. CPS has banned her from Aldridge;

f. CPS has refused to allow her to conduct reasonable discovery to obtain evidence that may be necessary for her defense; and

g. CPS has refused to provide them with notice of what they need to do to show that Aldridge made adequate progress.

248. 105 ILCS 5/34-8.3(d) is unconstitutional as applied against Shaheena and the LSC, or as CPS has threatened to apply it against Shaheena and the LSC, because:

a. Shaheena and the LSC were not given prior notice of what would objectively constitute adequate progress before Shaheena was removed as Aldridge Principal, and therefore had no reasonable notice of what was prohibited under the statute.

249. WHEREFORE, the LSC and Shaheena pray that this Honorable Court:

A. Find and declare that Shaheena Khan and the LSC are entitled to a declaration that 105 ILCS 5/34-8.3(d) is unconstitutional as applied to Shaheena Khan and the LSC, enjoin its enforcement as to her and the LSC and invalidate any and all decisions that Defendants have made to date pursuant to 105 ILCS 5/34-8.3(d) and its purported derivative policies, procedures and guidelines.

**COUNT EIGHT**
**AGAINST CBE, FITZPATRICK**
**DECLARATION THAT THE 105 ILCS 5/34-8.3(d) NOTICE TO SHAHEENA AND THE LSC IS CONSTITUTIONALLY INADEQUATE**

250. Plaintiffs repeat the allegations of paragraphs 1-211 of this third amended complaint as though fully alleged herein.

251.     The 105 ILCS 5/34-8.3(d) notice of hearing that CBE sent Shaheena and the LSC is constitutionally inadequate because it does not give them sufficient notice of the standard Fitzpatrick will use to determine whether Aldridge made adequate progress during the 2015-2016 school year.

252.     The 105 ILCS 5/34-8.3(d) notice of hearing that CBE sent Shaheena is constitutionally inadequate because it does not explain CBE's evidence to support its allegations against Shaheena and the LSC or the basis for the threat to terminate Shaheena's contracts.

253.     The 105 ILCS 5/34-8.3(d) notice is also deficient because it does not explain why other less drastic measures such as training members of the local school council are not sufficient remedial alternatives.

254.     CBE has not complied with statutory requirements that are required before it may subject Shaheena to removal under 105 ILCS 5/34-8.3(d).

255.     Lack of notice of the standard Fitzpatrick will apply and an explanation of CBE's evidence prejudices Shaheena and the LSC because it denies them a fair opportunity to prepare a defense.

256.     WHEREFORE, the LSC and Shaheena pray that this Honorable Court:

A. Find and declare that Shaheena and the LSC are entitled to a declaration that the 105 ILCS 5/34-8.3(d) notice CBE gave them is constitutionally inadequate because it does not reasonably inform them of the standard that will be applied in determining whether Aldridge made adequate progress, it does not explain why other less drastic remedial actions are not appropriate, it does not explain CBE's evidence, and because CBE has not complied with all statutory requirements that are necessary for it to subject Shaheena to removal.

# CPAA CLAIMS FOR DAMAGES

## COUNT NINE
## AGAINST CBE
## BREACH OF CONTRACT(S)

257.     Plaintiffs repeat the allegations of paragraphs 1-211 of this third amended complaint as though fully alleged herein.

258.     At all relevant times, Trudy and other similarly or substantially similarly situated CPAA members ("CPAA standing members") had valid and enforceable contracts that guaranteed them positions as principals of their respective schools for at least four years.

259.     The contracts had terms beginning after June 30, 2006 and ending before December 8, 2016.

260.     The CPAA standing members performed all their obligations under the contracts.

261.     The contracts could only be terminated for just cause.

262.     The contracts contained an implied covenant of good faith and fair dealing.

263.     CBE breached material terms of the contracts by removing the principals from their schools without due process hearings.

264.     CBE breached material terms of the contracts by failing to compensate the principals for the full terms of the contracts.

265.     CBE breached material terms of the contracts by acting in bad faith and dealing unfairly with the principals.

266.     CBE breached material terms of the contracts by threatening to terminate the contracts under 105 ILCS 5/34-8.3.

267.     CBE's breach was willful and wanton.

268.     As a proximate and direct result of the breach, CPAA standing members have suffered substantial actual, compensatory and consequential damages that were reasonably foreseeable.

269.     WHEREFORE, CPAA standing members pray that this Honorable Court:

A. Enter judgment in their favor and against the Board of Education of the City of Chicago for actual, compensatory, consequential and punitive damages, and for attorneys' fees, costs and expenses incurred in this litigation for breach of contracts of at least $1,000,000.

**COUNT TEN**
**AGAINST CBE**
**VIOLATION OF DUE PROCESS**

270.     Plaintiffs repeat the allegations of paragraphs 1-211 of this third amended complaint as though fully alleged herein.

271.     At all relevant times, Trudy and other similarly or substantially similarly situated CPAA members ("CPAA standing members") had valid and enforceable contracts that guaranteed them positions as principals of their respective schools for at least four years.

272.     The contracts had terms beginning after June 30, 2006 and ending before December 8, 2016.

273.     The contracts and derivative rights gave CPAA standing members rights that were protected by the Due Process Clause of the Fourteenth Amendment of the United States Constitution and relevant provisions of the Illinois Constitution.

274.     The contracts could only be terminated or reassigned after a full trial-type hearing, with the right to confront and cross-examine witnesses.

275.     The Board violated the due process rights of the CPAA standing members by terminating their contracts without affording them a hearing with the right to confront and cross-examine witnesses.

276.     The Board violated the due process rights of the CPAA standing members by reassigning their contracts without affording them a hearing with the right to confront and cross-examine witnesses.

277.     The Board violated the due process rights of the CPAA standing members by terminating their contracts without affording them a hearing with the right to conduct reasonable discovery to defend themselves.

