**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| SHAHEENA KHAN, *et al.*, | ) | |
| | ) | |
| | ) | Case No. 16-cv-8668 |
| Plaintiffs, | ) | |
| v. | ) | Judge Manish S. Shah |
| | ) | |
| BOARD OF EDUCATION OF THE | ) | Magistrate Judge Jeffrey T. Gilbert |
| CITY OF CHICAGO, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

**DEFENDANTS' MEMORANDUM IN OPPOSITION TO PLAINTIFFS'
FOURTH AND FIFTH MOTIONS FOR TEMPORARY RESTRAINING
ORDER, LIMITED DISCOVERY AND PRELIMINARY INJUNCTION**

The Board of Education of the City of Chicago ("Board"), Karen Saffold

("Saffold"), Ronald Marmer ("Marmer"), James Ciesil ("Ciesil") and Forrest Claypool

("Claypool") (collectively, "Defendants"), in opposition to Plaintiffs' Motions for

Temporary Restraining Order, Limited Discovery and Preliminary Injunction (Dkt.

#141), state as follows:

**Introduction**

For the fourth and fifth time, Plaintiff Shaheena Khan ("Khan") seeks a

temporary restraining order ("TRO"), limited discovery and a preliminary injunction.

Her current TRO motions request: (1) a prohibition against the Board holding "*any and

all* 105 ILCS 5/34-8.3(d) hearings," not just Khan's upcoming hearing; (2) a prohibition

against the Board terminating Khan without adequate due process of law or before the

*final* resolution of this litigation; and (3) an order for the Board to continue paying Khan

her contractually guaranteed salary and benefits until she receives adequate due process of law and this litigation is *resolved* (Dkt. #141 at 6) (emphasis added). Defendants will not reiterate the arguments and facts contained in their response to Khan's original TRO motion (Dkt. #26) and incorporate them by reference herein. Defendants address below Khan's allegations concerning the Illinois Open Meetings Act, the 2001 Elementary and Secondary Education Act (ESEA) and Khan's current work status and medical condition, which were not addressed in the Defendants' response to the original TRO motion.

### Relevant Facts

Khan continues to receive her full principal salary, with benefits, and will continue to do so until: (1) a Section 8.3(d) hearing is conducted;, (2) the hearing officer issues findings and recommendations;, (3) Chief Executive Officer ("CEO") Claypool reviews those findings and recommendations; (4) based on those findings and recommendations, Claypool makes a determination to remove Khan as principal of Aldridge;, and (4) the Board approves the CEO's removal recommendation. (Dkt. #26 at Ex. A)

On January 20, 2017, Elizabeth Kirby ("Kirby"), Chief of Schools for the Chicago Public Schools and a defendant in the instant matter, sent Khan a letter, through her attorneys, notifying her she was reassigned to Network 11 as of January 30, 2017 (Exhibit A, 1/20/17 Reassignment Letter). The letter explained the process to request a reasonable accommodation under the Americans with Disabilities Act ("ADA"), if one was necessary to return work, or a medical leave, if she felt she was medically unable to

return to work. *Id.* Because Khan did not report to work at the Network office, apply for a medical leave or request any ADA accommodations, on February 8, 2017, Kirby sent Khan, via her attorneys, another letter requesting Khan notify the Board whether she was seeking a Family Medical Leave Act ("FMLA") leave. (Exhibit B, 2/8/17 Letter). This letter does not "threaten to cut off her livelihood effective January 30, 2017" or "deprive her of the money she needs to purchase medication and to pay for insurance deductibles." *Id.*

As of the filing of this response, Khan had not contacted the 8.3(d) hearing officer, Margaret Fitzpatrick, or James Ciesil, attorney for the Board at the 8.3(d) hearing, to advise that she suffered some kind of medical emergency on February 4, 2017 (Dkt. #141 at ¶7), requiring another continuance of the 8.3 hearing currently scheduled for February 13, 2017.

