UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| SHAHEENA KHAN, et al., <br><br> Plaintiffs, <br><br> v. <br><br> BOARD OF EDUCATION OF THE CITY OF CHICAGO, et al., <br><br> Defendants. | No. 16 CV 8668 <br><br> Judge Manish S. Shah |

## ORDER

The Board defendants' motion to dismiss, [173], is granted in part. Some claims in the fourth amended complaint are dismissed with prejudice, some without, and some not at all. To simplify matters for the parties, the fourth amended complaint [132] is dismissed in its entirety, with leave to file a fifth amended complaint that complies with Rule 8 and this order. Defendants' motion for sanctions, [220], is denied. A status hearing is set for 3/27/18 at 9:30 a.m., to set a deadline for the filing of a fifth amended complaint.

## STATEMENT

Plaintiff Shaheena Khan was under contract to be the principal of the Aldridge Elementary School. She signed two contracts, one in 2013 for a four-year term, and a second one in 2016 for another four-year term to start in 2017. In 2016, administrators reassigned Khan from her principal position, prompting this lawsuit. Khan seeks declaratory judgments and damages based on the conduct of various defendants (administrators and officials of the Chicago Board of Education, and the Board itself). Plaintiff Trudy Taylor was under contract to be principal of Owens Elementary Community Academy for a four-year term between 2012 and 2016, but was reassigned to Carver Elementary. Taylor was removed as Carver's principal in 2016. Taylor joins Khan's claims for declaratory relief, and—it seems—other claims in the complaint brought by the Chicago Principals & Administrators Association. The CPAA is the named plaintiff in claims asserting breach of contract, violation of due process, constructive discharge, and a violation of ERISA—all based on the manner in which the Board handled the removal or reassignment of

principals like Khan and Taylor. The Board defendants move to dismiss most of the counts against them.[1]

A complaint must contain a short and plain statement of the claims. Fed. R. Civ. P. 8(a)(2). This complaint has 230 paragraphs (out of a total of 507) incorporated into over 30 counts. *See* [132].[2] "Rule 8(a) requires parties to make their pleadings straightforward," but instead of outright dismissal when faced with unnecessary complexity, "a judge should bypass the dross and get on with the case." *U.S. ex rel. Garst v. Lockheed-Martin Corp.*, 328 F.3d 374, 378 (7th Cir. 2003). Plaintiffs' complaint here is far from perfect, and it is not short and plain. But I decline to dismiss the complaint on pure Rule 8 grounds. At bottom, Khan's complaint could be straightforward—she had contracts and believes they were breached, she challenges the procedures used to change her employment status, and she believes discriminatory reasons motivated some materially adverse decisions. These are not complicated claims. Since several claims are dismissed for reasons discussed in this order, plaintiffs should try again to plead their surviving claims in a short and plain statement.[3] Khan should understand that she is under no obligation to assert every possible claim. Ultimately, she is entitled to only one recovery—more claims do not result in more damages or more equitable relief.

---

[1] The Board does not substantively challenge the employment discrimination claims (Counts 23 to 26), the deprivation of occupational liberty claim (Count 14), the *Monell* claim for First Amendment, due process, and equal protection violations (Count 15), and the Illinois Whistleblower claim (Count 20). Those claims are not dismissed.

[2] Bracketed numbers refer to entries on the district court docket.

[3] The Aldridge Local School Council is not a proper plaintiff. The complaint alleges that the Aldridge LSC does not want to participate in this lawsuit. [132] ¶ 205. The federal rules do not permit a plaintiff to force another party to join a lawsuit as an involuntary plaintiff, and there is no such thing as an involuntary plaintiff under Illinois law. *Doermer v. Oxford Fin. Grp., Ltd.*, No. 17-1659, 2018 WL 1177754, at *3 (7th Cir. Mar. 7, 2018). The complaint names both Aldridge and Owens LSCs as defendants. Khan and Taylor argue that the councils are necessary parties because they are parties to the principal contracts and played a role in the renewal of Khan's position. But there is no allegation that suggests that the councils are necessary to adjudicate the claims. The councils are not alleged to have breached an agreement or otherwise violated plaintiffs' rights, and the relief requested is directed at the Board defendants. Those defendants do not challenge the court's ability to award relief without the LSCs as parties. The LSCs are separate statutory entities, but it is not clear that they have the capacity to be sued when they are not alleged to have to committed any act or omission giving rise to liability on their part. *Cf. Bordelon v. Bd. of Educ. of the City of Chicago*, 811 F.3d 984, 989 n.3 (7th Cir. 2016). The capacity of the LSCs need not be decided here, because the complaints do not state claims for relief against the LSCs, and plaintiffs are not asking to bring the LSCs in as defendants in order to later realign them. The LSCs are dismissed without prejudice.

