UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

SHAHEENA KHAN and TRUDY TAYLOR,
et al.,

               Plaintiffs,

         v.

BOARD OF EDUCATION OF THE CITY OF
CHICAGO, et al.,

               Defendants.

No. 16 CV 8668

Judge Manish S. Shah

## MEMORANDUM OPINION AND ORDER

Shaheena Khan and Trudy Taylor, both former principals of public elementary schools in Chicago, allege that the Board of Education, Karen Saffold and others wrongfully terminated them. Their Fifth Amended Complaint is divided into eighteen counts. The Board moves to dismiss the complaint as unintelligible under Federal Rule of Civil Procedure 8 and, alternatively, moves to dismiss counts one, two, three, four, seven, thirteen, fourteen, fifteen, sixteen and eighteen under Federal Rule of Civil Procedure 12(b)(6).

## I. Legal Standards

A complaint need only contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8. *See also* Fed. R. Civ. P. 8(d)(1) ("[e]ach allegation must be simple, concise and direct"). It need not contain every fact necessary to survive a motion for summary judgment. *Suarez v. W.M. Barr & Co., Inc.,* 842 F.3d 513, 523 (7th Cir. 2016). But it must contain factual allegations

that plausibly suggest a right to relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 677–78 (2009). *See also* Fed. R. Civ. P. 12(b)(6). In ruling on a motion to dismiss, a court must accept all factual allegations as true, and draw all reasonable inferences in the plaintiff's favor, but need not accept legal conclusions or conclusory allegations. *Ashcroft*, 556 U.S. at 680–82.

## II. Facts

The Board of Education of the City of Chicago manages the city's public schools. [258] ¶ 5.[1] Defendant Karen Saffold was an employee of the Board and responsible for supervising both Aldridge Elementary School and George Washington Carver Elementary School. *Id.* at ¶ 6.

In 2012, Plaintiff Trudy Taylor entered into an employment agreement with the local school council for Jesse Owens Elementary to be that school's principal. *Id.* ¶ 16. Taylor was later reassigned multiple times before becoming the principal of Carver Elementary. *Id.* ¶¶ 20–22. On or about January 20, 2016, Saffold and others removed Taylor as principal of Carver Elementary. *Id.* ¶ 22.

Plaintiff Shaheena Khan was once the principal of Aldridge Elementary. *See* [258] ¶¶ 9–10. In June of 2013, she entered into an employment agreement with the local school counsel for Aldridge (allegedly, an agent of the Board) that covered the period spanning July 1, 2013, to June 30, 2017. *Id.* ¶ 9. She was awarded another employment agreement (on or about July 21, 2016) covering the period spanning July

---

[1] Bracketed numbers refer to entries on the district court docket. Unless otherwise specified, citations are to the page numbers as they are reflected in the documents cited (e.g., if a page is numbered "Page 1" but appears three pages into the exhibit, it is cited as "Page 1").

1, 2017, to June 30, 2021. *Id.* ¶ 10. On August 24, 2016, the Board and Saffold terminated Khan's contractual duties and responsibilities as principal for Aldridge. [258] ¶ 13.

## III. Analysis

### A. Rule 8

The Fifth Amended Complaint is a mess. Its eighteen counts are spread across thirty-seven pages and 550 paragraphs. *See* [258]. Much of it is duplicative or unnecessary. *See, e.g.,* ¶¶ 123, 205. It narrowly ducks a prior admonition (to "not incorporate all allegations into every claim" if alleging more than "one hundred background facts," [245] at 6) by mixing fact and law across several counts and then "stacking" the resulting paragraphs. *See, e.g.,* ¶¶ 262–304 (incorporating ¶¶ 214–256 (incorporating ¶¶ 163–201 (incorporating ¶¶ 131–161))). It's hard to believe, but this is an improvement over the Fourth Amended Complaint (which alleged thirty-one counts over seventy-four pages, [132]).

As difficult as it is to follow—and counsel does their client a disservice by litigating this way—the complaint is not unintelligible, *Davis v. Ruby Foods, Inc.*, 269 F.3d 818, 820 (7th Cir. 2001), nor does it amount to a repeated disregarding of specific instructions. *Airborne Beepers & Video, Inc. v. AT & T Mobility LLC*, 499 F.3d 663, 667 (7th Cir. 2007). Looking past the "disposable husk" of irrelevant facts and empty legal assertions, there remains a "core of proper pleading" that adequately puts the defendants on notice as to the claims against them. *Davis,* 269 F.3d at 820. *See also U.S. ex rel. Garst v. Lockheed-Martin Corp.*, 328 F.3d 374, 378 (7th Cir. 2003) (some

complaints are "windy but understandable"). The Fifth Amended Complaint is not dismissed under Rule 8.