278.     As a proximate and direct result of the Board's failure to afford CPAA standing members their due process rights, the CPAA and CPAA standing members suffered damages of a pecuniary nature, including but not limited to lost revenues, lost wages, damages to professional reputations, and attorneys' fees, costs and expenses.

279.     WHEREFORE, CPAA and CPAA standing members pray that this Honorable Court:

    A. Enter a judgment in their favor for actual, compensatory and punitive damages suffered as a result of the violation by the Board of Education of the City of Chicago of their due process rights, including attorneys' fees, costs and expenses.

**COUNT ELEVEN**
**AGAINST CBE**
**CONSTRUCTIVE DISCHARGE**

280.     Plaintiffs repeat the allegations of paragraphs 1-211 of this third amended complaint as though fully alleged herein.

281.     Sometime between September 1, 2011 to present, CBE constructively discharged one or more principals who were members of the CPAA by threatening to terminate their employment contracts under 105 ILCS 5/34-8.3 after subjecting them to unlawful, humiliating and career-ending public hearings.

282.     By making the threats, CBE acted in a manner so as to have communicated to a reasonable employee that he or she would be terminated.

283.     The principals were similarly or substantially similarly situated as Shaheena and Trudy.

38

284.     As a direct and proximate result of the threats, one or more of the principals resigned their positions. The resignations were not truly voluntary.

285.     As direct and proximate result of the threats, one or more of the principals retired prematurely.

286.     As a direct and proximate result of the threats, the principals suffered damages of a personal and pecuniary nature, including but not limited to lost wages, lost retirement benefits, and pain and suffering.

287.     WHEREFORE, CPAA on its own and on behalf of Trudy and other similarly or substantially similarly situated CPAA members, prays that this Honorable Court:

    A.  Enter a judgment for actual, compensatory and punitive damages incurred as a result of the misconduct of the Board of Education of the City of Chicago for constructively discharging the CPAA member principals from their employment.

### COUNT TWELVE
### AGAINST CBE
### ERISA

288.     Plaintiffs repeat the allegations of paragraphs 1-211 of this third amended complaint as though fully alleged herein.

289.     At all relevant times, Trudy and other similarly or substantially similarly situated CPAA members ("CPAA standing members") had valid and enforceable contracts that guaranteed them positions as principals of their respective schools for at least four years.

290.     The contracts had terms beginning after June 30, 2006 and ending before December 8, 2016.

291.     At relevant times, CBE had an employee pension Plan ("Plan") which is available to its employees who had similar positions as CPAA standing members.

292.     The Plan constitutes an "employee welfare benefit plan," as that term is defined in 29 U.S.C. § 1102.

293.     CPAA standing members were close to having their retirement benefits fully vested.

294.     CBE violated the rights of CPAA standing members under Section 510 of ERISA by terminating their contracts just before their benefits were fully vested.

295.     CBE intentionally terminated the contracts of CPAA standing members in order to deprive them of the full vesting of their pension benefits.

296.     As a direct and proximate result of CBE's conduct as alleged above, CPAA standing members suffered and will continue to suffer substantial damages of a personal and pecuniary nature.

297.     In addition to monetary damages, CPAA standing members are entitled to attorneys' fees, costs and expenses in this lawsuit pursuant to  29 U.S.C. § 1132.

298.     WHEREFORE, CPAA on its own and on behalf of Trudy and other similarly or substantially similarly situated CPAA members, prays that this Honorable Court:

    A. Enter a judgment for actual and compensatory damages incurred as a result of the violation by the Board of Education of the City of Chicago of their ERISA rights under 29 U.S.C. § 1104, including attorneys' fees, costs and expenses.

<u>**SHAHEENA'S CLAIMS FOR DAMAGES**</u>

**COUNT THIRTEEN**
**AGAINST CBE**
**DEPRIVATION OF PROTECTED LIBERTY INTEREST**

299.     Plaintiffs repeat the allegations of paragraphs 1-211 of this third amended complaint as though fully alleged herein.

300.     The Defendants' actions and misconduct as alleged above have stigmatized Shaheena. Defendants stigmatized Shaheena by suggesting that she had neglected her duties as principal for Aldridge.

301.     Defendants stigmatized Shaheena by questioning her good name, reputation, honor or integrity when they publicly and falsely accused her of exhibiting "conduct unbecoming of a Principal" and when they banned her from all CPS locations.

302.     Defendants publicized the stigmatizing information when Saffold directed third parties to track and follow Shaheena on her way to and from school.

303.     Defendants also publicized the stigmatizing information by disclosing Shaheena's confidential waste complaint to senior CBE leaders who were not reasonably connected to the investigation but exercised influence over her career.

304.     As a result of the Defendants' conduct, Shaheena has suffered a tangible loss of other employment opportunities. She has not been reassigned as a principal of another elementary school. She has also not been considered for other employment opportunities at CPS, even though she has applied to at least other four other open principalships that pay significantly more than what she earned as principal for Aldridge.

305.     WHEREFORE, Shaheena Khan prays that this Honorable Court:

    A. Enter a judgment for actual and compensatory damages incurred as a result of the deprivation by the Board of Education of the City of Chicago of her liberty interest to pursue the occupation of her choice as a principal of an elementary school in Chicago, including attorneys' fees, costs and expenses.

**COUNT FOURTEEN**
**AGAINST CBE**
**DUE PROCESS/FIRST AMENDMENT/EQUAL PROTECTION – MONELL CLAIM**

306.     Plaintiffs repeat the allegations of paragraphs 1-211 of this third amended complaint as though fully alleged herein.

307.     The actions of Defendants Ciesil, Sanders and Saffold were done pursuant to one or more of the following *de facto* policies, practices and/or customs of CBE that are so pervasive that they carry the force of law.