**Argument**

Khan is unable to show that, without a preliminary injunction: (1) she will suffer irreparable harm before the final resolution of her claims; (2) traditional legal remedies would be inadequate; and (3) she has some likelihood of succeeding on the merits of her claim. The required showing of probability of success on the merits is measured by whether plaintiffs have established a "better than negligible chance of succeeding on the merits of at least one of [their] claims." *Girl Scouts of Manitou Council, Inc.,* 549 F.3d 1079, 1096 (7th Cir. 2008); *Ty Inc. v. Jones Group Inc.,* 237 F.3d 891, 897 (7th Cir. 2001); *Washington v. Indiana High Sch. Ass'n,* 181 F.3d 840, 846 (7th Cir. 1999). Khan's claims that the 8.3(d) hearing violates the Illinois Open Meetings Act, and that

the ESEA "preempts" the Illinois School Code, 105 ILCS 5/34-8.3, are without merit; thus she is not entitled to the extraordinary remedy of a TRO or preliminary injunction.

**A.  The Illinois Open Meetings Act Does Not Apply to 8.3 Hearings**

When enacting the Illinois Open Meetings Act ("OMA), the General Assembly decreed that citizens shall be given advance notice of and the right to attend all *meetings* at which any business of a *public body* is discussed or acted upon in any way.  5 ILCS 120/1. (emphasis added)  The OMA defines "meeting as any gathering, whether in person or by video or audio conference, telephone call, electronic means (such as, without limitation, electronic mail, electronic chat, and instant messaging), or other means of contemporaneous interactive communication, of a majority of a quorum of the members of a *public body* held for the purpose of discussing public business or, for a 5-member *public body*, a quorum of the members of a *public body* held for the purpose of discussing public business.  105 ILCS 120/1.02 (emphasis added).  Accordingly, the OMA only applies to meetings of a quorum of a "public body."

The OMA defines "public body" to include all legislative, executive, administrative or advisory bodies of the State, counties, townships, cities, villages, incorporated towns, school districts and all other municipal corporations, boards, bureaus, committees or commissions of this State, and any subsidiary bodies of any of the foregoing including but not limited to committees and subcommittees which are supported in whole or in part by tax revenue, or which expend tax revenue, except the General Assembly and committees or commissions thereof." *Id.*  First, the definition of "public body" applies to the Board, not employees of the Board, such as those who will

4

be involved in the 8.3(d) hearing. Furthermore, no Board member, let alone a quorum, attends or conducts the 8.3(d) hearing. Thus, these hearings do not fall within the definition of "meeting" of a "public body," and the OMA does not apply.

Even if this Court were to determine the OMA applies to 8.3(d) hearings, the OMA specifically allows the Board to hold "closed meetings to consider information regarding . . . performance . . . of specific employees of the public body . . . ." 5 ILCS 120/2(c)(1). If Khan's 8.3(d) hearing were a meeting of a public body under the OMA, it would fall squarely within this exception. Board employees would be entitled to hold a closed 8.3(d) meeting to address Khan's performance as principal in addressing the academic deficiencies of Aldridge under the OMA.

Additionally, the OMA allows the Board to close a meeting "when an action against, affecting or on behalf of the particular public body has been filed and is pending before a court or administrative tribunal, or when the public body finds that an action is probable or imminent, in which case the basis for the finding shall be recorded and entered into the minutes of the closed meeting." 5 ILCS 120/2(c)(11). Khan's filing of the instant lawsuit allows the Board to close any meeting at which an issue included in her suit is discussed, including the 8.3(d) hearing.

Because the OMA does not apply to 8.3(d) hearings, Khan does not have a likelihood of success on her contention that failure to provide public notice violated the OMA. Consequently, her TRO motion should be denied.

**B. ESEA Does Not Preempt 105 ILCS 5/34-8.3**

The ESEA was originally passed in 1965 as a means to distribute federal

education funds to schools and school districts with a high percentage of students from

low income families in order to provide equal access to education.  P.L. 89-10; 20 U.S.C.

6301 *et seq.*  In 2001, the ESEA was reauthorized and became known as No Child Left

Behind ("NCLB").  The reauthorization added strict accountability measures to ensure

schools were making adequate yearly progress ("AYP").  PL 107-110.  Under NCLB, if a

school did not make AYP for two consecutive years, a school improvement plan was to

be developed; at year four of missing its AYP target, the entire school staff, including

the principal, could be removed and replaced; and at year five, the school could be

closed.  *Id.*   The statute was again reauthorized in 2015 and is now known as Every

Student Succeeds Act ("ESSA").  P.L. 114-95 (2015).