Counts 1 through 7 assert various claims for declaratory relief. In sum, the complaint alleges that the Board invoked procedures under 105 ILCS 5/34-8.3(d) to orchestrate Khan's and Taylor's removals as principals of their schools. Khan, Taylor, and the CPAA seek a declaration that the statute cannot be used in this way, either because it is preempted by federal law or unconstitutional, or because the manner in which it is being used is unlawful. If there is an actual case or controversy, a federal court "may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a); *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 126 (2007). The Declaratory Judgment Act "provides that a court *may* declare the rights [. . .] not that it *must* do so." *MedImmune*, 549 U.S. at 136 (internal citation omitted).

The passage of time since the filing of the complaint has likely changed the parties' assessment of the Board's use of § 8.3(d). CPAA's fears may no longer be pressing. As the Board points out, there is no allegation that any principal has been terminated solely through an § 8.3(d) hearing. In May and June 2017, Khan participated in a § 8.3(d) hearing, and in July 2017, Khan and Taylor asserted that their damages claims were more dominant. [208] at 2. On the other hand, Khan has filed a new lawsuit alleging that her hearing was a sham and her 2017 contract has been terminated. *Khan v. Board of Education of City of Chicago*, No. 17-cv-9300 (N.D. Ill.), Dkt. 1 ¶¶ 144–70. It is likely that a controversy over § 8.3(d) hearings exists, but it would seem that viable damages claims, and not declarations, should be the focus of the parties' efforts. I dismiss the declaratory judgment claims, Counts 1 through 7, without prejudice.[4] Plaintiffs may refile declaratory judgment claims in an amended complaint, but should focus on an existing case or controversy between the parties involving the application of the statute to historical facts.

The principals' association has agreed to drop Counts 10 through 13. [186] at 13. Those claims are voluntarily dismissed in their entirety without prejudice. Fed. R. Civ. P. 41(a)(1)(A)(i). These counts are labeled "CPAA Claims for Damages," but it appears that Taylor thinks Counts 10 through 13 include individual claims on her behalf. She did not respond to the Board defendants' argument that Count 12, constructive discharge, does not state a claim. Since Taylor forfeited a response, and since Illinois does not recognize a cause of action for constructive discharge, Count 12 is dismissed with prejudice as to Taylor. *See Zimmerman v. Buchheit of Sparta, Inc.*, 164 Ill.2d 29, 36–40 (1994). Counts 10, 11, and 13 as to Taylor are dismissed without prejudice because it is not apparent how those claims apply to Taylor individually. The claims are drafted as group claims by the association. *E.g.*, [132] ¶ 301 ("As a proximate and direct result of the breach, CPAA standing members

---

[4] Khan voluntarily dismisses Count 8. [189] at 5. That claim is dismissed without prejudice as against the Board, under Rule 41. In a separate order, I dismissed Count 8 with prejudice as to defendant Sedgwick Claims Management. [244].

3

have suffered substantial actual, compensatory and consequential damages that were reasonably foreseeable."). While there are factual allegations about Taylor's contract and conclusory allegations that she was reassigned and removed without due process, those allegations do not clearly map onto CPAA's Counts 10, 11, and 13. Taylor's claims for damages in those counts—to the extent they were ever pled at all—are dismissed without prejudice.