## B.     Rule 12(b)(6)

Some of its individual counts, however, can be dismissed as a matter of law. The Board moves to dismiss counts one, two, four and seven as duplicative, [272] at 5–8; counts two, three, thirteen, fourteen, fifteen and sixteen for failure to state a claim, *id*. at 7–8, 8–9, 14–15, 12–13, 11–12 and 13–14; counts fourteen, fifteen and eighteen as time-barred, *id*. at 9–10; and count fifteen as barred by the Illinois Tort Immunity Act. *Id*. at 10–11. Counts one, two, four and seven are dismissed as duplicative, and counts thirteen and fourteen are dismissed for failure to state a claim. The other counts are not dismissed.

### 1.     *Counts One, Two, Four and Seven*

Courts have "broad discretion to dismiss a complaint for reasons of wise judicial administration . . . whenever it is duplicative of a parallel action already pending in another federal court." *McReynolds v. Merrill Lynch & Co.*, 694 F.3d 873, 888 (7th Cir. 2012) (quotations omitted). "A suit is duplicative if the claims, parties, and available relief do not significantly differ between the two actions." *Id*. at 889 (quotations omitted). *See also Serlin v. Arthur Andersen & Co.,* 3 F.3d 221, 223 (7th Cir. 1993) ("[d]istrict courts are accorded a great deal of latitude and discretion in determining whether one action is duplicative of another") (citations omitted).

Khan has filed another suit in this same court, naming one common plaintiff (Khan) and one common defendant (the Board), concerning multiple claims that do not differ significantly from those alleged here, and seeking relief that does not differ

significantly from that sought here. There is considerable overlap. *Compare* 16-cv-08668 [258] ¶¶ 9, 24–40 (count one, Khan against the Board for breach of an employment contract entered into "on or about June 2013"), ¶¶ 10, 42–59 (count two, Khan against the Board for breach of an employment contract entered into "on or about July 21, 2016") *with* 17-cv-09300 [27] ¶¶ 99, 210–17 (count three, Khan against the Board for breach of an employment contract entered "on or about July 21, 2016"); 16-cv-08668 [258] ¶¶ 80–100 (count four, Khan against the Board for deprivation of a protected liberty interest) *with* 17-cv-09300 [27] ¶¶ 195–209 (count two, Khan against the Board for "Deprivation of Liberty Interest/ [sic]Violation of Due Process/Defamation *Per Se*/ [sic]First Amendment"); 16-cv-08668 [258] ¶¶ 164–214 (count seven, Khan against the Board for violations of the Illinois Whistleblower Act) *with* 17-cv-09300 [27] ¶¶ 288–301 (count nine, Khan against the Board for violations of the Illinois Whistleblower Act); 16-cv-08668 [258] ¶ 100 (count four, seeking "actual and compensatory damages incurred as a result of the deprivation by the Defendant Chicago Board of Education of her liberty interest to pursue the occupation of her choice") *with* 17-cv-09300 [27] ¶ 209 (count two, seeking "an amount to be determined at trial . . . for violation of her procedural due process [and] substantive due process . . . rights").

The parties disagree only as to the appropriate remedy. The Board requests that the duplicative counts be dismissed from this case. *See* [272] at 6. Khan does not dispute that the counts are duplicative and requests that they be dismissed from the later-filed action (*i.e.*, from 17-cv-09300). [275] at 6–7. There is no rule that says the

5

earlier-filed case has priority over the later, duplicative one. All that matters is that we reduce Khan's waste of time and resources. The Board's request is granted and counts one, two, four and seven are dismissed from the above-captioned case.[2]

### 2. *Count Three (Khan's Claim for Reformation)*

Reformation is proper when the written instrument does not reflect the parties' shared understanding. *Schaffner v. 514 W. Grant Place Condo. Ass'n, Inc.*, 324 Ill.App.3d 1033, 1044 (1st Dist. 2001). The Fourth Amended Complaint failed to allege that the Board shared Khan's belief about the applicability of an Illinois statute (105 ILCS § 5/34-8.3(d)) to her employment agreement. [245] at 5. The Fifth Amended Complaint, however, alleges that both she and the Board believed that the statute would not apply and, nonetheless, entered into an agreement that says that it would. [258] ¶¶ 60–79. In that sense, Khan has cured the defect.