308.     Specifically, CBE has a *de facto* policy, practice and/or custom of concealing and/or suppressing senior leadership misconduct, including allegations of vendor steering, waste of public resources, corruption, intimidation or retaliation. The concealment and suppression of the existence of misconduct includes, but is not limited to: failure to sufficiently investigate allegations of misconduct, failure to accept complaints from citizens, employees or parents against senior leadership; failure to promptly record witness statements or preserve evidence; failure to promptly interview Ciesil, Sanders and/or Saffold; failure to properly and sufficiently discipline Saffold, Sanders and/or Ciesil, even where the complaint is sustained; fabrication of evidence; misrepresentation of facts; and failure to initiate prompt disciplinary procedures related to the alleged misconduct, even when the allegation of misconduct is true.

309.     Likewise, CBE has a *de facto* policy, practice and/or custom of failing to maintain accurate and complete records of complaints and investigations of misconduct of senior leadership officials.

310.     Likewise, CBE has a *de facto* policy, practice and/or custom of hiring and retaining unqualified area academic officers, network chiefs and other senior leaders, and failing to properly train, monitor and/or supervise its senior leaders.

311.     Finally, CBE has a *de facto* policy, practice and/or custom of a "code of silence." This code is an implicit understanding between and among members of the CBE senior leadership team resulting in a refusal or failure to report instances of misconduct of which they are aware, including allegations of waste, retaliation, intimidation or corruption, despite their obligation to do so. This includes CBE employees who remain silent or give false or misleading information during official investigations of a fellow senior CBE leader related to misconduct in order to protect themselves or their fellow co-workers from discipline, criminal prosecution or civil liability.

42

312.     Individually and collectively, the above described *de facto* policies, practices and/or customs of CBE proximately result in the culture and endemic attitude among senior leadership employees of CBE, including the Defendants, Ciesil and Saffold, that they may engage in misconduct against the citizenry, including parents, employees and students with impunity, and without fear of official consequence; they consider themselves "above the law."

313.     The aforementioned *de facto* policies, practices and/or customs of CBE, individually and collectively, have been maintained and/or implemented with utter indifference by CBE and has or have encouraged and/or motivated the Defendants Ciesil, Sanders and Saffold, to commit the aforementioned wrongful acts against the Plaintiffs, and therefore acted as the direct and proximate cause of the harms sustained, or will be sustained by the Plaintiffs.

314.     The above acts and/or omissions violated Shaheena's rights under the First and Fourteenth Amendments to the United States Constitution.

315.     As a direct and proximate result of the facts and allegations set forth above, Shaheena and EKB have suffered, and will in the future continue to suffer damages of a personal and pecuniary nature, and damage to their business and property.

316.     WHEREFORE, the Plaintiffs, Shaheena Khan and EKB demand judgment against the Board of Education for the City of Chicago, in an amount to be determined at trial, plus costs, attorneys' fees, and any other relief the Court deems just and appropriate for the claims described above.

## COUNT FIFTEEN
## AGAINST CIESIL, CLAYPOOL, KIRBY, MARMER, KRIEGER, SANDERS, ALI, JACKSON AND SAFFOLD
## CONSPIRACY - FIRST AMENDMENT

317.     Plaintiffs repeat the allegations of paragraphs 1-211 of this third amended complaint as though fully alleged herein.

318.     As alleged above Shaheena spoke out about matters of public concern, to wit, the unlawful acts and conspiracy committed in the individual capacities of the Defendants Ciesil, Sanders and/or Saffold.

319.     Shaheena's reports against Saffold, Ciesil and others, including her waste complaint constituted public speech protected by the first amendment.

320.     Defendants, acting under color of law, individually and/or in concert with each other and other as yet unknown co-conspirators, unlawfully conspired to retaliate against Shaheena and EKB through concerted and deliberate action, including threats, intimidation, improper performance evaluations and indifference in order to punish Shaheena for the exercise of her protected speech and to keep Shaheena from further exercising her right to protected speech, and to conceal evidence in Shaheena's possession.

321.     As the proximate result of the threats and intimidation described herein and above, Shaheena and EKB have suffered and will in the future continue to suffer damages of a personal and pecuniary nature.

322.     WHEREFORE, the Plaintiffs, Shaheena Khan and EKB demand judgment against Defendants James Ciesil, Forest Claypool, Janice Jackson, Ronald Marmer, Thomas Krieger, Felicia Sanders, Brian Ali, Elizabeth Kirby and Karen Saffold, jointly and severally, in an amount to be determined at trial, including punitive damages, plus costs, attorneys' fees, and any other relief the Court deems just and appropriate for conspiracy.

### COUNT SIXTEEN
### AGAINST CIESIL, MARMER, CLAYPOOL, ALI, SANDERS, KIRBY, JACKSON AND SAFFOLD
### CONSPIRACY - EQUAL PROTECTION

323.     Plaintiffs repeat the allegations of paragraphs 1-211 of this third amended complaint as though fully alleged herein.

324.	Defendants, acting under color of law, individually and/or in concert with each other, singled out the Plaintiffs, Shaheena and EKB with threats of employment termination, unwarranted CAP, intimidation, false arrest and denial of familial rights, all in retaliation for the acts and participation of the Plaintiff Shaheena, of providing evidence and information related to the investigation of Saffold and/or Ciesil.

325.	Other similarly situated students and parents who did not provide evidence and information related to the investigation of Saffold and/or Ciesil were not subjected to similar treatment.

326.	Defendants' conduct, as described above, violated the rights of Plaintiffs Shaheena and EKB, to equal protection of the laws as guaranteed under the Fourteenth Amendment to the United States Constitution, and caused Shaheena and EKB to suffer damages, including personal and pecuniary damages to be proven at trial.

327.	WHEREFORE, the Plaintiffs Shaheena Khan and EKB demand judgment against the Defendants, James Ciesil, Ronald Marmer, Forest Claypool, Elizabeth Kirby, Brian Ali, Felicia Sanders, Janice Jackson and Karen Saffold, jointly and severally, in an amount to be determined at trial, including punitive damages, plus costs, attorneys' fees, and any other relief the Court deems just and appropriate for conspiracy.