Section 8.3 of the Illinois School Code is one of the mechanisms the General

Assembly created for the Board to address a school's failure to make AYP, which was

first mentioned in the ESEA and then strengthened in NCLB.  105 ILCS 5/34-8.3.

Section 8.3 has been amended over the years.  (1995, 1999, 2001 and 2009). The current

Section 8.3 specifically allows the CEO to monitor the performance of schools for a

"pervasive breakdown in educational program" due to "the absence of improvements

in student reading and math achievement scores, an increased drop-out rate, decreased

graduation rate and decrease in rate of student attendance."  *Id.* at 8.3(a)(2).  When a

school has been identified as non-performing and put on probation, but fails to make

"adequate progress" in correcting its deficiencies within one year, the CEO, with Board

approval, can remove and replace the principal. *Id.* at 8.3(d)(2).

Khan has provided no legal support for her contention that the ESEA or its

subsequent reauthorizations preempts 105 ILCS 5/34-8.3 or that Section 8.3 is

inconsistent with the ESEA. Khan randomly cites *Patriotic Veterans, Inc. v. Indiana,* 736

F.3d 1041 (7th Cir. 2013), without any explanation of its relevance. The case does not

support Khan's argument in any way. As Khan has no likelihood of success on her

ESEA argument, her motion should be denied.

### C. A TRO Is Not the Mechanism to Continue the 8.3 Hearing

Khan continually thwarts the Board's attempt to comply with due process by

refusing to participate in the 8.3(d) hearing. When the Board filed this response, Khan

had not notified the 8.3(d) hearing officer, Margaret Fitzpatrick, or the Board attorney,

James Ciesil, that she suffered some medical emergency on February 4, 2017. Moreover,

Khan has not asked Hearing Officer Fitzpatrick to continue the 8.3(d) hearing due to a

medical emergency. A TRO motion is not the proper avenue to notify the hearing

officer of a potential medical problem requiring a continuance.

Further, contrary to Khan's assertion, she first received notice of the 8.3(d)

hearing on September 2, 2016, not December 15, 2016, as she now claims (Exhibit C,

9/2/16 Notice). The notice clearly states the Board's intention to seek Khan's removal

as principal of Aldridge to correct the school's academic deficiencies. *Id.* Therefore,

Khan had three months to prepare her defense prior to succumbing to her current

medical condition on December 23, 2016.  Accordingly, her TRO motion should be denied.

## Conclusion

For the reasons stated above and those contained in Document #26, the Defendants respectfully ask this Court to deny Khan's Motion for TRO, Limited Discovery and Preliminary Injunction.

Respectfully submitted,

RONALD L. MARMER, General Counsel
BOARD OF EDUCATION OF CITY OF CHICAGO

By:     s/ *Kathleen M. Gibbons*
        Kathleen M. Gibbons
        Senior Assistant General Counsel
        Board of Education of the City of Chicago
        One North Dearborn, Suite 900
        Chicago, Illinois 60602
        (773) 553-1700

By:     s/ *Sarah K. Quinn*
        Sarah K. Quinn
        Assistant General Counsel
        Board of Education of the City of Chicago
        One North Dearborn, Suite 900
        Chicago, Illinois 60602
        (773) 553-1700

## <u>CERTIFICATE OF SERVICE</u>

I, Kathleen M. Gibbons, an attorney do hereby certify that I caused the attached **Board of Education of the City of Chicago's Memorandum in Opposition to Plaintiffs' Fourth and Fifth Motions for TRO, Limited Discovery and Preliminary Injunction** to be served upon counsel of record *via* CM-ECF E-Filing pursuant to General Order on Electronic Case Filing, Section XI(C), on this 8th day of February, 2017.

s/ *Kathleen M. Gibbons*
Kathleen M. Gibbons
Senior Assistant General Counsel
Board of Education of the City of Chicago
One North Dearborn, Suite 900
Chicago, Illinois 60602
(773) 553-1700