The complaint names Board employees Gerald Beimler (a data strategist), Brian Ali (employed in an unknown capacity), Thomas Krieger (a senior leader), and Ryan Crosby (another senior leader) as defendants. Beimler is not named in any particular count, so he is not adequately on notice as to what he is defending against. Krieger, Ali, and Crosby are named in certain conspiracy counts. Krieger wrote an email acknowledging Khan's attorney's communications, and refused to schedule a meeting. [132] ¶ 80. This does not allege that Krieger entered into any agreement to violate Khan's rights. Ali gave Khan unsatisfactory performance ratings, but did not supervise her work. [132] ¶¶ 81–82. He also falsely attributed statements to Khan in documents that could be used to justify termination of her employment. [132] ¶ 106. Crosby prepared a false statement in support of the case for removing Khan as principal of Aldridge. [132] ¶¶ 228–30. These allegations about Ali and Crosby are more detailed than the ones about Beimler and Krieger, but they do not state claims for conspiracy against them. There is no plausible inference that these acts were part of an agreement by these particular defendants to violate Khan's constitutional rights. Moreover, all of these defendants were "agents and employees of [the Board] and acted within the scope of their employment in committing the misconduct described herein." [132] ¶ 479. A conspiracy "cannot exist solely between members of the same entity," and when all of the defendants are public employees, "a conspiracy claim has no role to play." *Payton v. Rush-Presbyterian-St. Luke's Medical Center*, 184 F.3d 623, 632–33 (7th Cir. 1999); *Scott v. City of Chicago*, 619 Fed.App'x 548 (7th Cir. 2015). The complaint's assertion that all of the Board defendants were acting within the scope of their employment means there is no actionable conspiracy. Counts 16 through 18 are dismissed without prejudice.

In Count 19, Khan alleges that certain defendants knew that she had a minor child attending the Chicago Public Schools, and when they ordered her not to return to any CPS location, they interfered with her liberty interest in raising her child and controlling her child's education. The constitution protects "the right of parents to establish a home and bring up children and to control the education of their own." *Troxel v. Granville*, 530 U.S. 57, 65 (2000) (quotation omitted). But Khan reads this general proposition too far, and claims that she had a constitutional right to send her child to Aldridge and participate in activities there. [189] at 11. No case establishes such a specific right, and there is no allegation in the complaint that the defendants deprived Khan's child of an education within the CPS system or separated the child from Khan in any meaningful way. Count 19 fails to state a

claim (and the defendants would be protected by qualified immunity in any event). This count is dismissed with prejudice.

Khan's claims for reformation of contract (Count 9) and anticipatory repudiation (Count 29) are dismissed without prejudice. "The action for reformation is to change the written instrument by inserting the omitted provision so that the instrument conforms to the original agreement between the parties. 'What is sought to be reformed is not the understanding between the parties, but rather the written instrument which inaccurately reflects it.'" *Schaffner v. 514 W. Grant Place Condo. Ass'n, Inc.*, 324 Ill.App.3d 1033, 1044 (1st Dist. 2001) (citations omitted). The complaint alleges a variance between the signed contract and the role that 105 ILCS 5/34-8.3 could play in Khan's removal. [132] ¶¶ 287–88. But the complaint does not allege that the Board agreed that § 5/34-8.3 would not apply; it seems instead that Khan is alleging that *she* did not agree to a term that the Board inserted into the contract. This is not a claim for reformation because it seeks to change the original understanding of the parties. Similarly, anticipatory repudiation is a poor fit for these facts. "[A]nticipatory repudiation is actionable as a breach of contract when—and only when—the repudiating party unequivocally and without justification renounces its duty to perform the contract on its date of performance." *Busse v. Paul Revere Life Ins. Co.*, 341 Ill.App.3d 589, 594 (1st Dist. 2003). Khan alleges that her removal from Aldridge in August 2016 and related acts, [132] ¶¶ 101, 104, amounted to repudiation by the Board. But the complaint alleges that the Board invoked procedures under § 5/34-8.3 that are arguably part of the contract. The parties certainly dispute whether and how those procedures apply to their contract, but the Board's actions are akin to a statement that it intends to perform within its interpretation of the contract and, "as such, [its] promise does not amount to anticipatory breach." *In re Marriage of Olsen*, 124 Ill.2d 19, 24 (1988).