In the process, Khan almost created another. Equitable reformation is appropriate when "the conduct . . . *of one party to a contract* . . . causes the terms of the written contract to deviate materially from what the parties had agreed to." *Hartmann v. Prudential Ins. Co. of Am.*, 9 F.3d 1207, 1209 (7th Cir. 1993) (emphasis added). As amended, count three suggests that Khan and the Aldridge Local School Council were the parties to the contract, and that the Board was just the "drafter." [258] at ¶¶ 78–79. Since Khan brings count three against the Board and not the Local

---

[2] For reasons explained in an order entered in 17-cv-9300, Khan's claim based on an alleged deprivation of her chosen occupation is dismissed for failure to state a claim.

School Council, she has plead a reformation claim against the scrivener rather than a party to the agreement.[3]

Khan's claim, however inartfully drafted, can go ahead because Khan has also sufficiently alleged and argued that the Aldridge Local School Council was an agent acting on the Board's behalf when it renewed Khan's contract. *See Lawcock v. U. S. Trotting Ass'n*, 55 Ill.App.2d 211, 215 (1st Dist. 1965) ("a principal is bound by, and is liable upon, a contract executed properly as to form by his agent, within the actual or apparent authority of the agent, and with the understanding that the agent is contracting on behalf of the principal"). If the Aldridge Local School Council was the Board's agent, then the Board was both the drafter of, and (as principal) a party to, the contracts at issue, and can be properly sued for reformation now that Khan has alleged that both Khan and the Board agreed that § 5/34-8.3(d) would not apply to her. Khan will, of course, have to prove the alleged mutual understanding, but dismissal at this stage is not appropriate.

---

[3] As an aside, the Fifth Amended Complaint seems to get the facts wrong: the Board was indeed a party to both the 2013 and 2017 contracts. *See* [1-1] at 1; [1-2] at 1. Normally, when an exhibit and a complaint conflict, the exhibit typically controls. *Forrest v. Universal Sav. Bank, F.A.*, 507 F.3d 540, 542 (7th Cir. 2007). But plaintiffs did not attach to the Fifth Amended Complaint copies of the relevant performance contracts, *compare* [258] *with* [1-1]; [1-2], and Taylor moves to exclude the copies that were attached to previous versions of the complaint as *functus officio*. [276] at 1. *Kelley v. Crosfield Catalysts,* 135 F.3d 1202, 1204–05 (7th Cir. 1998) ("facts not incorporated into the amended pleading are considered *functus officio* . . . If certain facts or admissions from the original complaint become *functus officio*, they cannot be considered by the court on a motion to dismiss the amended complaint").

### 3. Count Thirteen (Taylor's Section 1983 Claim)

Municipalities are only liable under section 1983[4] when the injury in question is inflicted by the "execution of a government's policy or custom." *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 694 (1978). There are three ways to demonstrate the existence of such a policy: "proof of an express policy causing the loss, a widespread practice constituting custom or usage that caused the loss, or causation of the loss by a person with final policymaking authority." *Kujawski v. Bd. of Comm'rs of Bartholomew Cty., Ind.*, 183 F.3d 734, 737 (7th Cir. 1999). A plaintiff must allege enough "by way of factual content to 'nudg[e]' his claim . . . 'across the line from conceivable to plausible.'" *McCauley v. City of Chicago*, 671 F.3d 611, 618 (7th Cir. 2011) (dismissing complaint where allegations included, for instance, assertion that defendants "maintain[ed] a custom and practice of failing to adequately train officers concerning the necessity of promptly arresting individuals guilty of violating protective orders"). *See also Brooks v. Ross,* 578 F.3d 574, 581 (7th Cir. 2009) (allegation insufficient where it was "just as consistent with lawful conduct as it [was] with wrongdoing").

---

[4] Count thirteen of the Fifth Amended Complaint is titled, simply, "Violation of Due Process Rights." [258] ¶ 422–427. It cites the "Fifth Amendment and Due Process Clause of the Fourteenth Amendment of the United States Constitution" and "relevant provisions of the Illinois Constitution." ¶ 423. Insofar as Taylor is attempting to claim that the Illinois Constitution has been violated, that claim is dismissed for failure to state a claim under *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 574, (2007) (the complaint must "put the defendant on notice as to the nature of the claim against him and the relief sought"). Insofar as Taylor attempts to assert a claim for a violation of an amendment to the United States Constitution, the Court construes that claim (as does, apparently, both Taylor, [276] at 12–15, and the Board, [272] at 14) as one under 42 U.S.C. § 1983.