**COUNT SEVENTEEN**
**AGAINST CIESIL, MARMER, CLAYPOOL, ALI, KIRBY, JACKSON AND SAFFOLD**
**CONSPIRACY - 42 U.S.C. § 1985(2)**

328.	Shaheena repeats the allegations of paragraphs 1-211 of this third amended complaint as though fully alleged herein.

329.	On information and belief, the individual Defendants, acting together and under color of law, reached an understanding and agreement, engaged in a course of conduct, and otherwise conspired among and between themselves and with other unnamed and/or as yet unknown co-conspirators, for the purpose of impeding, hindering, obstructing, or defeating, the

due course of justice in Illinois, with the intent to deny to Shaheena the equal protection of the laws.

330.     By confiscating Shaheena's laptop, disabling her email account and portal access and banning her from any CPS location, Defendants intended to prevent Shaheena from having access to any documentation that could help her show the work she had done at Aldridge as part of her defense against Defendants unlawfully removing her from her principalship.

331.     By confiscating Shaheena's laptop, disabling her email account and portal access and banning her from any CPS location, Defendants intended to prevent Shaheena from further assisting and providing evidence pertinent to any investigations into allegations against Saffold for waste of public resources.

332.     By banning her from any CPS location, Defendants also intended to prevent Shaheena from interviewing for other employment opportunities at CPS, and to deprive her of her familial right to control the upbringing of her minor child by accompanying her to a CPS school.

333.     As the proximate result of the threats, intimidation, actions and omissions of the Defendants as described herein and above, Shaheena and EKB have suffered and will in the future suffer damages of a personal and pecuniary nature including, but not limited to relocation expenses.

334.     WHEREFORE, the Plaintiffs, Shaheena Khan and EKB, demand judgment against Defendants, James Ciesil, Ronald Marmer, Forest Claypool, Elizabeth Kirby, Janice Jackson, Brian Ali and Karen Saffold, jointly and severally, in an amount to be determined at trial, including punitive damages, plus costs, attorneys' fees, and any other relief the Court deems just and appropriate for conspiracy.

## COUNT EIGHTEEN
## AGAINST SAFFOLD, MARMER, CLAYPOOL, KIRBY, JACKSON AND CIESIL
## VIOLATION OF SHAHEENA AND EKB'S CONSTITUTIONAL RIGHTS TO
## FAMILIAL RELATIONS

335.     Shaheena repeats the allegations of paragraphs 1-211 of this third amended complaint as though fully alleged herein.

336.     At all relevant times, Shaheena had a constitutional liberty interest in familial relations, including the right to control the education of EKB.

337.     At relevant times, Saffold, Claypool, Kirby, Jackson and Ciesil knew or should have known that Shaheena had a minor child enrolled at a CPS school.

338.     On or about August 24, 2016, Saffold declined Shaheena's request to modify the reassignment letter to allow Shaheena to accompany EKB to school even though she corrected other mistakes that were on the original letter.

339.     At all relevant times, EKB had a constitutional right to be raised and nurtured by Shaheena. Raising and nurturing EKB includes escorting EKB to a public school of her choice, picking up EKB from said school, and participating in all activities that are reasonably connected to EKB's education and open to other parents.

340.     At all relevant times, Shaheena had a constitutional liberty interest in familial relations, including the right to control the education of EKB.

341.     There is no compelling, important, or rational basis for the August 24, 2016 reassignment letter written by Saffold that directs Shaheena "not to return to … any CPS location for any reason without written authorization" from Saffold.

342.     Saffold intentionally deprived Shaheena of her constitutional liberty interest in familial relations, specifically, the right to control the education of EKB by directing Shaheena "not to return to … any CPS location for any reason without written authorization," and by

informing members of the public and Aldridge community that Shaheena is banned from all CPS locations.

343.    Saffold's conduct as detailed above shows that she acted, or failed to act with a deliberate or reckless disregard for Shaheena and EKB's constitutional rights under the Fourteenth Amendment to the United States Constitution, and 42 U.S.C. § 1983. The conduct that Shaheena and EKB complain of above that deprived them of their constitutional rights occurred at Defendants' direction or with their knowledge and consent.

344.    Saffold's conduct as detailed above was undertaken with malice, willfulness and reckless indifference to Shaheena and EKB's rights.

345.    As a direct and proximate result of Saffold's conduct as alleged above, Shaheena and EKB suffered actual and compensatory damages, including but not limited to pain and suffering, in an amount to be determined at trial.

346.    WHEREFORE, the Plaintiffs, Shaheena Khan and EKB, demand judgment against Defendants, James Ciesil, Ronald Marmer, Forest Claypool, Brian Ali, Elizabeth Kirby, Janice Jackson and Karen Saffold, jointly and severally, in an amount to be determined at trial, including punitive damages, plus costs, attorneys' fees, and any other relief the Court deems just and appropriate for violation of their constitutional rights to familial relations.

### COUNT NINETEEN
### AGAINST CBE
### VIOLATION OF THE ILLINOIS WHISTLEBLOWER ACT

347.    Shaheena repeats the allegations of paragraphs 1-211 of this third amended complaint as though fully alleged herein.

348.    At all relevant times, Section 15 of the Illinois Whistleblower Act ("IWA") provided in relevant part "[a]n employer may not retaliate against an employee for disclosing information to a government or law enforcement agency, where the employee has reasonable

cause to believe that the information discloses a violation of a State or federal law, rule, or regulation."

349. At all relevant times, Section 20.2 of the IWA provided in relevant part that "[a]n employer may not threaten any employee with any act or omission if that act or omission would constitute retaliation against the employee under this Act."

350. At relevant times, Shaheena had reasonable cause to believe that Saffold's insistence that she only make purchases for Aldridge services and supplies from specific vendors that Saffold referred to as "her people" amounted to a violation of Illinois or federal laws, rules or regulations prohibiting corruption, bribery, wasteful government spending and other laws.

351. At relevant times, Shaheena had reasonable cause to believe that Saffold's suggestion that she coach students during standardized tests amounted to a violation of Illinois or federal laws, rules or regulations prohibiting education fraud.