To allege fraud (Count 30), Khan must allege that the Board made a false statement of material fact, with knowledge or belief that the statement was false, and with the intent to induce Khan to reasonably rely and act on the statement. She must also show that this reliance caused her injury. *Omnicare, Inc. v. UnitedHealth Grp., Inc.*, 629 F.3d 697, 722 (7th Cir. 2011). Khan adequately describes the who, what, when, and where. The Board induced her to sign agreements by falsely representing that she could be removed only after a public hearing, and defendant Ciesil, the Board's agent, lied about the purpose of a meeting. [132] ¶¶ 467–469. But the claimed injury—her removal without due process and a public hearing—is not adequately alleged to have been proximately caused by these misrepresentations. The signing of the agreements and Khan's attendance at Ciesil's meeting without her attorney are not alleged to have caused her removal and the alleged damages. The fraud claim is dismissed without prejudice.

Count 21, the tortious interference claim, is dismissed without prejudice as to defendant Sanders. There is no independent, intentional act of Sanders that allegedly caused an interference with Khan's contract. Sanders's rudeness did not

5

cause a breach of contract, and her role in the corrective action plan was entirely at Saffold's direction. It is not plausible that Sanders had the requisite intent or purpose to be liable for tortious interference. Saffold, on the other hand, is alleged to have caused Khan's ouster as principal, and while defendants have arguments that this was not a breach of contract, and that Khan was not terminated, those arguments should await further factual development.

Count 22, the Sherman Act claim, is dismissed with prejudice for the reasons stated in my earlier order on defendant Scholastic, Inc.'s motion to dismiss. [244]. As to the Board defendants, there is no allegation that the object of the conspiratorial agreement—the removal of Khan—was the kind of restraint of trade targeted by the Sherman Act, and it is not plausible that Khan's removal single-handedly affected the price of public education for the consumer.

Count 27 is labeled a breach of fiduciary duty claim against the Board. Based on Khan's response to the motion to dismiss, however, it seems she is alleging that Saffold breached a fiduciary duty to Khan—in Khan's capacity as a parent of a CPS student. In order to state a claim for breach of fiduciary duty, it must be alleged that a fiduciary duty exists, that the fiduciary duty was breached, and that such breach proximately caused the injury of which the plaintiff complains. *Neade v. Portes*, 193 Ill.2d 433, 444 (2000). Illinois has held public officials to a fiduciary duty to the people they represent, *City of Chicago ex rel. Cohen v. Keane*, 64 Ill.2d 559, 565 (1976), but Khan cites no authority for the proposition that a tort claim for breach of fiduciary duty can be brought against *the Board* for a self-interested act by a CPS employee (Saffold) that happens to cause harm to another CPS employee (Khan), who coincidentally is the parent of a CPS student. The Illinois Supreme Court would not extend the tort to reach such a fact pattern.[5] Count 27 is dismissed with prejudice as to the Board.

The complaint is dismissed with leave to re-plead claims in a manner consistent with this order, to include the formerly sealed claim filed pursuant to the Chicago municipal code, § 1-22-030(b)(2), which may be publicly filed and served (if Khan elects to pursue it). *See* [206]. In moving forward, Khan should take heed of Rule 8 and simplify her allegations. If Khan again alleges over one hundred background facts, she should not incorporate all allegations into every claim for relief. Some allegations are irrelevant to some claims, and to give notice, Khan must select which allegations apply to which claims.

Finally, defendants' motion for sanctions is denied. Plaintiff's counsel ignored earlier directives to not use motions, filed separately from memoranda, to bypass

---

[5] In the criminal context, the Illinois Supreme Court has cautioned against overreaching with the "amorphous concept of a 'breach of a fiduciary duty'" by public officials. *People v. Howard*, 228 Ill.2d 428, 433 (2008) (citation omitted).

6

the page limits. Counsel could have been more forthcoming about his client's financial situation when presenting her arguments for extraordinary injunctive relief. Counsel's behavior has been slippery, but I conclude that it was not in bad faith. Ultimately, the tactics have done no favors for the client and drain counsel's reservoir of credibility with the court. I expect the ineffectiveness of counsel's advocacy serves as its own deterrent to future misconduct.

ENTER:

Manish S. Shah
United States District Judge

Date: March 12, 2018