Taylor fails to allege enough in support of her claim in count thirteen. She alleges that the Board deprived her of her protected interest in her employment contract, [258] ¶ 425, but, at first glance, fails to identify the policy or custom that led to that deprivation. *See* [258] ¶¶ 422–427. In her response to the Board's motion to dismiss, Taylor points to one paragraph in the Fifth Amended Complaint (located three hundred paragraphs earlier, in count five—a section of the complaint that count thirteen does not reallege—and that addresses one of Khan's claims against the Board) that details various "de facto" policies, *see* [258] ¶ 126(a)–(e), among them the "practice and/or custom of concealing and/or suppressing senior leadership misconduct," the "practice or custom of investigating complaints against senior leaders differently than complaints against teachers, vendors, students or parents," and the "practice and/or custom of . . . failing to properly train, monitor and/or supervise its senior leaders." *Id.*

This disjointed argument fails to cobble together sufficient factual support to nudge Taylor's theory across the line to a plausible claim. *McCauley*, 671 F.3d at 618. Two of the paragraphs do not include sufficient factual support to render the allegations plausible. *See* [258] ¶ 126(c) ("the practice and/or custom of failing to maintain accurate and complete records of complaints and investigations of misconduct of senior leadership officials"); 126(d) ("the practice and/or custom of hiring and retaining unqualified area academic officers, network chiefs and other senior leaders, and failing to properly train, monitor and/or supervise its senior

leaders"). *See also McCauley*, 671 F.3d at 618 (bare allegation of "failure to train" insufficient).

A few of Taylor's other allegations fare better on this point. For instance, Taylor includes a number of details to back up her allegation that there was a cover-up of senior leadership misconduct: she purports to know the types of misconduct that were concealed ("vendor stealing, waste of public resources, corruption, intimidation or retaliation") and the methods used to accomplish the concealment ("failure to sufficiently investigate . . . failure to accept complaints from citizens, employees or parents against senior leadership"). [258] ¶ 126(a). The same can be said of her allegations about the "double standards" that applied to investigations of senior leaders and the failures to report misconduct by senior leaders. *Id.* ¶ 126(b) ("the practice or custom of investigating complaints against senior leaders differently than complaints against teachers, vendors, students or parents" was allegedly pursuant to a "double standard" that involved obstructionism and the mischaracterization of misconduct); ¶ 126(e) ("the practice and/or custom of a 'code of silence'" allegedly resulted in "refusal[s] or failure[s] to report instances of misconduct of which they are aware, including allegations of waste, retaliation, fraud, intimidation, or corruption" and/or board members refusing to cooperate in good faith with ongoing investigations).

But even if these additional facts are enough to nudge Taylor's theories from conceivable to plausible, the facts are still just as consistent with lawful conduct as they are with wrongdoing. *See Brooks v. Ross,* 578 F.3d 574, 581 (7th Cir. 2009).

Taylor alleges that she submitted reports to various agencies outlining conduct that she believed was unlawful, *see* [258] ¶¶ 121–23, and concludes that these *de facto* policies must explain the decision to not investigate (and/or investigate insufficiently). This is a big leap. Judging by the facts (or lack thereof) in the complaint, it is also possible that Taylor's reports lacked sufficient factual content to justify an investigation, or the possibility that the agencies decided not to investigate because they lacked the resources to do so, or the possibility that the claims were investigated and that no conclusion of wrongdoing was reached. The allegations are insufficient. *Brooks,* 578 F.3d at 581.

Also missing is any indication of how a violation of Taylor's constitutional rights and any damages were the result of the execution of one of these de facto policies (which is unsurprising, given that Taylor's claim attempts to borrow from a section of the complaint devoted to explaining how and why Khan was removed). Taylor fails to explain how a policy of covering up misconduct (or failing to investigate in a uniform way, or of endorsing a "code of silence") caused her to be fired in a way that violated the Constitution. Moreover, Taylor's suit is based on a contract that (apparently) guaranteed her right to serve as principal of Owens Elementary—not Carver Elementary. [258] ¶ 12. She was removed from Owens Elementary in June of 2013, *id.* ¶ 20, and while she alleges that she was thereafter "unlawfully reassigned," *id.*, she has failed to allege how any of these de facto policies played a role in any of her subsequent reassignments.