352. According to a law enforcement agency, Saffold has previously solicited a bribe from a CPS vendor in exchange for business opportunities.

353. At relevant times, Saffold discovered and therefore came to know about Shaheena's reports regarding her waste of public resources.

354. CBE, through Saffold, Ali, Claypool, Ciesil, Marmer, Jackson and Kirby, in retaliation against Shaheena for disclosing what she reasonably believed to be violations of Illinois and/or federal laws, rules or regulations prohibiting corruption, bribery and wasteful government spending, (a) gave Shaheena a poor performance evaluation, (b) caused an unwarranted  public warning resolution to be published against Shaheena, (c) removed Shaheena from her principalship at Aldridge without due process of law, (d) threatened to  unlawfully terminate Shaheena's valid employment contracts pursuant to 105 ILCS 5/34-8.3,  and (e) unreasonably banned Shaheena from all CPS locations.

355.     By bringing this lawsuit Shaheena is entitled to attorneys' fees and litigation expenses pursuant to Section 30 of the Illinois Whistleblower Act ("IWA").

356.     CBE's conduct as identified and described in this Third Amended Complaint constituted retaliation against Shaheena and violated Section 15 and Section 20 of the IWA.

357.     As a direct and proximate result of Saffold's conduct as alleged above, Shaheena suffered, and is likely to continue to suffer actual and compensatory damages to be determined at trial.

358.     WHEREFORE, Shaheena seeks actual, compensatory and punitive damages and reasonable attorneys' fees, expenses and costs against Board of Education for the City of Chicago for violation of her rights under the Illinois Whistleblower Act.

### COUNT TWENTY
### AGAINST KAREN SAFFOLD, SANDERS, SCHOLASTIC
### TORTIOUS INTERFERENCE WITH 2013 CONTRACT

359.     Shaheena repeats the allegations of paragraphs 1-211 of this third amended complaint as though fully alleged herein.

360.     At all relevant times, Shaheena's employment with CBE could not be terminated without just cause.

361.     At relevant times, as Shaheena's supervisors, Saffold and Sanders had knowledge of Shaheena's rights under her 2013 employment contract.

362.     At relevant times, Scholastic, through its employees and/or agents had knowledge of Shaheena's rights under her 2013 employment contract because it dealt with her regularly.

363.     Scholastic, knew or should have known that Shaheena was the contract principal for Aldridge because a CBE board report publicly published the term of her contract.

364.     On or about April 2016, Shaheena informed employees and/or agents of Scholastic that the materials Saffold purchased were not requested by Shaheena or the LSC.

365.	On or about April 2016, Scholastic sent employees, agents or contractors to train employees at Aldridge to use materials Saffold had purchased.

366.	The LSC was not aware of, and had not requested funds for the cost of the training.

367.	To date, Scholastic has failed to refund Aldridge its funds spent on the unnecessary materials and training.

368.	Due to improper personal motives, including but not limited to installing friends or friends of friends as principals of elementary and high schools following the ouster of principals like Shaheena, Saffold intentionally and unjustifiably interfered with the valuable third party 2013 employment contract between Shaheena and CBE.

369.	Due to improper personal motives, including but not limited to seeking Saffold's approval, friendship and recommendation for a promotion, Sanders intentionally and unjustifiably interfered with the valuable third party 2013 employment contract between Shaheena and CBE.

370.	Due to improper motives, including but not limited to seeking improper profits, Scholastic intentionally and unjustifiably interfered with the valuable third party 2013 employment contract between Shaheena and CBE.

371.	Saffold was the driving force causing CBE to terminate Shaheena's employment and acted willfully and maliciously toward Shaheena with a reckless disregard of her rights under her 2013 employment contract.

372.	Sanders assisted Saffold in her efforts to cause CBE to terminate Shaheena's employment and acted willfully and maliciously toward Shaheena with a reckless disregard of her rights under her 2013 employment contract.

373.     Shaheena has suffered, and is likely to continue to suffer significant damages as a direct and proximate result of interference by Saffold, Sanders and Scholastic with her 2013 third party employment contract, including but not limited to lost wages, lost or diminished fringe benefits, attorneys' fees and emotional distress.

374.     WHEREFORE, Shaheena seeks actual, compensatory and punitive damages, reasonable attorneys' fees, expenses and costs, and such other further relief as this Court deems appropriate under the circumstances against Karen Saffold, Felicia Sanders and Scholastic, Inc., for tortious interference with her 2013 employment contract.

## COUNT TWENTY-ONE
## AGAINST KAREN SAFFOLD
## TORTIOUS INTERFERENCE WITH 2016 CONTRACT

375.     Shaheena repeats the allegations of paragraphs 1-211 of this third amended complaint as though fully alleged herein.

376.     At all relevant times, Shaheena's employment with CBE could not be terminated without just cause.

377.     At relevant times, as Shaheena's direct supervisor, Saffold had knowledge of Shaheena's rights under her 2016 employment contract.

378.     Due to improper personal motives, including but not limited to installing friends or friends of friends as principals of elementary and high schools following the ouster of principals like Shaheena, Saffold intentionally and unjustifiably interfered with the valuable third party 2016 employment contract between Shaheena and CBE.

379.     Saffold was the driving force causing CBE to terminate Shaheena's employment and acted willfully and maliciously toward Shaheena with a reckless disregard of her rights under her 2016 employment contract.

380.     Shaheena has suffered, and is likely to continue to suffer significant damages as a direct and proximate result of Saffold's interference, including but not limited to lost wages, lost or diminished fringe benefits, attorneys' fees and emotional distress.

381.     WHEREFORE, Shaheena seeks actual, compensatory and punitive damages, reasonable attorneys' fees, expenses and costs, and other such other and further relief as this Court deems appropriate under the circumstances against Karen Saffold for tortious interference with her 2016 employment contract.