Taylor's reference to a dismissal letter that the Board sent her on January 20, 2016, does not state a claim. [276] Ex. 1. First, the letter is not "consistent" with the allegations in the complaint; it contradicts them. The complaint says that the Board "failed to provide any notice to [Taylor] that the benefits guaranteed by her contract would be terminated, or any process within which she could object before her benefits were permanently terminated," [258] ¶ 425, and yet the January 20 letter says that Taylor's benefits would run until January 31, that she had sixty days to apply for retroactive continuation health care coverage for both her and her covered dependents and that, should she have any "questions or concerns," she could call the employee hotline. [276] Ex. 1. Nowhere in the complaint is there an allegation that this process was insufficient—only (apparently unfounded) allegations that it was non-existent. Moreover, the de facto policies in the complaint (i.e., the cover-ups, the failures to investigate impartially, the "code of silence") are not "consistent" with the policy in the January 20 letter (i.e., that all "interim principles are at-will employees") so much as they are entirely unrelated to them. Far from a "new elaboration" that serves to illustrate the facts Taylor expects to uncover in support of her claim, the January 20 letter suggests Taylor will only uncover more facts that undermine (or go beyond) her claim. The January 20 letter is not properly considered. *See Geinosky v. City of Chicago*, 675 F.3d 743, 745 n.1 (7th Cir. 2012); *Heng v. Heavner, Beyers & Mihlar, LLC*, 849 F.3d 348, 354 (7th Cir. 2017) (exhibit that was inconsistent with complaint properly struck); *Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1107 (7th Cir. 1984) (complaint may not be amended by brief in opposition to motion to

dismiss); *Shanahan v. City of Chicago*, 82 F.3d 776, 781 (7th Cir. 1996) (complaint may not be amended by brief in opposition to motion for summary judgment) (citing *Car*, 745 F.2d at 1101).

Second, even if the letter could be considered, Taylor again fails to link the policy contained in the letter to any constitutional violation. Taylor alleges that her employment contract with Owens Elementary created a property interest and that she could only be terminated for cause after a "full trial-type hearing." [258] ¶¶ 422, 424. She alleges that she was deprived of that hearing. *Id.* ¶ 425. The January 20 letter states that the Board has a rule, policy and/or past practice that all "interim principals are at-will employees" and that Taylor was removed as interim principal of Carver Elementary School "[p]ursuant to" that rule, policy and/or past practice. [276] Ex. 1. But again, the rights that Taylor is suing over (apparently) arose from an agreement between her and the local school council for Owens Elementary, not Carver Elementary. *Id.* ¶¶ 16, 422. Nowhere in the complaint or in Taylor's opposition is there an allegation that the policy contained in the January 20 letter caused her to be unlawfully removed from the entity with whom she (apparently) had entered into a binding agreement: Owens Elementary. *See* [258] ¶¶ 407–427; [276]. Taylor's *Monell* claim is dismissed.

### 4. Count Fourteen (Taylor's Illinois Whistleblower Claim)

To state a claim under the Illinois Whistleblower Act, the plaintiff must allege that an instruction was given and refused. *Collins v. Bartlett Park Dist.*, 2013 IL App (2d) 130006, ¶ 27 (2nd Dist. 2013). Nowhere in Taylor's complaint is a "short and plain statement" that Taylor refused a request that she violate the law. Taylor

implies that Saffold removed her because Taylor followed the law, *see* [258] ¶ 446 (Taylor believes that she was removed "because [she] complied with state and federal laws that require employees to be paid minimum wage and overtime"), but she never alleges that Saffold demanded otherwise. At most, Taylor alludes to an "unwritten" policy "whereby [defendants] expected school principals to deny or withhold approval of school workers' pay." *See* [258] ¶¶ 443–450. But Taylor admits that she did not even learn of Saffold's disappointment with her pay practices until February 9, 2016, a full two weeks after she was removed as principal of Carver Elementary School, sufficiently undermining her claim that she refused an instruction. *See* [258] ¶ 446. Taylor's Illinois Whistleblower claim is dismissed.