**COUNT TWENTY-TWO**
**AGAINST CBE**
**RELIGIOUS HARASSMENT AND DISCRIMINATION IN VIOLATION OF TITLE VII**

382.     Shaheena repeats the allegations of paragraphs 1-211 of this third amended complaint as though fully alleged herein.

383.     The Defendants' conduct as alleged above constituted religious harassment and discrimination under Title VII of the Civil Rights Act of 1964 in that Shaheena was subjected to unwanted and repeated demeaning and humiliating behavior by Saffold due to her religion, and other non-Muslim employees were not subjected to similar treatment by her supervisor, Karen Saffold or other employees, which:

a.   had the effect of unreasonably interfering with the performance of her duties;

b.   the rejection of which was used as a basis for employment decisions affecting Shaheena; and

c.   created a hostile work environment for Shaheena.

384.     That as a direct and proximate result of said unlawful employment practices, Shaheena has suffered extreme mental anguish, outrage, severe anxiety about her future and ability to support herself and her family, harm to her employability and earning capacity, painful embarrassment among friends and co-workers, damage to her reputation, disruption of her personal life, and loss of enjoyment of the ordinary pleasures of life.

385.    WHEREFORE, Shaheena prays for the following relief:

A. That the Court enter judgment that the Defendant's acts and practices as set forth herein are in violation of the laws of the United States;

B. That the Court award Shaheena any lost wages, including back pay, front pay and lost fringe benefits, and including, without any limitation, any lost benefits that would otherwise have been included in Shaheena's retirement plans which resulted from the harassment with applicable prejudgment and statutory interest;

C. That the Court award Shaheena compensatory damages;

D. That the Court award Shaheena costs of litigation, including reasonable attorneys' fees, expert fees, expenses and costs; and

E. That the Court grant such other further relief that is just and proper under the circumstances.

## COUNT TWENTY-THREE
## AGAINST CBE
## GENDER HARASSMENT AND DISCRIMINATION IN VIOLATION OF TITLE VII

386.    Shaheena repeats the allegations of paragraphs 1-211 of this third amended complaint as though fully alleged herein.

387.    The Defendants' conduct as alleged above constituted gender harassment and discrimination under Title VII of the Civil Rights Act of 1964 in that Shaheena was subjected to unwanted and repeated demeaning and humiliating behavior by Saffold due to her gender, and other male employees were not subjected to similar treatment by her supervisor, Karen Saffold or other employees, which:

a.  had the effect of unreasonably interfering with the performance of her duties;

b.  the rejection of which was used as a basis for employment decisions affecting Shaheena; and

c.  created a hostile work environment for Shaheena.

54

388.     That as a direct and proximate result of said unlawful employment practices, Shaheena has suffered extreme mental anguish, outrage, severe anxiety about her future and ability to support herself and her family, harm to her employability and earning capacity, painful embarrassment among friends and co-workers, damage to her reputation, disruption of her personal life, and loss of enjoyment of the ordinary pleasures of life.

389.     WHEREFORE, Shaheena prays for the following relief:

A. That the Court enter judgment that the Defendant's acts and practices as set forth herein are in violation of the laws of the United States;

B. That the Court award Shaheena any lost wages, including back pay, front pay and lost fringe benefits, and including, without any limitation, any lost benefits that would otherwise have been included in Shaheena's retirement plans which resulted from the harassment with applicable prejudgment and statutory interest;

C. That the Court award Shaheena compensatory damages;

D. That the Court award Shaheena costs of litigation, including reasonable attorneys' fees, expert fees, expenses and costs; and

E. That the Court grant such other further relief that is just and proper under the circumstances.

## COUNT TWENTY-FOUR
## AGAINST CBE
## RETALIATION IN VIOLATION OF TITLE VII

390.     Shaheena repeats the allegations of paragraphs 1-211 of this third amended complaint as though fully alleged herein.

391.     The Defendants' conduct as alleged above constituted violations of Shaheena's rights under Title VII of the Civil Rights Act of 1964 in that Defendants retaliated against Shaheena for taking part in protected activities by:

55

a. giving Shaheena a poor performance evaluation after she opposed waste of public resources, tampering with standardized testing, religious harassment, gender harassment and racial harassment;

b. removing Shaheena from her employment without due process of law;

c. depriving Shaheena of her right to familial relations by banning her from taking her child to school for more than a week;

d. isolating Shaheena from her co-workers, disabling her email account and access to internet portal;

e. circulating documents falsely implying that Shaheena had engaged in misconduct that caused her to be banned from CPS locations;

f. publicly publishing a baseless warning resolution;

g. depriving Shaheena of resources and support that were necessary for her to operate her school;

h. publicly undermining Shaheena's statutory authority to manage her school and subordinates; and

i. threatening to unlawfully terminate Shaheena's employment contracts.

392.    That as a direct and proximate result of said unlawful employment practices, Shaheena has suffered extreme mental anguish, outrage, severe anxiety about her future and ability to support herself and her family, harm to her employability and earning capacity, painful embarrassment among friends and co-workers, damage to her reputation, disruption of her personal life, and loss of enjoyment of the ordinary pleasures of life.

393.    WHEREFORE, Shaheena prays for the following relief:

A. That the Court enter judgment that the Defendant's acts and practices as set forth herein are in violation of the laws of the United States;

B. That the Court award Shaheena any lost wages, including back pay, front pay and lost fringe benefits, and including, without any limitation, any lost benefits that would otherwise have been included in Shaheena's retirement plans which resulted from the harassment with applicable prejudgment and statutory interest;

C. That the Court award Shaheena compensatory damages;

D. That the Court award Shaheena costs of litigation, including reasonable attorneys' fees, expert fees, expenses and costs; and

E. That the Court grant such other further relief that is just and proper under the circumstances.

**COUNT TWENTY-FIVE**
**AGAINST CBE**
**VIOLATION OF THE ADEA**

394.	Shaheena repeats the allegations of paragraphs 1-211 of this third amended complaint as though fully alleged herein.

395.	At all relevant times, CBE was an employer within the meaning of ADEA, §630(b), and employed more than the statutory minimum of 20 employees.