     5.    *Count Fifteen (Taylor's Retaliatory Discharge) and the Board's Immunity*

Taylor has stated a retaliatory discharge claim. To state a claim for retaliatory discharge, Taylor must allege that (1) she was discharged, (2) in retaliation for her activities, (3) in violation of a "clear mandate of public policy." *Turner v. Mem'l Med. Ctr.*, 233 Ill.2d 494, 500 (2009); *Robbins v. City of Madison*, 193 Ill.App.3d 379, 383 (5th Dist. 1990) (firing an employee because they refuse to assist in the violation of state wage laws is a violation of a "clear mandate of public policy"); *Blount v. Stroud*, 232 Ill.2d 302, 314 (2009). Neither party contests the first two elements. As to the third element, Illinois' wage laws embody a "clear mandate of public policy," and if Saffold removed Taylor for following those laws, she did so in violation of that mandate. See *Robins*, 193 Ill.App.3d at 383; *Blount*, 232 Ill.2d at 314. Defendants argue that Taylor failed to allege that she was removed "due [to] her 'activity' of

approving pay." [272] at 11–12. They are wrong. *See* [258] ¶ 467 (Taylor believes she was removed "because [she] complied with state and federal laws that require employees to be paid minimum wage and overtime").

The Board may be immune from the claim. Illinois's Tort Immunity Act immunizes public employees against tort actions that are based on a public employee's exercise of discretion in determining policy. 745 ILCS 10/2-201 ("a public employee serving in a position involving the determination of policy or the exercise of discretion is not liable for an injury resulting from his act or omission in determining policy when acting in the exercise of such discretion even though abused"). The immunity extends to members of the Board. 745 ILCS 10/1-202 (defining "public employee" to include a "member of a board"). And, it extends to the decisions of the Board itself. 745 Ill. Comp. Stat. Ann. 10/2-109 ("[a] local public entity is not liable for an injury resulting from an act or omission of its employee where the employee is not liable"); 745 Ill. Comp. Stat. Ann. 10/1-206 ("[l]ocal public entity" includes a . . . school board."). *But see Valentino v. Vill. of S. Chicago Heights,* 575 F.3d 664, 679 n. 4 (7th Cir. 2009) (calling into doubt the propriety of combining sections 10/2-201 and 10/2-209 where a municipality is the pertinent actor).

But the Tort Immunity Act cannot be applied here and now to defeat Taylor's claims. The Tort Immunity Act is an affirmative defense, *Fitzpatrick v. City of Chicago*, 112 Ill.2d 211, 217 (1986), and one that requires a fact-intensive inquiry that "must be made on a case-by-case basis." *Snyder v. Curran Twp.*, 167 Ill.2d 466, 474 (1995). The Fifth Amended Complaint omits a number of the details necessary to

resolve whether the Board and/or Saffold's decision to remove Taylor was "both a determination of policy and an exercise of discretion." *Valentino v. Hilquist*, 337 Ill.App.3d 461, 472 (1st Dist. 2003). *See also West v. Kirkham,* 147 Ill.2d 1, 11 (1992) (the act applies to "those decisions which require the municipality to balance competing interests and to make a judgment call as to what solution will best serve each of those interests"). The decision may well have required such a balancing of interests, *see Doe v. Vill. of Arlington Heights*, 782 F.3d 911, 922 (7th Cir. 2015), but making all reasonable inferences in Taylor's favor, for now it was not. *See Valentino,* 575 F.3d at 679 (a "one-time decision to fire one employee . . . does not amount to a 'judgment call between competing interests'" and "because the Tort Immunity Act is in derogation of the common law, it must be strictly construed against the public entities involved").

The Tort Immunity Act is not so plainly applicable as to render Taylor's claim frivolous. Taylor's retaliatory discharge claim is not dismissed on that basis.

> 6.    *Counts Fifteen and Eighteen (Taylor's Retaliatory Discharge and Tortious Interference with Contracts Claims) and Relation Back*

The Board also argues that the statute of limitations bars three of Taylor's claims. One of those three claims (retaliation under the Illinois Whistleblower Act) is dismissed for failure to state a claim, as discussed above. As for the other two, resolving the statute of limitations on a motion to dismiss is unusual, but "when the existence of a valid affirmative defense is so plain from the face of the complaint that the suit can be regarded as frivolous, the district judge need not wait for an answer

before dismissing the suit." *Walker v. Thompson*, 288 F.3d 1005, 1009–10 (7th Cir. 2002).

A one-year statute of limitations governs the claim for retaliatory discharge (count fifteen). *Halleck v. Cty. of Cook*, 264 Ill.App.3d 887, 891 (1st Dist. 1994); *see also* 745 Ill. Comp. Stat. Ann. 10/8-101(a); 745 ILCS § 10/1-106. Taylor was aware of all the facts necessary to make her retaliatory discharge claim "on or about February 9, 2016," when she learned that her January 20, 2016, removal was "in part because [Taylor's] clerk allegedly made too much money in the summer of 2015 and during the 2015 Christmas holiday season for services that the clerk actually performed." [258] ¶ 467. The limitations period on Taylor's retaliation-based state-law claims ran on February 9, 2017, more than one year before the Fifth Amended Complaint, [258], which was the first that contained Taylor's claim for retaliatory discharge. Taylor did not appear as a plaintiff until the Third Amended Complaint. *Compare* [65] *with* [31].