396.	CBE, acting through Saffold and her deputy Felicia Sanders ("Sanders"), created a hostile work environment for Shaheena during the 2015-2016 school year in part due to Shaheena's age. In this hostile environment, Saffold and Sanders continuously undermined Shaheena's leadership at Aldridge as detailed above.

397.	On or about September 2015, Sanders and Saffold repeatedly questioned Shaheena's physical fitness to perform her job duties, implying that she was too old to perform her professional duties.

398.	CBE never created a similar hostile work environment for any younger principal during the 2015-2016 school year. If CBE created a similar hostile environment for a younger principal during the 2015-2016, such principals were not reassigned to "home".

399. CBE did not impose an unreasonable CAP and of fraudulent content on principals of comparable or worse performing schools during the 2015-2016 school year. If CBE imposed an unreasonable CAP and of fraudulent content on principals of comparable or worse performing schools during the 2015-2016 school year, such principals were not reassigned to "home".

400. By permitting a hostile working environment, by imposing an unjustified and unreasonable CAP in violation of CBE's policy, and by removing Shaheena from her principalship in part due to her age and replacing her with a significantly younger, unqualified employee, and by retaining less-qualified Principals under the age of forty, CBE discriminated against Shaheena on the basis of her age, in violation of §623(a).

401. CBE's violations of Shaheena's rights under the ADEA were willful.

402. These violations of Shaheena's rights have caused, and are likely to continue to cause her significant emotional and monetary harm.

403. As a direct and proximate result of said unlawful employment practices, Shaheena has suffered damages including extreme mental anguish, outrage, severe anxiety about her future and ability to support herself and her family, harm to her employability and earning capacity, painful embarrassment among friends and co-workers, damage to her reputation, disruption of her personal life, and loss of enjoyment of the ordinary pleasures of life.

404. WHEREFORE, Shaheena prays for the following relief:

    A. That the Court enter judgment that the Defendant's acts and practices as set forth herein are in violation of the laws of the United States;

    B. That the Court award Shaheena any lost wages, including back pay, front pay and lost fringe benefits, and including, without any limitation, any lost benefits that would otherwise have been included in Shaheena's retirement plans which resulted from the misconduct with applicable prejudgment and statutory interest;

C. That the Court award Shaheena compensatory damages;

D. That the Court award Shaheena costs of litigation, including reasonable attorneys' fees, expert fees, expenses and costs; and

E. That the Court grant such other further relief that is just and proper under the circumstances.

**COUNT TWENTY-SIX**
**AGAINST CBE**
**BREACH OF FIDUCIARY DUTY**

405.    Shaheena repeats the allegations of paragraphs 1-211 of this third amended complaint as though fully alleged herein.

406.    At relevant times, a fiduciary relationship existed between Saffold and Shaheena because Shaheena was a parent of a CPS student and Saffold was a public official entrusted to supervise CPS schools.

407.    At relevant times CBE owed Shaheena and EKB a fiduciary duty of care to act in their best interests.

408.    At relevant times, a fiduciary relationship existed between Saffold and EKB because EKB was a student at a CPS school and Saffold was a public official entrusted to supervise CPS schools.

409.    At all relevant times, Saffold had a fiduciary duty to act in the best interest of Shaheena as a parent and EKB as a student.

410.    Saffold violated and breached her fiduciary duty to Shaheena by depriving her of the opportunity to accompany EKB to school for more than a week.

411.    Saffold violated and breached her fiduciary duty to EKB by depriving him of the right to be accompanied to school by his mother for more than a week.

412.     Saffold violated and breached her fiduciary duty to Shaheena and EKB by intentionally depriving Aldridge of resources that were necessary to operate and maintain the school in good order.

413.     Saffold violated and breached her fiduciary duty to Shaheena by removing her as Principal for Aldridge without due process of law.

414.     On several occasions after August 24, 2016, CBE refused to rescind Saffold's decision to remove Shaheena as Principal for Aldridge even after it became clear that Aldridge's performance had improved substantially under her tenure.

415.     Shaheena and EKB have suffered, and are likely to continue to suffer significant damages as a direct and proximate result of Saffold and CBE's breach of their fiduciary duties, including but not limited to moving expenses, attorneys' fees and emotional distress.

416.     WHEREFORE, Shaheena and EKB seek actual, compensatory and punitive damages (including reasonable attorneys' fees), expenses and costs, and other such other and further relief as this Court deems appropriate under the circumstances against CBE for breach of fiduciary duty.

## COUNT TWENTY-SEVEN
## AGAINST SCHOLASTIC, INC
## NEGLIGENCE

417.     Shaheena repeats the allegations of paragraphs 1-211 of this third amended complaint as though fully alleged herein.

418.     At relevant times, Scholastic owed Shaheena and EKB an ordinary duty of reasonable care to comply with CBE procurement rules and to reasonably supervise its employees, contractors and agents so as to not create or permit an unreasonable risk of harm to accept, process and deliver orders of its products to Aldridge Elementary school during the 2015-2016 school year in violation of CBE's procurement rules.

419.    In breach of and in violation of that duty, Scholastic, through its agents, employees or contractors, carelessly and negligently:

   a.   Accepted an order from Saffold on or about March 8, 2016 for school materials and training services worth $20,000 or more that was not appropriated for in the Aldridge budget or requested by the local school council and Principal for Aldridge;

   b.   Failed to contact Shaheena to ensure that the school materials were necessary and appropriated for in the school budget;

   c.   Failed to contact the Aldridge LSC to ensure that the school materials were necessary and appropriated for in the school budget;

   d.   Failed to refund Aldridge's money once it became aware that the Aldridge LSC had not approved the purchase of the materials and training;

   e.   Failed to verify that Saffold had complied with all CBE procurement and contract rules, including, but not limited to Section 7-1.