New claims "relate back" to the date of the "original pleading" if the amended pleading "asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading." Fed. R. Civ. P. 15(c)(1)(B). The "original pleading" usually means the first complaint or "initial pleading," *see Barnes v. Callaghan & Co.*, 559 F.2d 1102, 1104–05 (7th Cir. 1977), but complaints other than the "initial pleading" (e.g., an amended complaint), can form the basis of a relation-back argument. *See Cleary v. Philip Morris Inc.*, 656 F.3d 511, 515 (7th Cir. 2011).

Taylor first advanced a claim that her employment agreement had been violated in the Fourth Amended Complaint. *See* [132]. For purposes of the relation-back doctrine and Taylor's state-law claims, the "original pleading" is the Fourth Amended Complaint—the initial pleading where Taylor asserted the facts that constitute the "common occurrence" for the claims in her new amended complaint. *See Cleary*, 656 F.3d at 515.

New claims only relate back if they are sufficiently connected to claims raised in the original pleading. Relation back is permitted where "an amended complaint asserts a new claim on the basis of the same core of facts," but involves "a different substantive legal theory than that advanced in the original pleading." *Bularz v. Prudential Ins. Co. of Am.*, 93 F.3d 372, 379 (7th Cir. 1996). "Amplification" of the allegations in the original complaint is permitted, provided that the "original complaint gave the defendant enough notice of the nature and scope of the plaintiff's claim that he shouldn't have been surprised." *Santamarina v. Sears, Roebuck & Co.*, 466 F.3d 570, 573 (7th Cir. 2006); *Lojuk v. Johnson*, 853 F.2d 560, 562 (7th Cir. 1988). *See also* Wright & Miller, Standard for Determining When Amendments Relate Back – In General, 6A Fed. Prac. & Proc. Civ. § 1497 (3d ed.).

Taylor's retaliatory discharge claim "arose out of" the "occurrence" of her removal on January 20, 2016. [258] at ¶ 467. Her January 20, 2016, removal was cited and relied upon in the Fourth Amended Complaint, which included the fact of Taylor's removal, the date she was removed, a claim that the removal was improper and in violation of contractual rights guaranteed in Taylor's employment agreement,

a more general claim that the Board had improperly constructively discharged multiple principals, and a request for money damages. [132] ¶¶ 195–99, 211–12, 441–47. The Fifth Amended Complaint—filed after the limitations period ran—adds other facts, including the allegation that the Board removed Taylor in retaliation for her paying her employees, *id.* ¶¶ 469–470, and other legal theories, including the basis of her retaliatory discharge claim. *Id.* ¶ 471. These additions amplified the original pleading and arise out of the same occurrence: Taylor's removal. The Board had notice and "shouldn't have been surprised" that Taylor would assert a retaliatory discharge claim, especially not where Taylor had already asserted that the Board breached her employment agreement by removing her in a nefarious way. *See Santamarina*, 466 F.3d at 573. Defendant's motion to dismiss the retaliatory discharge claim based on the statute of limitations is denied.

For count eighteen, the discovery rule "tolls the beginning of a statute of limitations until the injured plaintiff knows or reasonably should know that she has been injured and that her injury was wrongfully caused." *Hawkins v. Nalick*, 975 N.E.2d 793, 796 (5th Dist. 2012). Taylor's tortious interference claim is based upon actions that could have taken place either before or after her termination. *See* [258] ¶ 546 (the threatening calls, unfavorable comments and false suggestions each might not have been discovered until sometime after Taylor's termination—or potentially, until just before the filing of the Fifth Amended Complaint). Drawing all reasonable inferences in Taylor's favor, her claim did not accrue until a date late enough to preclude the application of the statute of limitations on a motion to dismiss,

regardless of the length of that limitations period and the outcome of the relation back analysis. *See Franke v. Geyer,* 209 Ill.App.3d 1009, 1012 (3rd Dist. 1991) (dismissal upon a finding of accrual under the discovery rule is appropriate "so long as such a conclusion is the only one to be drawn from plaintiff's pleadings"). Count eighteen is not dismissed as time-barred.