420.    As a direct and proximate result of one or more of the aforementioned wrongful acts, Saffold removed Shaheena as Principal for  Aldridge, causing Shaheena Khan and EKB to suffer current and future damages of a personal and pecuniary nature in excess of $75,000.

421.    WHEREFORE, Shaheena and EKB seek actual, compensatory and punitive damages, expenses and costs, and other such other and further relief as this Court deems appropriate under the circumstances against Scholastic, Inc., for negligence.

## **JURY DEMAND**

433.    Plaintiffs hereby demand a trial by jury pursuant to Rule 38(b) of the Federal Rules of Civil Procedure on all triable issues, including, whether Ira F. Aldridge Elementary

School made adequate progress during the 2015-2016 school year for purposes of 105 ILCS 5/34-8.3.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Shaheena Khan, on her own behalf; as next friend for EKB, a minor child; on behalf of the CITY OF CHICAGO; and derivatively on behalf of the Local School Council for Aldridge Elementary School, accordingly and respectfully demands judgment against Karen Saffold, James Ciesil, Forest Claypool, Ronald Marmer, Felicia Sanders, Brian Ali, Thomas Krieger, Elizabeth Kirby, Janice Jackson, Scholastic, Inc., and/or Board of Education of the City of Chicago, as appropriate and as follows:

434.    That Plaintiffs be awarded actual and general compensatory damages of at least $2,080,000 to be determined at trial;

435.    That Plaintiffs be awarded punitive damages to be determined at trial;

436.    That Plaintiffs be awarded reasonable attorneys' fees, costs and expenses in this action;

437.    That Shaheena Khan and/or the Local School Council for Aldridge be awarded reasonable attorneys' fees pursuant to 105 ILCS 5/34-18.1, 105 ILCS 5/34-2.3 (1.5) and other applicable laws.

438.    That Plaintiffs be awarded declaratory judgment as to each appropriate count detailed above;

439.    That Plaintiffs be awarded injunctive relief as to each appropriate count detailed above;

440.    That Plaintiffs be awarded any such further additional relief as this Court deems appropriate under the circumstances.

Respectfully Submitted


<u>/s/ Eric Onyango</u>
Eric Onyango
Prime Legal, LLC
222 North Columbus Drive, Suite 1507
Chicago, Illinois 60601
Counsel for Plaintiffs Shaheena Khan and EKB

WHEREFORE, Plaintiff Chicago Principals & Administrators Association, on its own and on behalf of Shaheena Khan, Trudy Taylor and other similarly or substantially similarly situated members, accordingly and respectfully demands judgment against Board of Education of the City of Chicago as follows:

441.    That Plaintiffs be awarded actual, general, compensatory and consequential damages of at least $7,000,000 to be determined at trial;

442.    That Plaintiffs be awarded punitive damages to be determined at trial;

443.    That Plaintiffs be awarded reasonable attorneys' fees, costs and expenses in this action;

444.    That Plaintiffs be awarded declaratory judgment as to each appropriate count detailed above;

445.    That Plaintiffs be awarded injunctive relief as to each appropriate count detailed above;

446.    That the Court enter an Order for appropriate reforms and oversight of the Board of Education of the City of Chicago policies and procedures regarding termination and reassignment of principal contracts;

447.    That Plaintiffs be awarded any such further additional relief as this Court deems appropriate under the circumstances.

Respectfully Submitted

/s/ Eric Onyango
Prime Legal, LLC
222 North Columbus Drive, Suite 1507
Chicago, Illinois 60601

Counsel for Chicago Principals & Administrators Association

## U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

## DISMISSAL AND NOTICE OF RIGHTS

| To: | Shaheena H. Khan, c/o Eric Onyango, Esq.<br>Prime Legal<br>222 North Columbus Drive, Ste. 1507<br>Chicago, IL 60601 | From: | Chicago District Office<br>500 West Madison St<br>Suite 2000<br>Chicago, IL 60661 |
|---|---|---|---|

☐ On behalf of person(s) aggrieved whose identity is
*CONFIDENTIAL (29 CFR §1601.7(a))*

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| **440-2016-04482** | **Eric Lamb,**<br>**Investigator** | **(312) 869-8092** |

### THE EEOC IS CLOSING ITS FILE ON THIS CHARGE FOR THE FOLLOWING REASON:

☐ The facts alleged in the charge fail to state a claim under any of the statutes enforced by the EEOC.

☐ Your allegations did not involve a disability as defined by the Americans With Disabilities Act.

☐ The Respondent employs less than the required number of employees or is not otherwise covered by the statutes.

☐ Your charge was not timely filed with EEOC; in other words, you waited too long after the date(s) of the alleged discrimination to file your charge

☒ The EEOC issues the following determination: Based upon its investigation, the EEOC is unable to conclude that the information obtained establishes violations of the statutes. This does not certify that the respondent is in compliance with the statutes. No finding is made as to any other issues that might be construed as having been raised by this charge.

☐ The EEOC has adopted the findings of the state or local fair employment practices agency that investigated this charge.

☐ Other *(briefly state)*

### - NOTICE OF SUIT RIGHTS -
*(See the additional information attached to this form.)*

**Title VII, the Americans with Disabilities Act, the Genetic Information Nondiscrimination Act, or the Age Discrimination in Employment Act:** This will be the only notice of dismissal and of your right to sue that we will send you. You may file a lawsuit against the respondent(s) under federal law based on this charge in federal or state court. Your lawsuit **must be filed WITHIN 90 DAYS** of your receipt of this notice; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a claim under state law may be different.)

**Equal Pay Act (EPA):** EPA suits must be filed in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that **backpay due for any violations that occurred more than 2 years (3 years) before you file suit may not be collectible.**

On behalf of the Commission

Enclosures(s)

*Julianne Bowman*      10-12-16

**Julianne Bowman,**
**District Director**

*(Date Mailed)*

cc:
**Susan O'Keefe**
**Deputy General Counsel**
**LAW DEPARTMENT**
**Board of Education of the City of Chicago**
**One North Dearborn, Suite 900**
**Chicago, IL 60602**