### 7. *Count Sixteen (Taylor's ERISA Claim)*

The Employee Retirement Income Security Act only applies to certain benefit plans. *See* 29 U.S.C. § 1003. The law exempts plans "established and maintained" by any agency or instrumentality of any State government or political subdivision, 29 U.S.C. § 1003(b)(1); 29 U.S.C. § 1002(32), such as a school. *See Mudra v. Sch. City of Hammond*, No. 2:02CV260 PPS, 2004 WL 3318761, at *11 (N.D. Ind. Feb. 6, 2004). Taylor argues that an exception to this exemption applies because the Board elected to allow employees of private corporations to participate in the Board's benefit plan. [258] ¶ 495.

This theory has some support. For instance, in *DeBartolo v. Indian Prairie Sch. Dist. No. 204,* this court intimated that the school district's benefit plan might not have qualified for the government-plan exemption if the school district had allowed private employers to participate in that plan. *No. 08 C 995,* 2008 WL 3009931, at *2 (N.D. Ill. Aug. 5, 2008). But *DeBartolo* is only so persuasive, in part because the court ultimately dismissed the ERISA claim because the plaintiff failed to allege that any private employers actually participated in the plan at issue. In fact, none of the cases cited in *DeBartolo* actually apply this "exception to the exemption," either; they find the government plans at issue exempt, *see e.g.*, *Krystyniak v. Lake Zurich Cmty. Unit*

*Dist. No. 95*, 783 F.Supp. 354, 356 (N.D. Ill. 1991) ("[n]othing in that legislative history suggests that Congress intended to permit governmental employers to 'opt in' to ERISA"); *Lovelace v. Prudential Ins. Co. of Am.*, 775 F.Supp. 228, 230 (S.D. Ohio 1991) ("Prudential's administration of the policy does not negate the "governmental plan" character of the [public school system's] plan"), or they address the inverse of the claim advanced here: that the government entity removed itself from the exemption by offering to its own employees a benefit plan established and maintained by a private entity. *See, e.g., Livolsi v. City of New Castle, Pa.,* 501 F.Supp. 1146, 1150 (W.D. Pa. 1980); *Brooks,* 1990 WL 103572, at *2.

Under ERISA, anyone can be liable—including both governmental entities and private employers—but only for interfering with benefit plans established by certain types of entities. 29 U.S.C. § 1140 ("[i]t shall be unlawful for *any person* to discharge, fine, suspend, expel, discipline, or discriminate against a participant . . . for exercising any right to which he is entitled under the provisions of an employee benefit plan") (emphasis added); 29 U.S.C. § 1002(32) ("employee benefit plan" does not include any plan "established or maintained for its employees . . . by the government of any State or . . . any agency or instrumentality" thereof).[5]

---

[5] Taylor refers unhelpfully to a prior admission by the Board: "that at least one of the [Board's] plans constitutes an 'employee welfare benefit plan.'" *See* Answer to Amended Complaint, *Cooper v. Chicago Public Schools et al.*, Case No. 13-cv-04413 (N.D. Ill. June 14, 2013), ECF No. 19 ¶ 99 (the Board admitting that one of "[Chicago Public School's] Plan[s] constitute[s] an 'employee welfare benefit plan,' as that term is defined in 29 U.S.C. § 1102"). There is no showing that the benefit plan at issue in *Cooper* is the same as that at issue here and, without such a showing, Taylor's citation to the Board's admission is neither here nor there.

The Department of Labor has issued an advisory opinion that says exactly what *DeBartolo* only suggests: a government plan can become subject to ERISA if more than a *de minimis* number of private employees participate in the plan. [276-3] at 2–3 (300 out of 25,221 participants is *de minimis*; 175,000 out of 275,000 is not). Such constructions are "entitled to considerable weight." *Otto v. Variable Annuity Life Ins. Co.*, 814 F.2d 1127, 1135 (7th Cir. 1986). The complaint alleges that more than a *de minimis* number of private employees participate in the plan. [58] ¶¶ 492–93 ("[a] substantial and more than *de minimis* number of employees of private companies . . . participated in the CPS benefits programs," including, for instance, employees of various local charter schools). As a result, Taylor's claims are not dismissed for failing to state a claim.

## IV. Conclusion

For the foregoing reasons, the Board's Motion to Dismiss [272] is granted in part, denied in part. Counts three, five, six, eight through twelve and fifteen through eighteen may proceed. The remaining counts are dismissed.

ENTER:

Manish S. Shah
United States District Judge

Date: November 28, 2018